# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: SAMSUNG CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>*This Document Relates To:* ALL ACTIONS | Civil Action No. 1:23-md-03055 (CPO-EAP)<br><br>(MDL 3055)<br><br>District Judge Christine P. O'Hearn<br>Magistrate Judge Elizabeth A. Pascal<br><br>Motion Return Date:  September 5, 2023 |

## DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S BRIEF IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS

**ARCHER & GREINER, P.C.**
1025 Laurel Oak Road
Voorhees, NJ 08043
T: (856) 795-2121 / F: (856) 795-0574

**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Ave. NW
Washington, DC 20009
T: (202) 955-1500 / F: (202) 778-2201

**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
T: (212) 836-8000 / F: (212) 836-8689

*Attorneys for Defendant*
*Samsung Electronics America, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

STATEMENT OF FACTS ..................................................................................3

ARGUMENT .......................................................................................................6

I.     Courts Strike Class Allegations for Inherent Defects in Typicality and
       Predominance ...........................................................................................9

       A.     Typicality...........................................................................................10

       B.     Predominance ....................................................................................12

II.    Individualized Factual Issues Evident on the Face of the Complaint
       Make Clear That the Putative Classes Cannot Satisfy Rule 23's
       Typicality or Predominance Requirements ...................................15

III.   Variations in State Law Preclude Plaintiffs' Proposed Nationwide
       Class.......................................................................................................20

CONCLUSION ...................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams Pointe I, L.P. v. Tru-Flex Metal Hose Corp.*,
  2020 WL 4199557 (W.D. Pa. July 17, 2020),
  *report and recommendation adopted*, 2020 WL 4937455 (W.D. Pa.
  Aug. 24, 2020), *aff'd*, 2021 WL 3612155 (3d Cir. Aug. 16, 2021) ...................23

*Advanced Acupuncture Clinic, Inc. v. Allstate Ins. Co.*,
  2008 WL 4056244 (D.N.J. Aug. 26, 2008), *aff'd sub nom.*
  *St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*,
  342 F. App'x 809 (3d Cir. 2009) ..........................................................................6

*Agostino v. Quest Diagnostics Inc.*,
  256 F.R.D. 437 (D.N.J. 2009)..............................................................................25

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).............................................................................................13

*Attias v. CareFirst, Inc.*,
  344 F.R.D. 38 (D.D.C. 2023)...............................................................................19

*Barabin v. Aramark Corp.*,
  2003 WL 355417 (3d Cir. Jan. 24, 2003)......................................................13, 14

*Barabin v. Aramark Corp.*,
  210 F.R.D. 152 (E.D. Pa. 2002),
  *aff'd,* 2003 WL 355417 (3d Cir. Jan. 24, 2003) .........................................*passim*

*Boley v. Universal Health Servs., Inc.*,
  36 F.4th 124 (3d Cir. 2022) .................................................................................10

*Brennan v. Rite Aid Corp.*,
  263 F.R.D. 176 (E.D. Pa. 2009).......................................................................6, 11

*Buchanan v. Simplot Feeders, LLC*,
  2019 WL 7763826 (E.D. Wash. Oct. 29, 2019) .................................................22

*Cheryl Gaston v. FabFitFun, Inc.*,
  2021 WL 6496734 (C.D. Cal. Dec. 9, 2021)........................................................2

*Davis v. Bank of Am., N.A.*,
2016 WL 427049 (E.D. Pa. Feb. 3, 2016) ............................................................6

*Ferreras v. Am. Airlines, Inc.*,
946 F.3d 178 (3d Cir. 2019) ...............................................................13

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)...............................................................7

*Georgine v. Amchem Prods., Inc.*,
83 F.3d 610 (3d Cir. 1996) ...............................................................21

*Gordon v. Sig Sauer, Inc.*,
2019 WL 4572799 (S.D. Tex. Sept. 20, 2019)...............................................................24

*Grandalski v. Quest Diagnostics Inc.*,
767 F.3d 175 (3d Cir. 2014) ...............................................................20, 21

*Gutierrez v. Wells Fargo Bank, NA*,
889 F.3d 1230 (11th Cir. 2018) ...............................................................7

*Hardwick v. 3M Co.*,
2022 WL 668339 (S.D. Ohio Mar. 7, 2022)...............................................................23

*Hohider v. United Parcel Serv., Inc.*,
574 F.3d 169 (3d Cir. 2009) ...............................................................10

*Hughes v. The Ester C Co.*,
317 F.R.D. 333 (E.D.N.Y. 2016)...............................................................24

*In re Actiq Sales & Mktg. Pracs. Litig.*,
307 F.R.D. 150 (E.D. Pa. 2015)...............................................................24

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ...............................................................21, 23

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002) ...............................................................21

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
208 F.R.D. 625 (W.D. Wash. 2002) ...............................................................9

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ..........................................................................11, 15

*In re Vioxx Prods. Liab. Litig.*,
    2012 WL 2061883 (E.D. La. June 6, 2012) ......................................................9

*Johnson v. Organo Gold Int'l, Inc.*,
    2016 WL 2771124 (D. Del. May 13, 2016) ......................................................8

*Lafferty v. Sherwin-Williams Co.*,
    2018 WL 3993448 (D.N.J. Aug. 21, 2018) ..................................................6, 13

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
    640 F.3d 72 (3d Cir. 2011) ..............................................................................8

*Mack v. Gen. Motors Acceptance Corp.*,
    169 F.R.D. 671 (M.D. Ala. 1996)....................................................................26

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ...........................................................................13

*Matter of Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ...........................................................................24

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ...........................................................................24

*McClendon v. Sch. Dist. of Phila.*,
    2005 WL 549532 (E.D. Pa. Mar. 7, 2005) ............................................6, 11, 19

*Mladenov v. Wegmans Food Mkts., Inc.*,
    124 F. Supp. 3d 360 (D.N.J. 2015)................................................................6, 8

*Niemczyk v. Pro Custom Solar LLC*,
    2022 WL 884359 (D.N.J. Mar. 25, 2022) ........................................................8

*P.V. ex rel. T.V. v. Camp Jaycee*,
    962 A.2d 453 (N.J. 2008) ...............................................................................21

*Payne v. FujiFilm U.S.A., Inc.*,
    2010 WL 2342388 (D.N.J. May 28, 2010).................................................20, 25

*Ponzio v. Mercedes USA, LLC*,
447 F. Supp. 3d 194 (D.N.J. 2020).......................................................................22

*S. Indep. Bank v. Fred's, Inc.*,
2019 WL 1179396 (M.D. Ala. Mar. 13, 2019) ...................................................26

*Semenko v. Wendy's Int'l, Inc.*,
2013 WL 1568407 (W.D. Pa. Apr. 12, 2013) ......................................6, 8, 11, 12

*Thompson v. Merck & Co.*,
2004 WL 62710 (E.D. Pa. Jan. 6, 2004)...............................................6, 9, 14, 18

*Trunzo v. Citi Mortg.*,
2014 WL 1317577 (W.D. Pa. Mar. 31, 2014) ...........................................*passim*

*United States v. Sanchez-Gomez*,
138 S. Ct. 1532 (2018).............................................................................................7

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
2015 WL 3623005 (E.D. Pa. June 10, 2015).................................................24, 25

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...............................................................................7, 17, 18, 19

*Wright v. City of Wilmington*,
2016 WL 356023 (D. Del. Jan. 28, 2016) ..........................................6, 10, 15, 20

## Other Authorities

Catherine M. Sharkey, *Can Data Breach Claims Survive the
Economic Loss Rule?*, 66 DePaul L. Rev. 339, 349 (2017) ................................22

*Data Breach Report*, 19 (Jan. 2023), https://www.idtheftcenter.org/wp-
content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final.pdf ..........3, 19

Fed. R. Civ. P. 12(f) .................................................................................................8

Fed. R. Civ. P. 23(a)...............................................................................................13

Fed. R. Civ. P. 23(a)(3)........................................................................................9, 10

Fed. R. Civ. P. 23(b) ..............................................................................................21

Fed. R. Civ. P. 23(b)(3)..................................................................................9, 12, 13

Fed. R. Civ. P. 23(c)(1) .................................................................................................8

Fed. R. Civ. P. 23(c)(1)(A) .......................................................................................7, 8

Fed. R. Civ. P. 23(d)(1)(D) ...........................................................................................8

Important Notice Regarding Customer Information (Sept. 2, 2022), *available at*
https://www.samsung.com/us/support/securityresponsecenter/ ..........................3

**INTRODUCTION**

This proposed consumer class action stems from Samsung Electronics America, Inc.'s ("Samsung") announcement on September 2, 2022 that "an unauthorized third party acquired information from some of Samsung's U.S. systems" including "personal information of certain customers" (the "Security Incident").  Samsung reassured customers that the Security Incident "did not impact Social Security numbers or credit and debit card numbers," or other sensitive information necessary to commit identity theft or fraud.  The affected data was limited to non-sensitive information such as "name, contact and demographic information, date of birth, and product registration information."

Despite the benign nature of the affected data, the Complaint cobbles together 49 individuals from 34 states alleging violations of numerous different state laws based on sharply diverging experiences and injuries that Plaintiffs attribute to the Security Incident.  These alleged injuries range from actual identity theft, to annoying phone calls, to "attempted" fraud.  Given the divergent experiences by just the 49 named Plaintiffs, the reality is that no factual development could alter the conclusion that this case cannot be certified as a class action.  The Court should strike the class allegations now.

Each Plaintiff's claims would require a separate trial on unique defenses, causation issues, and alleged injuries that would become the focus of the litigation.

These separate trials would be inescapable because, as the Complaint itself exposes, there is no way to determine on a class-wide basis or through common proof whether each Plaintiff even suffered a cognizable injury, let alone one that resulted from the Security Incident. Plaintiffs' own allegations underscore numerous individualized factual questions that undermine Rule 23's typicality and predominance requirements.

In addition to the myriad factual differences inherent in the Complaint, Plaintiffs' many claims turn on numerous diverging state laws. Plaintiffs invoke state laws from 34 different jurisdictions, so there is no chance that common legal theories will predominate.

"Historically, data breach cases have experienced minimal success in moving for class certification." *Cheryl Gaston v. FabFitFun, Inc.*, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) (collecting cases). As many courts have concluded, there is no reason to postpone deciding this issue until after discovery when the flaws in Plaintiffs' class allegations are inherent in their complaint. Nationwide multidistrict class actions are proceedings of enormous scope and pose inordinate burdens and expenses on the parties and the courts. If Plaintiffs' allegations will never be able meet Rule 23's requirements, the time to address that is now. If the Court does not dismiss all of Plaintiffs' claims outright for the

reasons set forth in Samsung's concurrently-filed motion to dismiss, the Court should strike Plaintiffs' class allegations.

## STATEMENT OF FACTS

This case arises from Samsung's announcement on September 2, 2022 that "an unauthorized third party acquired information from some of Samsung's U.S. systems," including "personal information of certain customers." *See* Important Notice Regarding Customer Information (Sept. 2, 2022), *available at* https://www.samsung.com/us/support/securityresponsecenter/ ("Notice"). This was one of over 1,700 data breaches in the United States in 2022 alone. *See* Identity Theft Resource Center, *2022 Data Breach Report*, 19 (Jan. 2023), https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final.pdf. As Plaintiffs admit, Samsung notified its customers and informed them that the information affected by the Security Incident was limited to "name, contact and demographic information, date of birth, and product registration information." ECF No. 72 ¶ 213 ("Compl."). Samsung's Notice also informed customers that the Security Incident "did not impact Social Security numbers or credit and debit card numbers." *See* Notice. Nonetheless, within hours of this Notice, the first of 17 putative class actions were filed across the country. Those cases were consolidated in this Court, resulting in the current Amended Consolidated Complaint ("Complaint"). That Complaint, filed on behalf of 49

Plaintiffs from 34 states, asserts myriad diverging injuries they claim were caused by the Security Incident.  These Plaintiffs seek certification on behalf of a national class of "[a]ll persons residing in the United States whose Personally Identifiable Information was accessed, compromised, or stolen in the [Security Incident]," as well as separate state subclasses in 34 jurisdictions.  Compl. ¶¶ 1, 256.

Despite having been notified of the basic, non-sensitive, nature of the information, and having been explicitly notified on what was *not* impacted by the breach, Plaintiffs allege a diverse array of injuries as a downstream result of the Security Incident.  While some Plaintiffs allege they suffered fraud or identity theft, others allege they have experienced what they suspect was "attempted"—and not actual—fraud or identity theft.  Some allege only that they "ha[ve] suffered a perceptible increase in scam/phishing emails, text messages, and phone calls," *id.* ¶ 91, and "ha[ve] taken precautions to mitigate the risk of future identity theft and fraud, including frequently checking [their] bank and credit card statements," *id.* ¶ 92.  While the injuries Plaintiffs allege are too diverse and numerous to list in full, they include the following:

| Alleged Injury | Compl. ¶ |
|---|---|
| "[A]ttempted fraud" related to "scam debt consolidation" and "misuse of [Plaintiff's] PII on Instagram" | 34 |
| "[F]raud in the form of ten unauthorized charges on [Plaintiff's] Samsung Sofi Mastercard totaling $1,000" | 43 |
| Notification that PII was for sale on the Dark Web | 52 |

| | |
|---|---|
| Plaintiff's "email account was hacked and his phone number stolen in an attempt to hijack his Crypto account," after which Plaintiff "put[] his email on two secure Ubikey USB hard drives which cost a total of $130" | 55 |
| Plaintiff "received a fraudulent hospital bill in his name" | 64 |
| "[F]raudulent loan taken out in [Plaintiff's] name, fraudulent charges on his debit card amounting to over $600, and over 120 credit inquiries under his name" | 67 |
| "[U]nauthorized openings of email accounts in [Plaintiff's] name" | 76 |
| "[A] perceptible increase in scam/phishing emails, text messages, and phone calls" | 91 |
| "[U]nauthorized charges on [Plaintiff's] AT&T account and notifications from his CreditWise and CreditKarma accounts that his PII was being misused" | 94 |
| "[Plaintiff] was notified that a credit card was opened in his name on or around February 2023 and that his social security number was used" | 100 |
| "[S]omeone stole [Plaintiff's] exact email address" | 103 |
| "[U]nauthorized credit inquires" | 106 |
| "[U]nauthorized credit cards, a small business loan, and a Minnesota tax refund were fraudulently obtained in [Plaintiff's] name" | 109 |
| "5 unauthorized charges on [Plaintiff's] debit card that totaled over $1,000" and after which Plaintiff "changed his debit card and bank account information due to continued suspicious activity" | 118 |
| "[A]ttempted fraud including fraudulent invoices and emails from certain companies" | 130 |

| | |
|---|---|
| Identity theft that caused Plaintiff "to put a block on his Social Security Number and eventually had to get another Social Security card, which took about a month and involved him making a report to the Social Security Administration" | 133 |
| "[M]ultiple occurrences of fraudulent attempts to open credit cards and apply for a home loan in [Plaintiff's] name" | 136 |
| "[A]ttempted theft of $1,000 worth of bitcoin and $329 of cash from [Plaintiff's] Paypal account" | 160 |
| "[A]n unauthorized North Carolina address appeared several times on [Plaintiff's] credit report" | 163 |
| "[C]ompromised social media accounts" | 175 |
| "[U]unauthorized bank charge on [Plaintiff's] debit card that was not reimbursed" | 178 |

## ARGUMENT

Courts routinely strike or dismiss facially deficient class allegations at the pleading stage to avoid needless expense and time.[1]  "The class action is a creature

---

[1] For such cases striking class allegations at the pleading stage, within this Circuit alone, *see, e.g.*, *Lafferty v. Sherwin-Williams Co.*, 2018 WL 3993448, at *6 (D.N.J. Aug. 21, 2018); *Davis v. Bank of Am., N.A.*, 2016 WL 427049, at *7 (E.D. Pa. Feb. 3, 2016); *Wright v. City of Wilmington*, 2016 WL 356023, at *4 (D. Del. Jan. 28, 2016), *report and recommendation adopted*, 2016 WL 1275591 (D. Del. Mar. 31, 2016); *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 372 (D.N.J. 2015); *Trunzo v. Citi Mortg.*, 2014 WL 1317577, at *21 (W.D. Pa. Mar. 31, 2014); *Semenko v. Wendy's Int'l, Inc.*, 2013 WL 1568407, at *11 (W.D. Pa. Apr. 12, 2013); *Brennan v. Rite Aid Corp.*, 263 F.R.D. 176, 177 (E.D. Pa. 2009); *Advanced Acupuncture Clinic, Inc. v. Allstate Ins. Co.*, 2008 WL 4056244, at *14 (D.N.J. Aug. 26, 2008), *aff'd sub nom. St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*, 342 F. App'x 809 (3d Cir. 2009); *McClendon v. Sch. Dist. of Phila.*, 2005 WL 549532, at *4 (E.D. Pa. Mar. 7, 2005); *Thompson v. Merck & Co.*, 2004 WL

6

of the Federal Rules of Civil Procedure." *United States v. Sanchez-Gomez*, 138 S.

Ct. 1532, 1538 (2018).  It "is an exception to the usual rule that litigation is

conducted by and on behalf of the individual named parties only." *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quotation marks omitted).  "[T]o

justify a departure from that rule, a class representative must be part of the class

and possess the same interest and suffer the same injury as the class members." *Id.*

at 348-49 (quotation marks omitted).  Rule 23 of the Federal Rules of Civil

Procedure provides that "the court must determine by order whether to certify the

action as a class action" "[a]t an early practicable time."  Fed. R. Civ. P.

23(c)(1)(A).  "Rule 23's exhortation to rule on certification further[s] the purpose

of avoiding wasteful expenditures of time and money by nudging the district court

to decide on class certification . . . before the scope of discovery is expanded to its

fullest extent." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1237 n.8 (11th

Cir. 2018).

Indeed, "[s]ometimes the issues are plain enough from the pleadings to

determine whether the interests of the absent parties are fairly encompassed within

the named plaintiff's claims." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160

(1982).  A court thus may strike class allegations from the pleadings when "the

---

62710, at *2 (E.D. Pa. Jan. 6, 2004); *Barabin v. Aramark Corp.*, 210 F.R.D. 152,
162 (E.D. Pa. 2002), *aff'd,* 2003 WL 355417 (3d Cir. Jan. 24, 2003).

complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011).  When a defendant moves to strike class allegations, "[t]he plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Federal Rule of Civil Procedure 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Semenko v. Wendy's Int'l, Inc.*, 2013 WL 1568407, at *2 (W.D. Pa. Apr. 12, 2013) (citing Fed. R. Civ. P. 23(c)(1)); *accord, e.g.*, *Johnson v. Organo Gold Int'l, Inc.*, 2016 WL 2771124, at *2 (D. Del. May 13, 2016) (same).[2]

"This Court has addressed and stricken class allegations at the pleading stage on defendants' motions . . . when it becomes clear from the complaint that plaintiffs cannot meet the certification requirements of Rule 23." *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 368 (D.N.J. 2015) (collecting cases); *see also supra* note 1.  Courts presiding over multidistrict litigations

---

[2] "The authority to strike class allegations stems from Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D)." *Niemczyk v. Pro Custom Solar LLC*, 2022 WL 884359, at *2 (D.N.J. Mar. 25, 2022) (brackets omitted).  Rule 23(c)(1)(A) provides that "the court must determine by order whether to certify the action as a class action" "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A).  Under Rule 23(d)(1)(D), "the court may . . . eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D).  And under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

likewise strike facially deficient class allegations from class complaints filed in those proceedings.  *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 2012 WL 2061883, at *3 (E.D. La. June 6, 2012); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625, 629-30 (W.D. Wash. 2002).

Here, Plaintiffs' class allegations are facially deficient for two fundamental reasons.  **First**, Plaintiffs allege myriad diverse injuries that will subject them to unique defenses and raise individualized causation issues that overwhelm any common issues and prevent Plaintiffs from satisfying Rule 23(a)(3)'s "typicality" requirement and Rule 23(b)(3)'s "predominance" requirement.  **Second**, Plaintiffs invoke numerous state laws from 34 different jurisdictions, so there is no chance that common legal theories will predominate, which will make class treatment of this case completely unmanageable.[3]

## I.   Courts Strike Class Allegations for Inherent Defects in Typicality and Predominance

"No amount of additional class discovery will alter th[e] conclusion" that is evident from the Complaint itself:  Plaintiffs' claims are not appropriate to be tried as a class action.  *Thompson v. Merck & Co.*, 2004 WL 62710, at *2 (E.D. Pa. Jan.

---

[3] There are numerous reasons why a class cannot be certified in this case.  This motion, however, focuses on just two of those reasons that appear on the face of the Complaint.  If Samsung's motion is denied, and the case proceeds to a class certification motion filed by Plaintiffs, Samsung reserves the right to make all arguments in opposition to that motion.

6, 2004).  The Complaint highlights numerous fact-intensive "individualized inquiries that cannot be addressed in a manner consistent with Rule 23," *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 184 (3d Cir. 2009), and therefore "precertification discovery would be futile in this case because it cannot remove the obstacles to class certification," *Wright v. City of Wilmington*, 2016 WL 356023, at *4 (D. Del. Jan. 28, 2016), *report and recommendation adopted*, 2016 WL 1275591 (D. Del. Mar. 31, 2016).

## A.   Typicality

Rule 23(a)(3) requires a plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  In evaluating typicality, courts "focus on whether the class representatives' legal theory and claim, or the individual circumstances on which those theories and claims are based, are different from those of the class."  *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 133 (3d Cir. 2022).  The inquiry turns on "three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be

sufficiently aligned with those of the class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

Numerous courts in the Third Circuit have stricken class claims when the allegations fail to meet the typicality requirement. *See, e.g.*, *Trunzo v. Citi Mortgage*, 2014 WL 1317577, at *9 (W.D. Pa. Mar. 31, 2014) (discussed below); *Semenko v. Wendy's Int'l, Inc.*, 2013 WL 1568407, at *8 (W.D. Pa. Apr. 12, 2013) (discussed below); *Brennan v. Rite Aid Corp.*, 263 F.R.D. 176, 177 (E.D. Pa. 2009) (striking class allegations as atypical because key "issues would require mini-trials"); *McClendon v. Sch. Dist. of Phila.*, 2005 WL 549532, at *4 (E.D. Pa. Mar. 7, 2005) (striking class allegations that would "demand[] individual proof, not typical proof of one of the plaintiffs").

In *Trunzo*, for example, the court struck the class allegations because the defendant "identified individualized causation issues (lack of causation and intervening causes) arising from the specific circumstances of the named Plaintiffs' claim which demonstrate[d] that their claim [was] not typical of the putative class." 2014 WL 1317577, at *9. There, the named plaintiffs alleged a specific statutory violation by the defendant but failed to identify any ascertainable loss they suffered "as a result of" that statutory violation. *Id.* at *10. The court concluded that "[t]his critical causation issue [was] likely to become a major focus of the litigation, such that the representative might devote time and effort to the defense at the expense of

other issues that [were] common and controlling for the class." *Id.* at *11 (citations and quotation marks omitted).

And in *Semenko*, the court struck class allegations as atypical because the named plaintiff's "legal theories . . . differ[ed] from those asserted by other class members." 2013 WL 1568407, at *8. There, the plaintiff was fired after requesting a disability accommodation and sued her employer as the representative of a putative class. *Id.* at *4. To prevail on their ADA claims, the class members needed to show they were "qualified" and "disabled," could perform "essential functions," and had sought "reasonable accommodations." *Id.* at *6-7. The court noted that these issues would entail a "highly individualized analysis," and that some class members might be subject to different defenses, such as judicial estoppel, if they had previously sought disability benefits. *Id.* at *8-9. The court concluded that "typicality [was] lacking because [the] Plaintiff's individual claim [would] not prove the issue with respect to the claims of the other proposed class members." *Id.* at *9.

## B.    Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Th[e] predominance requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation.'"  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir.

2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  "A

plaintiff must demonstrate that the element of the legal claim is capable of proof at

trial through evidence that is common to the class rather than individual to its

members."  *Id.* (quotation marks and brackets omitted).  "[T]he Rule 23(b)(3)

predominance requirement is far more demanding than the commonality

requirement found in Rule 23(a)."  *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178,

185 (3d Cir. 2019) (quotation marks omitted).

Courts within the Third Circuit have stricken class claims when it is

apparent on the face of the complaint that the allegations cannot satisfy the

predominance requirement.  *See, e.g.*, *Barabin v. Aramark Corp.*, 2003 WL

355417, at *2 (3d Cir. Jan. 24, 2003) (affirming pleadings-stage decision striking

class claims and denying class certification because "plaintiffs' individual claims

for damages would . . . require individualized evaluations and findings of the facts

and defenses"); *Lafferty v. Sherwin-Williams Co.*, 2018 WL 3993448, at *6 (D.N.J.

Aug. 21, 2018) (dismissing class allegations at pleading stage because resolving

the individualized "causative inquiries on a class-wide basis would be problematic

and wildly inaccurate"); *Trunzo*, 2014 WL 1317577, at *14 (striking class

allegations because "although the fraudulent acts themselves may [have been]

common to the proposed class, issues of causation mandate[d] the conclusion that

individual issues [would] predominate" (ellipses omitted)); *Thompson*, 2004 WL 62710, at *5 (striking class allegations because the complaint failed to allege that "individualized fact issues would predominate during the liability phase of any trial as well as in the damage phase").

In *Barabin v. Aramark Corp.*, 210 F.R.D. 152, 162 (E.D. Pa. 2002) ("*Barabin I*"), a decision affirmed by the Third Circuit, *see Barabin*, 2003 WL 355417, at *2 ("*Barabin II*"), the court granted the defendant's motion to strike class allegations because common questions did not predominate.  There, Title VII plaintiffs "share[d] the legal and factual issues of the allegedly racially-based harsh discipline and potential disparate impact of that discipline with the members of the proposed class."  *Barabin I*, 210 F.R.D. at 158.  Even so, the Third Circuit held that the complaint failed the predominance test because "the circumstances under which those acts of discrimination were committed and the resultant injuries [were] unique to each individual plaintiff."  *Barabin II*, 2003 WL 355417, at *2 (quotation marks omitted).  For instance, while one plaintiff alleged that she was injured because "her duties were expanded" as a result of discrimination, another asserted that he had "suffered a three-day suspension," and another claimed he "was laid off."  *Barabin I*, 210 F.R.D. at 162 n.3.  Because these "individual claims for damages would therefore require individualized evaluations and findings of the facts and defenses," the court "conclude[d] that the plaintiffs' individual claims

would predominate over the common issue of whether the disciplinary measures taken against them were discriminatory in nature." *Id.* at 162.

## II.   Individualized Factual Issues Evident on the Face of the Complaint Make Clear That the Putative Classes Cannot Satisfy Rule 23's Typicality or Predominance Requirements

It is clear from the face of the Complaint that the forty-nine named Plaintiffs cannot satisfy Rule 23's typicality and predominance requirements.  Although Plaintiffs allege that they suffered injuries as a downstream result of the Security Incident, "the resultant injuries" they assert "are unique to each individual plaintiff." *Id.*  They range from alleged "identity theft," Compl. ¶ 55, to "misuse of [Plaintiff's] PII on Instagram," *id.* ¶ 34, to "phone calls regarding extending warranties," *id.* ¶ 106.  These divergent alleged injuries would, in turn, generate "individualized causation issues," *Trunzo*, 2014 WL 1317577, at *9, and defenses unique to particular plaintiffs would "become a major focus of the litigation," *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 599.

To begin with, the injuries alleged in the Complaint "vary significantly even between the [49] named plaintiffs." *Wright*, 2016 WL 356023, at *8.  Because the putative representatives' individual claims will warrant unique defenses vis-à-vis ***one another***, there is no way these claims will be typical of those of the absent class, let alone that common issues will predominate.

For example, Plaintiff Jacob Smith of Arkansas asserts that he "suffered fraud in the form of ten unauthorized charges on his Samsung Sofi Mastercard totaling $1,000." Compl. ¶ 43. By contrast, Plaintiff Gina Triola of Ohio alleges only that she has "experienced a perceptible increase in the amount of spam/phishing emails and text messages" she receives, and "has spent time reviewing and maintaining her communication accounts." *Id.* ¶ 142. Plaintiff Jamie Barnes of Tennessee claims she experienced "an attempted theft of $1,000 worth of bitcoin and $329 of cash from her Paypal account," *id.* ¶ 160, whereas Plaintiff Keanna Cole of Michigan alleges that she "spent approximately $12.99 per month on Equifax to protect herself from harm," *id.* ¶ 107. Plaintiff Michael Ortiz of New York claims he "had to put a block on his Social Security Number and eventually had to get another Social Security card, which took about a month," *id.* ¶ 133, while Plaintiff Todd Bingham of Arizona alleges only that he "has spent about a half hour per week checking his credit and financial accounts for any unauthorized activity," and purchased credit monitoring, *id.* ¶ 41. There is no unifying thread between any of these alleged harms. Even if these Plaintiffs "share[d] the legal and factual issues of the alleged[]" Security Incident, *Barabin I*, 210 F.R.D. at 158, "the resultant injuries are unique to each individual plaintiff," and the individualized inquiries and separate trials that would be required to prove each of these disparate injuries would overwhelm that limited common question,

*id.* at 162.  Most importantly, the proof offered by any particular Plaintiff would be irrelevant to the claims of any other Plaintiff or any absent putative class member. "What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (citation omitted). Plaintiffs ask for myriad divergent answers.

The disparate array of alleged injuries also highlights numerous "individualized causation issues" that would "aris[e] from the specific circumstances of the named Plaintiffs' claim[s]." *Trunzo*, 2014 WL 1317577, at *9; *see id.* at *14.  For instance, were Smith's "ten unauthorized charges" the "result" of this Security Incident?  Compl. ¶ 43.  How many "spam/phishing emails and text messages" was Plaintiff Triola receiving already, such that she can demonstrate that the Security Incident *caused* "a perceptible increase," let alone that any such increase was the result of *this* Security Incident?  *Id.* ¶ 142.  Did Plaintiff Barnes suffer *any* injury by way of the "*attempted* theft" of Bitcoin and cash, and was that attempted theft triggered by this Security Incident?  *Id.* ¶ 160 (emphasis added).  Why is it that Plaintiff Ortiz "had to" get a new Social Security card, when he does not allege that he even provided his Social Security information to Samsung in the first place, let alone that the Security Incident compromised his Social Security Number?  *Id.* ¶ 133.  Was the "approximately

$12.99 per month" Plaintiff Cole spent "on Equifax" actually necessary as a "result" of the Security Incident, even though her only alleged injuries were "a perceptible increase in scam/phishing phone calls" and "unauthorized credit inquiries"?  *Id.* ¶ 107.  Any evidence offered in support of these alleged injuries necessarily will be highly individualized, and there is "no cause to believe that all [Plaintiffs'] claims can productively be litigated at once."  *Dukes*, 564 U.S. at 350. These are precisely the sorts of "subjective and intangible differences of each class member's individual circumstances" that courts have found cannot sustain a class action.  *Thompson*, 2004 WL 62710, at *2.

Even those Plaintiffs who claim to have suffered actual identity theft rely on dramatically varying allegations that would subject many of them to individualized defenses.  For example, while Plaintiff Nathan Briggs alleges that he "suffered identity theft" in the form of "fraudulent loan applications in his name as well as fraudulent bills," Compl. ¶ 148, Plaintiff LaShanna Beasley asserts only that she experienced "identity theft and fraud when an unauthorized North Carolina address appeared several times on her credit report," *id.* ¶ 163.  Some Plaintiffs claim they suffered "identity theft" in the form of "fraudulent ***attempts*** to open credit cards." *Id.* ¶ 136 (emphasis added).  Others baldly state that they "suffered identity theft" with no elaboration whatsoever.  *Id.* ¶ 133.  These are precisely the sort of

allegations that would "demand[] individual proof, not typical proof." *McClendon*, 2005 WL 549532, at *4.

Finally, Plaintiffs would need to present individualized evidence to prove that the Security Incident—as opposed to another of the many data breaches that have occurred in recent years—caused their individual alleged injuries. According to one report, there were 1,774 data breaches in the United States in 2022 alone, affecting more than 392 million people. *See* Identity Theft Resource Center, *2022 Data Breach Report*, 19 (Jan. 2023), https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final.pdf. "[I]t is unclear whether there is a classwide source of proof that could readily show . . . which potential class members acted in response to the [Security Incident] in particular, as opposed to any number of other data breaches in recent years that have prompted a similar need for protective action." *Attias v. CareFirst, Inc.*, 344 F.R.D. 38, 53 (D.D.C. 2023). "The need to identify which potential class members spent time on mitigation specifically in response to the [Security Incident] would therefore raise individualized inquiries as to the causation elements of Plaintiffs' [various] claims." *Id.* at 53-54 (collecting cases).

"[A] class cannot be certified" if the defendant "will not be able to litigate . . . its defenses to individual claims." *Dukes*, 564 U.S. at 367. The individualized factual questions inherent in Plaintiffs' Complaint underscore the

impossibility of trying this case as a class action. These individualized questions are apparent even among the named Plaintiffs themselves. In addition to having to offer proof of their highly individualized claims, many will be subject to unique, fact-bound defenses based on lack of causation and/or injury that will become the focus of the litigation. "[P]recertification discovery would be futile in this case because it cannot remove the obstacles to class certification . . . ." *Wright*, 2016 WL 356023, at *4. Because there is no hope that this case can ever proceed as a class action, the Court should strike the class allegations now to promote the just and efficient conduct of this action.

## III.   Variations in State Law Preclude Plaintiffs' Proposed Nationwide Class

In addition to the myriad ***factual*** differences inherent in the Complaint, Plaintiffs' many claims turn on numerous diverging state ***laws***. The Third Circuit has explained that "in a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 180 (3d Cir. 2014). "If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action." *Payne v. FujiFilm U.S.A., Inc.*, 2010 WL 2342388, at *7 (D.N.J. May 28, 2010).

In conducting choice-of-law analyses, "New Jersey has adopted 'the most significant relationship' test set out in the Restatement (Second) of Conflict of Laws." *Grandalski*, 767 F.3d at 180 (quoting *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 459-60 (N.J. 2008)).  "Under this test, courts first inquire whether an actual conflict exists between the laws of the potentially relevant states." *Id.* "With an actual conflict, courts must then determine, by reference to the Restatement, which state has the most significant relationship to the case and parties." *Id.*  When the court "must apply an individualized choice of law analysis to each plaintiff's claims, the proliferation of disparate factual and legal issues is compounded exponentially." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (citation omitted).  "In such circumstances, the predominance requirement of Rule 23(b) cannot be met," *id.*, because when "claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable," *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002); *accord In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (granting mandamus to decertify multistate class because, "[i]f more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing the jury on the relevant law").

Here, Plaintiffs attempt to plead a nationwide class even though their legal theories vary dramatically from state to state and, in many states, do not exist at

all.[4]  For instance, the economic loss rule bars negligence and negligence *per se*

claims in 23 of the 34 states in the proposed nationwide class.[5]  *See, e.g.*, Catherine

M. Sharkey, *Can Data Breach Claims Survive the Economic Loss Rule?*, 66

DePaul L. Rev. 339, 349 (2017) ("The first lesson to emerge from data security

breach cases is that the extent to which the stranger economic loss rule will bar

recovery is highly dependent on the governing state law, which varies considerably

across the United States.").  Ten of the 34 states do not allow negligence *per se*

claims at all.[6]  Four more limit negligence *per se* claims to circumstances that

Plaintiffs fail to allege, such as "breach of a rule relating to electrical fire safety,

the use of smoke alarms, or driving while under the influence."  *Buchanan v.*

*Simplot Feeders, LLC*, 2019 WL 7763826, at *2 (E.D. Wash. Oct. 29, 2019).[7]

The elements of negligence similarly vary among the 50 states.  As courts

have recognized, "there is no uniform cause of action that applies nationwide" for

---

[4] As discussed in Samsung's motion to dismiss, Plaintiffs lack standing to assert
claims under the laws of the states where they do not reside.  *See, e.g.*, *Ponzio v.*
*Mercedes USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020) (plaintiffs bringing
putative class actions "lack standing to assert claims on behalf of unnamed
plaintiffs in jurisdictions where [the named plaintiffs] have suffered no alleged
injury.").  As discussed below, however, even the laws of those 34 states with a
named representative conflict sharply, such that class treatment would be
unmanageable even limited to those 34 states.

[5] *See* App. 2 to Mot. to Dismiss at Column B.

[6] *See* App. 2 to Mot. to Dismiss at Column D.

[7] *See* App. 2 to Mot. to Dismiss at Column F.

negligence.  *Adams Pointe I, L.P. v. Tru-Flex Metal Hose Corp.*, 2020 WL 4199557, at *10 (W.D. Pa. July 17, 2020), *report and recommendation adopted*, 2020 WL 4937455 (W.D. Pa. Aug. 24, 2020), *aff'd*, 2021 WL 3612155 (3d Cir. Aug. 16, 2021).  Here, Plaintiffs' negligence claim on behalf of a national class would require application of the laws of 51 jurisdictions, including differences in issues ranging from the basis and scope analysis, the nature of duty of care owed, and definition of proximate cause, to the applicable statute of limitations. *Hardwick v. 3M Co.*, 2022 WL 668339, at *19 (S.D. Ohio Mar. 7, 2022); *see also In re Am. Med. Sys., Inc.*, 75 at 1085 ("a comparison of differing state pattern instructions on negligence and differing judicial formulations of the meaning of negligence and the subordinate concepts" reveal the "significance" of "how the law of negligence differs from jurisdiction to jurisdiction").

For example, many states do not recognize a duty to protect personal information.[8]  This variation among state negligence laws is crucial because Plaintiffs' nationwide negligence theory turns on the threshold allegation that "Samsung owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the PII in its possession from being compromised."  Compl. ¶ 271.  As the Seventh Circuit put it, "[t]he voices of the quasi-sovereigns that are the states of the United States sing

---

[8] *See* App. 2 to Mot. to Dismiss at Column C.

negligence with a different pitch." *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1301 (7th Cir. 1995).

Plaintiffs' unjust enrichment claims also turn on diverse, conflicting state laws. "[A] true conflict exists amongst the [states'] unjust enrichment laws." *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2015 WL 3623005, at *30 (E.D. Pa. June 10, 2015). "Indeed, courts have determined that the states' unjust-enrichment laws vary in relevant respects." *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 353 (E.D.N.Y. 2016) (collecting cases) (quotation marks omitted); *accord Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) ("[E]lements necessary to establish a claim for unjust enrichment also vary materially from state to state."); *In re Actiq Sales & Mktg. Pracs. Litig.*, 307 F.R.D. 150, 164-166 & nn. 23-27 (E.D. Pa. 2015). The differences include "(1) whether the claim exists as an independent cause of action, (2) whether an inadequate remedy at law must be shown, (3) whether the benefit obtained must have been done so at the direct expense of the plaintiff, (4) the level of misconduct that must be proven, (5) the scope of the statute of limitations, (6) the accrual of the statute of limitations, and (7) availability of defenses such as laches and unclean hands." *Gordon v. Sig Sauer, Inc.*, 2019 WL 4572799, at *20-22 (S.D. Tex. Sept. 20, 2019) (striking national unjust enrichment class allegations). Indeed, unjust enrichment is not a

24

standalone cause of action in three of Plaintiffs' states.[9]  And under the laws of 26 of the 34 states, a plaintiff must allege the absence of an adequate remedy at law, which Plaintiffs do not even attempt to do here.[10]  "The resulting differential treatment is not accidental—the unique tailoring of the unjust enrichment laws reflects the policy choices of the state as to when the equitable remedy should be made available."  *Vista Healthplan*, 2015 WL 3623005, at *30.

The same is true of Plaintiffs' contract claims brought under the laws of 34 states.  "[S]tate breach of contract laws are in conflict with regard to issues such as the application of the parol evidence rule, burdens of proof and statutes of limitations."  *Payne*, 2010 WL 2342388, at *9 (quotation marks omitted).  Such issues have resulted in substantial "variation among state laws of contract."  *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 468 (D.N.J. 2009).

No discovery can overcome the state-by-state variation among Plaintiffs' legal theories.  Indeed, Plaintiffs themselves have already recognized that many states prohibit certain of the claims asserted on behalf of the proposed nationwide class.  *See* Compl. Count 2 n.56, Count 3 n.57.  Plaintiffs attempt to evade this fatal flaw by conceding that they "do not bring [the barred] cause[s] of action on behalf of members of" the states that prohibit their claims.  *Id.*  But Plaintiffs

---

[9] *See* App. 5 to Mot. to Dismiss at Column B.

[10] *See* App. 5 to Mot. to Dismiss at Column C.

nevertheless seek to certify a national class of consumers that **would include** those individuals.  Put differently, Plaintiffs seek certification of a nationwide class alleging violations of numerous state laws Plaintiffs themselves admit do not apply nationwide.  That is "the antithesis of a class action."  *Mack v. Gen. Motors Acceptance Corp.*, 169 F.R.D. 671, 678 (M.D. Ala. 1996).

> As one court recently observed:

> [S]ome jurisdictions sing the tune of tort liability for economic loss in C-sharp minor, while others sing it in E-flat major.  Still others carry the tune not in any key at all, but in a Phrygian mode.  Such a chorus might work for an avant-garde opera from the mid-twentieth century, but Rule 23 requires something closer to Beethoven's Ninth.  There are too many differences in state law to certify this case as a class action.

*S. Indep. Bank v. Fred's, Inc.*, 2019 WL 1179396, at *19 (M.D. Ala. Mar. 13, 2019).

## CONCLUSION

Plaintiffs' Complaint highlights on its face the numerous individualized factual issues that preclude typicality and predominance.  Plaintiffs allege myriad injuries, ranging from identity theft to annoying spam calls.  These claims would require separate trials on unique defenses, causation issues, and alleged injuries that would become the focus of the litigation.  Further, the state laws underlying Plaintiffs' proposed nationwide class allegations vary dramatically from jurisdiction to jurisdiction and would call for the application of the diverging laws of numerous states for each of the six substantive causes of action asserted in the

Complaint.  The burdens of having to conduct a choice-of-law analysis for each

claim on behalf of each proposed class member one at a time and apply a different

state's law for each individual would make class-wide treatment of this case

completely unmanageable.   Allowing this case to proceed under the false premise

that it is a viable class action would impose significant burden and expense on the

Court and the parties for no good reason.  The Court should resolve this issue now

and strike Plaintiffs' class allegations with prejudice.

Dated: August 11, 2023

Respectfully submitted,

**ARCHER & GREINER, P.C.**

By: */s/ Maureen T. Coghlan*
    Carlos M. Bollar
    Maureen Coghlan
    1025 Laurel Oak Road
    Voorhees, NJ 08043
    Tel: (856) 795-2121
    Fax: (856) 795-0574
    cbollar@archerlaw.com
    mcoghlan@archerlaw.com

**HUNTON ANDREWS KURTH LLP**

By: */s/ Neil K. Gilman*
    Neil K. Gilman
    Michael J. Mueller
    2200 Pennsylvania Ave. NW
    Washington, DC 20009
    Tel: (202) 955-1500
    Fax: (202) 778-2201
    ngilman@HuntonAK.com

mmueller@HuntonAK.com

**ARNOLD & PORTER KAYE
  SCHOLER LLP**

By: */s/ Arthur E. Brown*
        Arthur E. Brown
        Elie Salamon
        250 West 55th Street
        New York, NY 10019
        Tel: (212) 836-8000
        Fax: (212) 836-8689
        arthur.brown@arnoldporter.com
        elie.salamon@arnoldporter.com

        Daniel E. Raymond
        70 West Madison Street
        Suite 4200
        Chicago, IL 60602
        daniel.raymond@arnoldporter.com

        *Attorneys for Defendant Samsung
        Electronics America, Inc.*

227600167 v1

28