# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: SAMSUNG CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>*This Document Relates To:*<br>*ALL ACTIONS* | Case No. 1:23-md-03055-CPO-EAP<br><br>Hon. Christine P. O'Hearn<br>District Judge<br><br>Hon. Elizabeth A. Pascal<br>Magistrate Judge |

# <u>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT</u>

# <u>TABLE OF CONTENTS</u>

<u>Title</u>                                                                                                       <u>Page</u>

TABLE OF AUTHORITIES ................................................................................. vi

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ............................................................................... 4

ARGUMENT ........................................................................................................ 9

I.      STANDARD OF REVIEW ........................................................................ 9

II.     PLAINTIFFS ADEQUATELY PLEAD INJURY AND DAMAGES ........ 11

        A.      Plaintiffs' Plausible Allegations and Most Favorable Inferences
                Control, Not Samsung's Self-Invented Version of Events ................ 12

        B.      Samsung's Challenges to Specific Damages Categories Fail ............ 14

                1.      Diminished Value of PII ......................................................... 14

                2.      Loss of Benefit of the Bargain ................................................ 17

                3.      Plaintiffs' Plausible Identity Theft Allegations Constitute
                        Cognizable Injuries ................................................................ 21

                        i.      The allegations of exposed data plausibly lead to identity
                                theft ............................................................................. 22

                        ii.     Identity theft is a cognizable injury ............................... 25

                4.      Out-of-Pocket Expenditures on Prophylactic and Mitigation
                        Measures .................................................................................. 27

                5.      Lost Time .................................................................................. 29

                6.      Increased Phishing and Spam Emails and Calls ..................... 31

                7.      Imminent Risk of Future Harms .............................................. 33

III.   PLAINTIFFS ADEQUATELY PLEAD EACH COMMON LAW CAUSE OF ACTION ................................................................................34

A.   Plaintiffs Plausibly Allege Negligence (Count 1)...............................36

   1.   Samsung Had a Duty to Protect Customer PII ........................36

   2.   Samsung Breached Its Duty to Protect Customer Data...........41

B.   Plaintiffs Plausibly Allege Negligence *Per Se* (Count 2) ..................42

   1.   The FTC Act May Serve as a Predicate Statute under Connecticut and Georgia Law ..................................................42

   2.   Plaintiffs Have Alleged Specific State Statutes That Serve as Bases for Negligence Per Se Claims........................................45

   3.   In States That Do Not Recognize It as a Separate Cause of Action, Negligence Per Se Offers Evidence of a Breach of Duty, if Not a Rebuttable Presumption of Negligence .............46

C.   The Economic Loss Doctrine Does Not Bar Plaintiffs' Negligence Claims...................................................................................................47

   1.   Plaintiffs Allege More Than Pure Economic Loss Caused by Samsung's Negligence.............................................................48

   2.   Samsung Ignores Exceptions to the Economic Loss Doctrine .48

   3.   Samsung Fails to Acknowledge the Applicability of the Independent Duty and Special Relationship Exceptions..........52

D.   Plaintiffs Plausibly Allege Breach of Confidence (Count 3)..............53

E.   Plaintiffs Plausibly Allege Breach of Contract (Count 4) and Breach of Implied Contract (Count 5)............................................................59

   1.   Samsung's Privacy Policy and Other Statements Form an Enforceable Contract...............................................................60

2.    Plaintiffs Plausibly Allege a Breach of the Privacy Policy ......62

3.    Plaintiffs Plausibly Allege the Existence of a Valid Implied Contract ................................................................................63

F.    Plaintiffs Plausibly Allege Unjust Enrichment (Count 6)..................66

1.    California, Illinois, and Texas Recognize Unjust Enrichment as a Cause of Action ....................................................................67

2.    Plaintiffs Can Allege Unjust Enrichment as an Alternative Cause of Action ......................................................................67

3.    Plaintiffs' Relationship with Samsung is Not Attenuated ........68

G.    Plaintiffs Plausibly Allege a Declaratory Judgment Claim (Claim 7)70

IV.    PLAINTIFFS ADEQUATELY PLEAD STATUTORY CONSUMER PROTECTION CLAIMS (CLAIMS 8 THROUGH 61)..............................71

A.    Rule 8(a)(2) Applies to Most of Plaintiffs' Statutory Claims.............72

1.    Plaintiffs Satisfy Rule 8 ...........................................................73

2.    To the Extent Necessary, Plaintiffs Satisfy Rule 9(b) ..............74

3.    Plaintiffs Plausibly Allege Material Misrepresentations ..........75

4.    Plaintiffs Plausibly Allege Actionable Omissions....................77

5.    Plaintiffs Plausibly Allege Reliance Where Required..............80

6.    Plaintiffs Plausibly Allege Proximate Causation Where Required ................................................................................81

7.    Plaintiffs Plausibly Allege Cognizable Injuries.......................82

8.    Plaintiffs Plausibly Allege the Requisite Consumer Transaction ................................................................................85

B.  Samsung's Additional State Specific Arguments for Dismissal Fail .86

1.  Plaintiffs May Bring Statutory Claims on Behalf of a Class....86

2.  Pre-Suit Notice Requirements Do Not Bar Plaintiffs' Claims .87

3.  Plaintiffs are Entitled to Injunctive Relief................................89

4.  Plaintiffs State a Claim Under the Connecticut Unfair Trade Practices Act ...............................................................................90

5.  Plaintiffs State Claims Under the Consumer Protection Laws of Iowa, Michigan, New Jersey, and Wisconsin...........................91

6.  Plaintiffs State Claims Under the California Unfair Competition Law ("UCL") ...........................................................................91

7.  Plaintiffs State Claims Under the California Consumer Legal Remedies Act ....................................................................94

V.  PLAINTIFFS ADEQUATELY PLEAD DATA BREACH NOTIFICATION LAW VIOLATIONS ...............................................................................96

A.  Plaintiffs Have Private Rights of Action............................................96

B.  Plaintiffs Plausibly Allege Injuries ....................................................97

C.  Plaintiffs Plausibly Allege Samsung Had a Duty to Data Breach Victims ................................................................................................99

D.  Plaintiffs Plausibly Allege Samsung's Data Security Practices Were Unreasonable ....................................................................................102

VI.  PLAINTIFFS ADEQUATELY PLEAD THEIR STATUTORY INVASION OF PRIVACY CLAIMS ...........................................................................104

A.  Rhode Island Right to Privacy Claim...............................................104

B.  Massachusetts Privacy Statute Claim...............................................106

iv

CONCLUSION ..................................................................................................... 109

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Ables v. Brooks Bros. Grp., Inc.*,
  No. 17-cv-4309, 2018 WL 8806667 (C.D. Cal. June 7, 2018) .........................21

*In re Adobe Sys., Inc. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014).........................................................*passim*

*Alcala v. Vazmar Corp.*,
  167 Cal. App. 4th 747 (2008) .............................................................................46

*Alexander v. Wells Fargo Bank, N.A.*,
  23-CV-617-DMS-BLM, 2023 WL 5109532 (S.D. Cal. Aug. 9,
  2023) ................................................................................................................103

*Allen v. Novant Health, Inc.*,
  No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ...................56

*In re Am. Fin. Res., Inc. Data Breach Litig.*,
  No. 22-cv-1757, 2023 WL 3963804 (D.N.J. Mar. 29, 2023).....................65, 82

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach
  Litig.*,
  No. CV 19-MD-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021)............*passim*

*Amato v. Subaru of Am., Inc.*,
  No. 18-16118, 2021 WL 2154976 (D.N.J. May 27, 2021) (Georgia
  statute)...............................................................................................................87

*Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*,
  328 F. Supp. 3d 141 (S.D.N.Y. 2018) ...............................................................49

*In re Ambry Genetics Data Breach Litig.*,
  567 F. Supp. 3d 1130 (C.D. Cal. 2021).......................................58, 59, 100, 108

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016).........................................................93, 94

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-md-2617, 2016 WL 3029783 (N.D. Cal. May 27, 2016)...............*passim*

*Antman v. Uber Techs., Inc.*,
  2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ....................................................97

*In re Arby's Rest. Grp. Litig.*,
  No. 1:17-cv-0514-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018)................71

*Argabright v. Rhee, Mfg. Co.*,
  201 F. Supp. 3d 578 (D.N.J. 2016)....................................................................73

*Argen v. Kessler*,
  No. 18-cv-963 (KM) (JBC), 2019 WL 2067639 (D.N.J. May 10,
  2019) ..................................................................................................................70

*In re Arthur J. Gallagher Data Breach Litig.*,
  631 F. Supp. 3d 573 (N.D. Ill. 2022)............................................................37, 98

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................10

*Attias v. CareFirst, Inc*,
  365 F. Supp. 3d 1 (D.D.C. 2019)..................................................................19, 84

*In re AZEK Bldg. Prod., Inc., Mktg. & Sales Pracs. Litig.*,
  82 F. Supp. 3d 608 (D.N.J. 2015)......................................................................36

*In re Bank of Am. California Unemployment Benefits Litig.*,
  21-MD-2992-LAB-MSB, 2023 WL 3668535 (S.D. Cal. May 25,
  2023) ................................................................................................................103

*Bardwill Indus. Inc. v. Kennedy*,
  2020 WL 2748248 (S.D.N.Y. May 27, 2020) ....................................................74

*Barrigas v. United States*,
  No. 17-CV-10232-ADB, 2018 WL 1244780 (D. Mass. Mar. 9,
  2018) ................................................................................................................108

*Beckwith v. Bellsouth Telecomms., Inc.*,
  146 F. App'x 368 (11th Cir. 2005)....................................................................74

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................9

*Bell v. Dave*,
No. No. 21-11816 (ES) (ESK), 2022 WL 2667017 (D.N.J. July 11, 2022) ..........................................................................................74

*Bily v. Arthur Young & Co.*,
3 Cal. 4th 370 (1992) ........................................................................77

*Bohnak v. Marsh & McLennan Companies, Inc.*,
79 F.4th 276, 2023 WL 5437558 (2d Cir. Aug. 24, 2023) ................31, 33, 34

*Boorstein v. CBS Interactive, Inc.*,
222 Cal. App. 4th 456 (2013) ...........................................................98

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ............................................10, 22, 26

*Bratt v. Int'l Bus. Machines Corp.*,
467 N.E.2d 126 (Mass. 1984) ........................................................107

*In re Brinker Data Incident Litig.*,
No. 3:18-cv-686-J-32MCR, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ..................................................................................*passim*

*Broach-Butts v. Therapeutic Alternatives, Inc.*,
191 A.3d 702 (N.J. Super. Ct. App. Div. 2018) ...............................82

*Brockman v. Taylor J. Fenn & Redpeak Props.*,
No. 18CV34569, 2019 Colo. Dist. LEXIS 4912 ..............................56

*Brusco v. Harleysville Ins. Co.*,
No. 14-cv-914, 2014 WL 2916716 (D.N.J. June 26, 2014) ...........11, 13

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) ............................................65

*In re Capital One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) ........................................*passim*

*Cappello v. Walmart Inc.*,
394 F. Supp. 3d 1015 (N.D. Cal. 2019) ...........................................20

*Cardenas v. Toyota Motor Corp.*,
418 F. Supp. 3d 1090 (S.D. Fla. 2019) ............................................87

*Carlsen v. GameStop, Inc.*,
833 F.3d 903 (8th Cir. 2016) ..............................................................18

*Caspersen v. Oring*,
441 F. Supp. 3d 23 (D.N.J. 2020) ......................................................75

*Cent. Oklahoma Pipeline, Inc. v. Hawk Field Servs., LLC*,
2012 Ark. 157 (2012).........................................................................46

*Chamberlain v. Ford Motor Co.*,
2003 WL 25751413 (N.D. Cal. Aug. 6, 2003) ..................................94

*In re Chevrolet Bolt EV Battery Litig.*,
633 F. Supp. 3d 921 (E.D. Mich. 2022) ............................................78

*Citaramanis v. Hallowell*,
328 Md. 142 (1992) ...........................................................................98

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) (Illinois) .............................................67

*Clemens v. ExecuPharm Inc*.,
48 F.4th 146 (3d Cir. 2022) .........................................................*passim*

*Cohen v. Subaru of Am., Inc.*,
No. 1:20-cv-08442-JHR-AMD, 2022 WL 714795 (D.N.J. Mar. 10, 2022) ...........................................................................................78, 87

*Colonial Imports, Inc. v. Carlton Nw., Inc.*,
121 Wash. 2d 726 (1993)...................................................................79

*Connelly v. Lane Const. Corp.*,
809 F.3d 780 (3d Cir. 2016) ..............................................................10

*Cooper v. Samsung Elecs. Am., Inc.*,
No. CIV.A. 07-3853 JLL, 2008 WL 4513924 (D.N.J. Sept. 30, 2008) ...........................................................................................68, 69

*Corona v. Sony Pictures Entm't, Inc.*,
No. 14-cv-9600, 2015 WL 3916744 (C.D. Cal. June 15, 2015) .......31

*Craig & Bishop, Inc. v. Piles*,
247 S.W.3d 897 (Ky. 2008)...............................................................83

*CVS Pharmacy, Inc. v. Bostwick*,
 251 Ariz. 511 (2021) ............................................................................................37

*Daly v. Metro. Life Ins. Co.*,
 782 N.Y.S.2d 530 (Sup. Ct. 2004) .......................................................................57

*Dando v. Bimbo Food Bakeries Distribution, LLC*,
 No. 14-2956, 2017 WL 1362022 (D.N.J. Apr. 10, 2017) ....................................67

*Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*,
 187 F. Supp. 2d 400 (W.D. Pa. 2002)..................................................................47

*Dep't of Labor v. McConnell*,
 828 S.E.2d 352 (Ga. 2019) ..................................................................................43

*In re: DePuy Orthopaedics, Inc.*,
 No. 3:11-MD-2244-K, 2016 WL 6271465 (N.D. Tex. Jan. 5, 2016) ................56

*Discover Bank v. Morgan*,
 363 S.W.3d 479 (Tenn. 2012) .............................................................................83

*Dittman v. UPMC*,
 649 Pa. 496 (2018)........................................................................................39, 51

*Doe v. Princeton Univ.*,
 30 F.4th 335 (3d Cir. 2022) ..................................................................10, 12, 13

*Dolmage v. Combined Ins. Co. of Am.*,
 No. 14 C 3809, 2016 WL 754731 (N.D. Ill. Feb. 23, 2016) ..............................61

*Duffy v. Charles Schwab & Co.*,
 123 F. Supp. 2d 802 (D.N.J. 2000)......................................................................59

*Eady v. TapFury LLC*,
 No. 17-13483 (ES) (JSA), 2022 WL 986269 (D.N.J. Apr. 1, 2022).................78

*Eiess v. USAA Fed. Savings Bank*,
 404 F. Supp. 3d 1240 (N.D. Cal. 2019)...............................................................62

*Ellis v. Safety Ins. Co.*,
 672 N.E.2d 979 (Mass. App. Ct. 1996) ..............................................................107

*Enslin v. Coca-Cola Co.*,
    136 F. Supp. 3d 654 (E.D. Pa 2015) ..................................................................64

*Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*,
    122 F.3d 1211 (9th Cir. 1997) .........................................................................54

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    362 F. Supp. 3d 1295 (N.D. Ga. 2019)........................................................*passim*

*ESG Capital Partners, Ltd. P'ship v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) (California) .......................................................67

*Eun Bok Lee v. Ho Chang Lee*,
    411 S.W.3d 95 (Tex. App. 2013) (Texas) .........................................................67

*F.T.C. v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015) ......................................................................43, 44

*Falco v. Nissan N. Am., Inc.*,
    96 F. Supp. 3d 1053 (C.D. Cal. 2015) ..............................................................95

*Falvey v. Hamelburg*,
    347 Mass. 430 (1964) ....................................................................................47

*Feitler v. Animation Celection, Inc.*,
    13 P.3d 1044 (Or. Ct. App. 2000)....................................................................83

*Fernandez v. Leidos, Inc.*,
    127 F. Supp. 3d 1078 (E.D. Cal. 2015) .............................................................33

*Flores Mendez v. Zoosk, Inc.*,
    No. 20-cv-4929, 2021 WL 308543 (N.D. Cal. Jan. 30, 2021) .........................102

*Flynn v. FCA US LLC*,
    327 F.R.D. 206 (S.D. Ill. 2018) .......................................................................79

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*,
    174 F.R.D. 332 (D.N.J. 1997)..........................................................................35

*Fraser Engine Rebuilder, Inc. v. Lancaster*,
    No. 360110, 2023 WL 5281853 (Ct. App. June 8, 2023) ..................................50

*Frezza v. Google Inc.*,
No. 12-CV-00237-RMW, 2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) ...................................................................................................66

*Furla v. Jon Douglas Co.*,
65 Cal. App. 4th 1069 (1998) ..............................................................76, 77

*Gardiner v. Walmart Inc.*,
2021 WL 4992539 (N.D. Cal. July 28, 2021) .....................................19

*Gardner v. First Escrow Corp.*,
696 P.2d 1172 (Or. Ct. App. 1985).....................................................79

*Gattman v. Favro*,
306 Or. 11 (1988)...............................................................................47

*In re GE/CBPS Data Breach Litig.*,
No. 20-cv-2903, 2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ..........32

*Gen. Motors LLC v. Ashton*,
No. 20-12659, 2021 WL 2549498 (D.N.J. June 22, 2021) ................78

*In re Generics Pharmaceuticals Pricing Antitrust Litig.*,
368 F. Supp. 3d 814 (E.D. Pa. 2019)...................................................88

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal 2020)..................................................61

*Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*,
No. 21-11313 (KM) (MAH), 2022 WL 111061 (D.N.J. Jan. 12, 2022) .................................................................................................63

*Green v. Canidae Corp.*,
No. CV 09-0486 GAF, 2009 WL 9421226 (C.D. Cal. June 9, 2009) .................................................................................................95

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. 2021) ....................................................16

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
No.: CV 18-03019 SJO, 2018 WL 6802818 (CD. Cal. Oct. 1, 2018) .................................................................................................93

*Hammond v. The Bank of New York Mellon Corp.*,
2010 WL 2643307 (S.D.N.Y. June 25, 2010) .....................................................84

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
613 F. Supp. 2d 108 (D. Me. 2009) ....................................................................27

*Herron v. Best Buy Stores, Ltd. P'ship*,
2013 WL 4432019 (E.D. Cal. Aug. 15, 2013) ....................................................95

*Hess v. Fuller*,
No. 2-88-2272-O, 1990 WL 37608 (D. Kan. Mar. 28, 1990) ...........................56

*Heyman v. CitiMortgage, Inc.*,
No. 14-1680-KM-MAH, 2019 WL 2642655 (D.N.J. June 27,
2019) ..................................................................................................................80

*Holmes v. Countrywide Financial Corp.*,
2012 WL 2873892 (W.D. Ky. July 12, 2012) ....................................................84

*In re Home Depot, Inc.*,
2016 WL 2897520 (N.D. Ga. May 18, 2016)...............................................71, 91

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017) .............................................................17, 53, 54, 58

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010) ..............................................................................74

*Inspira Health Network v. Am. Guar. & Liab. Ins. Co.*,
637 F. Supp. 3d 200 (D.N.J. 2022) (O'Hearn, J.)...............................................10

*In re Intel Corp. CPU Mktg, Sales Pracs. and Prod. Liab. Litig.*,
No. 3:18-2828, 2020 WL 1495304 (D. Or. Mar. 27, 2020) ...............................19

*Irwin v. Jimmy John's Franchise, LLC*,
175 F. Supp. 3d 1064 (C.D. Ill. 2016)...........................................................19, 36

*J'Aire Corporation v. Gregory*,
24 Cal. 3d 799 (1979) ........................................................................................52

*Jackson v. Loews Hotels, Inc.*,
No. 18-cv-827, 2019 WL 6721637 (C.D. Cal. July 24, 2019) ...........................32

*JH Kelly, LLC v. Quality Plus Services, Inc.*,
   305 Or. App. 565 (2020) ..................................................................................51

*Johnson v. GAPVT Motors, Inc.*,
   292 Ga. App. 79 (2008) ..................................................................................80

*Johnson v. Microsoft Corp.*,
   834 N.E.2d 791 (Ohio 2005) .........................................................................69

*Jones v. Commerce Bancorp*,
   No. 06 Civ. 835(HB), 2006 WL 1409492 (S.D.N.Y. May 23, 2006) ...............57

*Jordan v. Forbes*,
   No. 1:19-CV-02660-RM-SKC, 2021 WL 2792336 (D. Colo. Apr.
   22, 2021) .......................................................................................................56

*In re K-Dur Antitrust Litig.*,
   338 F. Supp. 2d 517 (D.N.J. 2004) .................................................................66

*Kamal v. J. Crew Grp., Inc.*,
   918 F.3d 102 (3d Cir. 2019) ...........................................................................54

*Keilholtz v. Superior Fireplace Co.*,
   2009 WL 839076 (N.D. Cal. March 30, 2009) ...............................................96

*Kemp v. Resurgent Cap. Servs.*,
   No.13-11794, 2013 WL 5707797 (E.D. Mich. Oct. 21, 2013) ...................49, 50

*In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*,
   383 F. Supp. 3d 187 (S.D.N.Y. 2019) ............................................................69

*Kim v. Carter's, Inc.*,
   598 F.3d 362 (7th Cir. 2010) ..........................................................................98

*Kiriakos v. Phillips*,
   139 A.3d 1006 (2016) .....................................................................................47

*Kopel v. Kopel*,
   229 So. 3d 812 (Fla. 2017) .............................................................................69

*Krottner v. Starbucks Corp.*,
   406 F. App'x 129 (9th Cir. 2010) ...............................................................25, 65

*Krys v. Aaron*,
106 F. Supp. 3d 472 (D.N.J. 2015) ...................................................................35

*In re Liquid Aluminum Antitrust Litig.*,
No.: 16-md-2687 (JLL), 2017 WL 3131977 (D.N.J. July 20, 2017) ................87

*Lisk v. Lumber One Wood Preserving*,
792 F.3d 1331 (11th Cir. 2015) ......................................................................87

*Longenecker-Wells v. Benecard Servs.*,
658 F. App'x 659 (3d Cir. 2016) .....................................................................64

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
No. 13-cv-01180-BLF, 2015 WL 4755335 (N.D. Cal. Aug. 11,
2015) ..............................................................................................................87

*Lowery v. Echostar Satellite Corp.*,
160 P.3d 959 (Okla. 2007)...............................................................................37

*Maag v. U.S. Bank, Nat'l Ass'n*,
No. 21-CV-00031-H-LL, 2021 WL 5605278 (S.D. Cal. Apr. 8,
2021) .............................................................................................................104

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
No. 12–07849 (WHW)(CLW), 2015 WL 1270958 (D.N.J. Mar.
18, 2015) ........................................................................................................78

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) ............................................................................81

*In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020)...........................................................*passim*

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
No. 19-MD-2879, 2020 WL 6290670 (D. Md. Oct. 27, 2020) ........................43

*McCabe v. Daimler AG*,
160 F. Supp. 3d 1337 (N.D. Ga. 2015).............................................................79

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022).......................................................42, 98

*In re Mercedes-Benz Emissions Litig.*,
  No.: 16-881 (JLL)(JAD), 2019 WL 413541 (D.N.J. Feb. 1, 2019) .................87

*Meyer v. Christie*,
  No. 07-2230-JWL, 2007 WL 3120695 (D. Kan. Oct. 24, 2007).......................61

*Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council*,
  964 F.3d 218 (3d Cir. 2020) .................................................................59

*N. Am. Chem. Co. v. Superior Court*,
  59 Cal. App. 4th 764 (1997) .........................................................49, 52

*Newton v. Am. Debt Servs., Inc.*,
  2013 WL 5592620 (N.D. Cal. Oct. 10, 2013) ...................................95

*Opheim v. Volkswagen Aktiengesellschaft*,
  No. 20-02483 (KM) (ESK), 2021 WL 2621689 (D.N.J. June 25,
  2021) .............................................................................................78

*Opris v. Sincera Reprod. Med.*,
  No. 21-cv-3072, 2022 WL 1639417 (E.D. Pa. May 24, 2022) .............14, 48, 51

*Parker Bldg. Servs. Co. v. Lightsey*,
  925 So.2d 927 (Ala. 2005)..................................................................46

*Pearson v. Philip Morris, Inc.*,
  361 P.3d 3 (Or. 2015) ...................................................................98, 99

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ............................................................10

*Philips v. Ford Motor Co.*,
  No. 14-CV-02989-LHK, 2015 WL 4111448 (N.D. Cal. July 7,
  2015) .............................................................................................95

*Pontbriand v. Sundlun*,
  699 A.2d 856 (R.I. 1997).................................................104, 105, 106

*Ponzio v. Mercedes-Benz USA, LLC*,
  447 F. Supp. 3d 194 (D.N.J. 2020)....................................................78

*Portier v. NEO Tech. Sols.*,
No. 3:17-CV-30111-TSH, 2019 WL 7946103 (D. Mass. Dec. 31, 2019) ............................................................................................39

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
No. 3:15-md-2633-SI, 2017 WL 539578 (D. Or. Feb. 9, 2017) ........................61

*Prickett v. BAC Home Loans*,
946 F. Supp. 2d 1236 (N.D. Ala. 2013)...........................................................46

*Pruchnicki v. Envision Healthcare Corp.*,
439 F. Supp. 3d 1226 (D. Nev. 2020)...........................................................14, 16

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) .....................................................................31

*Ramirez v. Paradies Shops, LLC*,
69 F.4th 1213 (11th Cir. 2023) .........................................................................38

*Ramos v. Wells Fargo Bank, N.A.*,
23-CV-0757-L-BGS, 2023 WL 5310540 (S.D. Cal. Aug. 17, 2023) .............103

*Razuki v. Caliber Home Loans, Inc.*,
No. 17CV1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ......................................................................................................103

*Reed v. Dynamic Pet Prods.*,
No. 15cv0987-WQH-DHB, 2016 WL 3996715 (S.D. Cal. July 21, 2016) (Louisiana statute) ...........................................................................87

*Remijas v. Neiman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015) .......................................................................30, 41

*Rickman v. BMW of N. Am.*,
No. 18-4363(KM) (JBC), 2020 WL 3468250 (D.N.J. June 25, 2020) ...................................................................................................88, 89

*In re Rutter's Inc. Data Sec. Breach Litig.*,
511 F. Supp. 3d 514 (M.D. Pa. 2021)..........................................................51, 52

*S. Indep. Bank v. Fred's, Inc.*,
No. 2:15-CV-799-WKW, 2019 WL 1179396 (M.D. Ala. Mar. 13, 2019) ...............................................................................................................52

*Salas v. Acuity-CHS, LLC,*
No. 22-317-RGA, 2023 WL 2710180 (D. Del. Mar. 30, 2023) ........................69

*Savidge v. Pharm-Save, Inc.,*
2017 WL 5986972 (W.D. Ky. Dec. 1, 2017) ......................................................26

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
567 N.E.2d 912 (Mass. 1991) ...........................................................................107

*Schmitt v. SN Servicing Corp.,*
No. 21-cv-3355, 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .........................29

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.,*
45 F. Supp. 3d 14 (D.D.C. 2014) ........................................................................23

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis,*
No. 15-cv-6549, 2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) ........................88

*Serv. Rd. Corp. v. Quinn,*
698 A.2d 258 (Conn. 1997) ...............................................................................83

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
559 U.S. 393 (2010) .................................................................................87, 88, 89

*Shafran v. Harley-Davidson, Inc.,*
2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) .....................................................84

*Skeen v. BMW of N. Am., Ltd. Liab. Co.,*
No. 2:13–cv–1531–WHW–CLW, 2014 WL 283628 (D.N.J. Jan. 24, 2014) ..........................................................................................................81

*Slogowski v. Lyness,*
324 Or. 436 (1996) .............................................................................................50

*Smallman v. MGM Resorts Int'l,*
638 F. Supp. 3d 1175 (D. Nev. 2022) ....................................................16, 19, 20

*Smolinski v. Taulli,*
276 So.2d 286 (La. 1973) ..................................................................................47

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,*
613 F. Supp. 3d 1284 (S.D. Cal. 2020) .................................................80, 91, 98

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012)...................................................27

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020)..................................................32

*Stephens v. Availity*,
No. 5:19-cv-236-Oc-30PRL, 2019 WL 13041330 (M.D. Fla. Oct. 1, 2019) ...............................................................................................66

*Stewart Title Guar. Co. v. Greenlands Realty, LLC*,
58 F. Supp. 2d 370 (D.N.J. 1999)........................................................62

*In re Subaru Battery Drain Prod. Liab. Litig.*,
No. 1:20-cv-03095-JHR-JS, 2021 WL 1207791 (D.N.J. Mar. 31, 2021) ..................................................................................................92

*In re SuperValu, Inc.*,
870 F.3d 763 (8th Cir. 2017) ...............................................................85

*In re SuperValu, Inc. Customer Data Sec. Breach Litig.*,
No. 14-md-2586, 2018 WL 1189327 (D. Minn. Mar. 7, 2018) ...........26

*Sutter Health v. Superior Ct.*,
227 Cal. App. 4th 1546 (2014) ............................................................59

*Svenson v. Google Inc.*,
No. 13-cv-4080, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ...........18

*Sweet v. BJC Health Sys.*,
No. 3:20-CV-00947-NJR, 2021 WL 2661569 (S.D. Ill. June 29, 2021) ..................................................................................................63

*In re Target Corp. Data Sec. Breach Litig.*,
66 F. Supp. 3d 1154 (D. Minn. 2014)..........................................*passim*

*Thiedemann v. Mercedes-Benz USA, LLC*,
872 A.2d 783 (N.J. 2005) ....................................................................83

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010)................................................95

*In re TJX Companies Retail Sec. Breach Litig.*,
    564 F.3d 489 (1st Cir. 2009), *as amended on reh'g in part* (May 5,
    2009) ...................................................................................................43, 44, 45

*Toretto v. Donnelley Fin. Sols., Inc.*,
    583 F. Supp. 3d 570 (S.D.N.Y. 2022) .................................................49

*Torres v. Wendy's Co.*,
    195 F. Supp. 3d 1278 (M.D. Fla. 2016).......................................26, 27

*Tutanji v. Bank of Am.*,
    No. 12–887 (JLL), 2012 WL 1964507 (D.N.J. May 31, 2012).........................98

*Union Bank of Tucson, Arizona v. Griffin*,
    771 P.2d 219 (Okla. 1989)................................................................37

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
    No. 16-2765, 2017 WL 1902160 (D.N.J. May 8, 2017) ....................11

*Vorhees v. Tolia*,
    No. 3:16-cv-8208-BRM-LHG, 2020 WL 1272193 (D.N.J. Mar. 17,
    2020) ..................................................................................................55

*Wallace v. Health Quest Sys.*,
    No. 20........................................................................................58

*Wang v. Massey Chevrolet*,
    97 Cal. App. 4th 856 (2002) ..............................................................94

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ..............................................................35

*In re Wawa, Inc. Data Sec. Litig.*,
    No. 19-6019, 2021 WL 1818494 (E.D. Pa. May 6, 2021) .................71

*Wells Fargo Bank, N.A. v. Jenkins*,
    744 S.E.2d 686 (Ga. 2013) ................................................................43

*Weston v. Pennsylvania*,
    251 F.3d 420 (3d Cir. 2001) ..............................................................73

*In re Wiggins*,
    273 B.R. 839 (Bankr. D. Idaho 2001)................................................83

*Wofse v. Horn*,
    523 F. Supp. 3d 122 (D. Mass. 2021).................................................................106

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
    247 F.3d 1262 (11th Cir. 2001) ..........................................................................90

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (N.D. Cal. 2018).......................................................*passim*

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-md-2752, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ..............*passim*

*Zeni v. Anderson*,
    397 Mich. 117 (1976) ........................................................................................47

**Statutes**

76 O.S.2011 § 1.................................................................................................37

28 U.S.C. § 2201(a) ..........................................................................................70

Cal. Civ. Code § 1798.82(a) ............................................................................100

Colo. Rev. Stat. Ann. § 6-1-716(4) ....................................................................96

Conn. Gen. Stat. §42-110b(b) ............................................................................90

Federal Trade Commission Act, 15 U.S.C. § 45 ........................................... *passim*

Fla. Stat. § 501.171(4)...............................................................................100, 101

Kan. Stat. Ann. § 50-7a02(g) .............................................................................96

Mass. Gen. Laws Ann. ch. 214, § 1B .........................................................106, 109

N.Y. Gen. Bus. Law § 899-aa(2) ......................................................................100

New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*.........................45, 91

Wash. Rev. Code Ann. § 5.40.050...................................................................45

Wash. Rev. Code Ann. § 19.255.010.........................................................45, 101

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 8 ................................................................................*passim*

Fed. R. Civ. P. 9 ................................................................................*passim*

Fed. R. Civ. P. 12 ..............................................................................*passim*

Fed. R. Civ. P. 23 ......................................................................................87

## **INTRODUCTION**

Samsung Electronics, Inc. ("Samsung" or "Defendant") is one of the world's largest consumer electronics and appliance companies, with global sales in the billions. When Samsung customers, including Plaintiffs, buy or register their products, Samsung collects sensitive personally identifying information ("PII") from them, including name, address, date of birth, Social Security number, geolocation data, financial account information, and more. Samsung collects PII because it has value. Samsung uses PII to serve lucrative targeted advertisements and perform market research.

PII also has value on the black market. In July 2022, a third party exfiltrated and stole large swaths of customer PII from Samsung (the "Data Breach") in the fifth security breach of Samsung's systems since 2019. *That is more than one breach per year*, underscoring the endemic shortcomings of Samsung's security measures. This latest Data Breach exposed Plaintiffs' PII to criminals and fraudsters on the Dark Web, where their PII was bought and sold. It has since been used to victimize them.[1] Plaintiffs suffer from identity theft, spend hours resolving fraudulent credit card purchases, pay for credit monitoring services, and fight off phishing scams by phone

---

[1] *See* Amended Consolidated Complaint ("ACC" or "Complaint"), Dkt. 72, detailing how each Plaintiff has been harmed and also Appendix A attached hereto, summarizing injuries claimed by each named Plaintiff.

1

and email. Their PII has lost value, and they fear they will be further victimized in the future.

Several lawsuits across the country were filed to hold Samsung accountable for failing to protect Plaintiffs' private and otherwise sensitive data. After Plaintiffs and Samsung requested that the Judicial Panel on Multidistrict Litigation consolidate the action into an MDL, it did so here.

Samsung's Motion to Dismiss and its Memorandum in Support ("Motion" or "MTD Br.") are legally and factually infirm and the Motion should be denied. Samsung largely ignores Plaintiffs' allegations, which sufficiently allege harms resulting from Samsung's negligence and omissions and exceed the necessary pleading standard. It also attempts to introduce its own version of the facts. Moreover, Samsung's conclusory declaration that Plaintiffs' injuries "could not possibly have been caused by the [Data Breach]" is not only false but also an improper attempt to litigate causation on a 12(b)(6) motion. MTD Br. at 2. As Plaintiffs allege, the Data Breach involved their PII including names, emails, addresses, phone numbers, Social Security numbers, payment card information, demographic information, and geolocation data. ACC, ¶ 26. These classic data breach components plausibly lead to injury, and Plaintiffs have in fact pleaded dozens of injuries caused by the Data Breach. Samsung's insistence that certain categories of information were not compromised is contrary to the facts directly

alleged including the nature of the injuries themselves. If anything, these fact disputes highlight why 12(b)(6) dismissal would be improper.

The Motion fails for other reasons as well. Plaintiffs plead numerous facts supporting their theories of damages, all of which are cognizable. Plaintiffs' tort claims, including negligence, negligence *per se*, and breach of confidence are all properly stated under their bedrock common law elements, and the Court should not prematurely delve into individual state-level intricacies before discovery and a proper choice of law analysis. Plaintiffs' alternative claim for unjust enrichment is proper because the benefit they conferred on Samsung was possession of their PII, regardless of where they purchased Samsung goods. Plaintiffs' declaratory judgment claim is, in fact, a cause of action, despite what Samsung argues. And, Plaintiffs' statutory claims are each properly pleaded. The endless appendices of cases Samsung attaches to its Motion are often cited out of context and misleadingly, and upon scrutiny, do nothing to help its case.

Plaintiffs plausibly state claims for relief, even if *Samsung*, relying on its own version of events, disagrees. When Plaintiffs' allegations are properly credited, as they must be at this stage, Samsung's legal arguments fail, and the Motion should be denied in its entirety. If any portion is granted, it should be without prejudice and with leave to amend.

## FACTUAL BACKGROUND

Samsung makes, markets, and sells appliances and consumer electronics, and Plaintiffs have each purchased Samsung's products and services. ACC, ¶ 11.[2] Many Plaintiffs registered those devices with Samsung.[3] Through these purchases and registrations, Samsung obtains confidential and sensitive information about Plaintiffs, including their PII. *Id.* ¶¶ 1, 6. The extensive PII that Samsung collects includes:

> name; email address; postal address; phone number; payment card information (including name, card number, expiration date, and security code); date of birth; demographic data, *e.g.*, gender and age range; information stored in or associated with the customer's Samsung Account, including the customer's Samsung Account profile, ID, username, and password); username and password for participating third-party devices, apps, features, or services; . . . photos, contacts, text logs, touch interactions, settings, and calendar information; recordings of a customer's voice . . .; transcripts of [communication with] Samsung; information about products and services that customers purchase or consider; and location data, including (1) the precise geolocation of a customer's device if the customer consents to the collection of this data; and (2) information about nearby Wi-Fi access points and cell towers that may be transmitted to Samsung when the customer uses certain Services.

---

[2] *See also* ¶¶ 22, 33, 35-36, 38, 39, 41-42, 44, 45, 47-48, 50-51, 53-54, 56-57, 59, 60, 62, 63, 65-66, 68-75, 77-78, 80-81, 83-84, 86-87, 89-90, 92-93, 96, 98-99, 101-102, 105, 107, 108, 110-111, 113-114, 116-117, 119-120, 122-123, 126, 128-129, 131-132, 134-135, 137-138, 140-141, 144, 146-147, 149-150, 152-153, 155-156, 158-159, 161-162, 164-165, 167-168, 170-171, 173-174, 176-177, 179, 187, 274, 843, 854. Unless otherwise noted, all citations to paragraphs herein are to the ACC.

[3] ACC, ¶¶ 7, 186-188.

*Id.* ¶ 188.

Samsung automatically collects extensive additional information about its customers "through means of browser cookies, pixels, web server logs, web beacons and other technologies when the customer uses Samsung 'Services,' which Samsung defines broadly as 'all of [Samsung's] Internet-connected Samsung devices and service (from mobile phones and tablets to TVs, home appliances, online services, and more)." *Id.* ¶ 189. For example, Samsung collects information about what customers watch on its Smart TVs and may obtain "behavioral and demographic data" about them. *Id.* ¶ 190.

Samsung "collects extensive personal health information through its Samsung Health app." *Id.* ¶ 191. It collects Social Security numbers, driver's license numbers, and other information "when customers finance purchases of Samsung products through Samsung." *Id.*

Samsung uses the PII it collects to provide targeted advertisements to its customers. *Id.* ¶ 332. It also uses PII to "operate, evaluate, and improve [its] business," to "develop[] new products and services," and to "conduct[] market research." *Id.*

Samsung promises customers and the general public that it protects their personal information. *Id.* ¶ 195. It posts its privacy principles and policies on its website. *Id.* ¶¶ 195-97 & n.13-21. Among other things, Samsung's privacy policies

promise customers that Samsung "prioritize[s] protecting [customers']
information;" it is "committed to protecting [customers'] privacy;" it has "industry-
leading security;" and its "products are designed to keep [customers'] data private
and secure." *Id*. ¶ 197. Whether it sells its products and services directly or through
a retailer or other entity, Samsung presents a uniform message to the public and all
potential purchasers: "You own your privacy. We protect it." *Id.* ¶ 195.

All Plaintiffs allege that their privacy and the safety of their PII are important
to them; they relied on Samsung's "policies and promises to implement sufficient
measures to protect [their] PII and privacy rights;" and if Samsung had disclosed the
inadequacies of its security systems, they would have taken this into account in
making purchasing decisions, including by not buying certain Samsung products or
services, paying less for them, or providing less of their PII to Samsung.[4]

**The Data Breach.** On Friday, September 2, 2022 (the beginning of Labor Day
weekend), Samsung disclosed that on August 4, 2022, it discovered that "an
unauthorized third party exfiltrated and stole a large quantity of PII entrusted to
Samsung by its customers (the 'Data Breach')" in July 2022. ACC, ¶¶ 2, 211, 212.

---

[4] ACC, ¶¶ 35, 38, 41, 44, 47, 50, 56, 59, 62, 65, 68, 71, 74, 77, 80, 83, 86, 89, 92,
95, 98, 101, 104, 107, 110, 113, 116, 119, 122, 125, 128, 131, 134, 137, 140, 143,
146, 149, 152, 155, 158, 161, 164, 167, 170, 173, 176, 179, 199, 405, 509, 569, 850.

Samsung posted a notice about the Data Breach (the "Notice") on its website and emailed a substantially similar notice (though without the FAQs posted on Samsung's website) to affected customers. *Id.* ¶ 211. Samsung notified all of the Plaintiffs that their PII was compromised in the Data Breach.[5]

The Notice stated that Samsung's "U.S. systems" had been infiltrated "[i]n late July 2022" by "an unauthorized third party" and that the Data Breach "may have affected customers' PII such as name, contact and demographic information, date of birth, and product registration information." *Id.* ¶¶ 211, 213, 220.

The Complaint alleges that the Notice was untimely and unconscionably vague; misleadingly underplayed the seriousness of the Data Breach; did not comply with applicable state statutes governing disclosure of data breaches or the procedures Samsung itself promised to follow upon detection of a data breach; was likely to be overlooked by many affected customers; and hindered affected persons' ability to effectively protect themselves and their PII. *Id.* ¶¶ 211-24.

Samsung has not disclosed the number of customers affected by the Data Breach. *Id.* ¶ 214 Given its position as "one of the world's largest technology

---

[5] ACC, ¶¶ 34, 37, 40, 43, 46, 49, 52, 58, 61, 64, 67, 70, 73, 76, 79, 82, 85, 88, 91, 94, 97, 100, 103, 106, 109, 112, 115, 118, 121, 124, 127, 130, 133, 136, 139, 142, 145, 148, 151, 154, 157, 160, 163, 166, 168.

companies,"[6] and with its sales in the billions of dollars, a Data Breach that affected even half of Samsung's U.S. customers likely victimized millions of people. *See id.* ¶¶ 181, 215.

The Data Breach both followed and preceded other security failures by Samsung. *Id.* ¶¶ 3 (prior security problems), 5 (December 2022 security incident), 203-210 (incidents from 2019 to 2023).

The Complaint details why Samsung knew or should have known of its vulnerability to cyberattacks and the need for greater cybersecurity vigilance (*id.* ¶¶ 3-4, 198, 203-10, 246-55); its failure to implement necessary practice, procedures, and upgrades (*id.* ¶¶ 2, 185, 198); how those failures both enabled the Data Breach to occur (*id.* ¶¶ 1-2) and impeded or prevented Samsung from timely detecting the breach (*id.* ¶¶ 211-12); and the negative effects of Samsung's late notice of the Data Breach to affected customers (*id.* ¶¶ 223, 225).

Plaintiffs allege numerous injuries as a result of the Breach, including diminished value of their PII (*id.* ¶ 12); the loss of the benefit of their bargain (*id.* ¶ 22); identity theft (*id.* ¶ 285); out-of-pocket expenses on prophylactic and mitigation measures (*id.* ¶¶ 12, 28), lost time (*id.* ¶¶ 13, 28, 32); increased phishing attempts

---

[6]     Samsung, *Samsung Leadership & Mission*, available at https://www.samsung.com/us/about-us/leadership-and-mission/ (last accessed September 21, 2023).

and spam emails and calls (*id.* ¶ 31); an imminent risk of future harm (*id.* ¶ 2); opportunity costs (*id.* ¶ 12); and that they significantly overpaid for Samsung products and services based on what the products and services were represented to be worth compared to what they actually were worth (*id.* ¶ 200).

Plaintiffs filed numerous lawsuits against Samsung alleging these injuries as a result of the Data Breach. On February 1, 2023, the Judicial Panel on Multidistrict Litigation formed this MDL, *In re Samsung Customer Data Security Breach Litigation*, consolidating and transferring Plaintiffs' cases to this Court. Dkt. 1. On July 14, 2023, before Samsung had submitted any motion to dismiss, Plaintiffs filed the operative Complaint. Dkt. 72. Samsung moved to dismiss the Complaint and to strike class allegations on August 11, 2023.[7] Dkt. 84, 85. This Opposition follows.

## ARGUMENT

## I.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint only requires "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[7] Plaintiffs fully incorporate their Opposition to Samsung's Motion to Strike Class Allegations, which Plaintiffs filed September 22, 2023.

[8] Throughout this brief, case citations omit internal citations and internal quotation marks unless otherwise noted.

9

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Complaints "should be read as a whole" and "not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

Courts assume the veracity of the well-pleaded allegations and construe them in the light most favorable to the plaintiff. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787, 790 (3d Cir. 2016). If the well-pleaded allegations "'plausibly suggest' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged,'" then the motion must be denied. *Doe v. Princeton Univ.*, 30 F.4th 335, 341-42 (3d Cir. 2022) (quoting *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court "may only consider allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Inspira Health Network v. Am. Guar. & Liab. Ins. Co.*, 637 F. Supp. 3d 200, 204 n.1 (D.N.J. 2022) (O'Hearn, J.) (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). In certain limited circumstances, a court may also consider an "undisputedly authentic document" attached to a defendant's motion. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196. But the "essential requirement" for a defendant's attached document to be considered is that a plaintiff's claim is "*based on* that document;" for example, the undisputed

contract in a breach of contract dispute. *Brusco v. Harleysville Ins. Co.*, No. 14-cv-914, 2014 WL 2916716, at \*5 (D.N.J. June 26, 2014) (emphasis added).

Choice of law analyses are premature at the Rule 12(b)(6) stage. "[T]he choice of law analysis has routinely been found to be premature at the motion to dismiss phase of a class action law suit [sic], especially when certain discovery is needed to further develop the facts that will be used in the choice of law analysis." *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at \*10 (D.N.J. May 8, 2017) (collecting cases). For example, New Jersey's "most significant relationship" test "requires a fact-sensitive analysis that cannot be performed" when the record contains only "a complaint and motion to dismiss." *Id.* (citing *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 295 (D.N.J. 2009)). The Court should thus defer its choice of law analyses. Any dispositive choice of law issues—if, for example, a plaintiff's claim would be adequately stated under her home state's law but would fail if New Jersey law applies—should be decided after discovery, because facts revealed later in litigation will control the analysis.

## II. PLAINTIFFS ADEQUATELY PLEAD INJURY AND DAMAGES

The Court must disregard Samsung's own self-serving version of the facts. Each Plaintiff fell victim to the Data Breach and has experienced myriad harms since, which are exhaustively described in the Complaint. In addition, Samsung also levies arguments against seven theories of damages in the Complaint. Each attempt

fails because all of Plaintiffs' injuries constitute cognizable harm, and are adequately pleaded.

### A.    Plaintiffs' Plausible Allegations and Most Favorable Inferences Control, Not Samsung's Self-Invented Version of Events

Samsung's logically flawed argument boils down to this: Plaintiffs cannot plausibly allege any damages because Social Security numbers and other sensitive financial information were not affected by the Data Breach, and therefore, Plaintiffs could not have been injured. MTD Br. at 19. Samsung is wrong. Plaintiffs *have* alleged that their financial accounts and social security information were affected,[9] and Samsung's own statements to the contrary simply do not matter on a Rule 12(b)(6) motion. The <u>Third</u> Circuit[10] is clear that when the "truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint *must* prevail." *Doe*, 30 F.4th at 342 (emphasis added). As *Doe* reiterated, "[f]actual claims and assertions raised by a defendant are not part of [the] scrutiny" of a motion to dismiss. *Id.* at 345. Thus, Samsung's argument that its Notice is "incorporated by reference" in the Complaint and is entitled to a

---

[9] *See, e.g.*, ACC, ¶¶ 1, 2, 12, 26.

[10] Samsung argues otherwise, relying on two cases foreclosed by the binding precedent. *See* MTD Br. at 26 (citing to *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998); *Pickett v. Ocean-Monmouth Legal Servs.*, No. 11-6980, 2012 WL 1601003, at *4 (D.N.J. May 7, 2012)).

presumption of truth is wrong. See MTD Br. at 26. The Notice contains *Samsung's* allegations, not Plaintiffs', and Plaintiffs' claims are "based on" the underlying facts of the Data Breach, not Samsung's version in the Notice.[11] *See Brusco*, 2014 WL 2916716, at *5. Samsung and Plaintiffs disagree about the facts of the Data Breach. And the "proper place to resolve factual disputes is not on a motion to dismiss, but on a motion for summary judgment." *Doe*, 30 F.4th at 342.

This is not a motion for summary judgment.[12] Neither Samsung nor Plaintiffs ask the Court to convert Samsung's Motion into one. Under Rule 12, Plaintiffs have plausibly pleaded that the Data Breach involved Social Security numbers, payment account numbers, and other highly sensitive personal information. ACC, ¶¶ 1, 2, 12, 26. And, Plaintiffs have pleaded additional facts about how they have been financially victimized that both support the plausibility of their Data Breach allegations and allow the Court to infer that their financial PII was, in fact,

---

[11] Plaintiffs cited Samsung's Notice of the Data Breach for limited purposes, to show how Samsung *trivialized* the magnitude of the breach.

[12] Nor did Samsung bring a motion to dismiss for lack of standing. Samsung's Motion does not argue that Plaintiffs lack standing for any of their claims, and it implicitly concedes that standing is satisfied. *See* MTD Br. at 17-18 & n.7 (arguing the "higher burden" of "actual injury or damages"). But if the Court understands otherwise, Plaintiffs request leave to submit supplemental briefing demonstrating that they have adequately pleaded Article III standing under the standards articulated in, *inter alia, Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022).

compromised by the Breach. *See infra* Section II.B. The Court should evaluate the Motion and assess the Complaint assuming Plaintiffs' allegations to be true.[13]

## B.    Samsung's Challenges to Specific Damages Categories Fail

Samsung's Motion targets seven theories of damages alleged by Plaintiffs: (1) the diminished value of their PII; (2) the loss of the benefit of their bargain; (3) actual identity theft; (4) out-of-pocket expenses on prophylactic and mitigation measures; (5) lost time; (6) increased phishing and spam emails and calls; and (7) imminent risk of future harms. Each theory is adequately pleaded.[14]

### 1.    *Diminished Value of PII*

As even Samsung's cited authority acknowledges, "[d]iminution in value of personal information can be a viable theory of damages." *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1234 (D. Nev. 2020); *see also Opris v. Sincera Reprod. Med.*, No. 21-cv-3072, 2022 WL 1639417, at *8 (E.D. Pa. May 24, 2022) ("[S]everal courts have recognized the property value of personal information.

---

[13] But even assuming *arguendo*, if Plaintiffs had not made those allegations, they still would adequately state claims, because a data breach plaintiff need not necessarily allege that their Social Security numbers or financial information was stolen in the breach; other PII, also at issue here, is sufficiently sensitive.

[14] Samsung's Motion targets only these seven theories of damages. The Motion does not challenge, for example, alleged damages from the "opportunity costs" associated with mitigating "the actual consequences of the Data Breach" other than "lost time," ACC, ¶ 12, so Samsung has conceded them here and cannot raise new arguments on reply.

. . . Because Plaintiffs have alleged loss of value to their [PII], this assertion further supports that they suffered damages . . . ."); *In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460-61 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of [PII].").

Plaintiffs have made specific allegations about the value of their PII, including that the "names, addresses, credit histories, and phone numbers" of consumers sell for "$40 to $200" among criminals, and that the going price for "stolen credit card or debit card numbers" is "$5 to $10 apiece on the Dark Web." ACC, ¶ 251. They make dozens of allegations of the results of these "illegal sales of the compromised PII" on black markets. *See, e.g.*, *id.* ¶ 28. Such allegations soar far above the low Rule 12(b)(6) pleading bar. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-2752, 2017 WL 3727318, at *14 (N.D. Cal. Aug. 30, 2017) ("[A]llegations that [Plaintiffs'] PII is a valuable commodity, that a market exists for Plaintiffs' PII, that Plaintiffs' PII is being sold by hackers on the dark web, and that Plaintiffs have lost the value of their PII as a result, are sufficient to plausibly allege injury . . . .").

The value of Plaintiffs' PII is further bolstered by allegations that Samsung "monetized and used" the PII "for commercial purposes." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV 19-MD-2904, 2021 WL

5937742, at *10 (D.N.J. Dec. 16, 2021) ("*AMCA*"); ACC, ¶ 332 (Samsung used PII for market research and targeted advertisements). Samsung's brief ignores these allegations, which set the Complaint apart from the inapposite out-of-circuit cases Samsung cites.[15]

Samsung also argues that Plaintiffs have failed to allege *how* their PII has lost value. But Plaintiffs have done what is required at the pleading stage: allege that their PII has value, that it is being sold on a criminal market, and that their PII has lost value as a result of that activity. *See In re Yahoo!*, 2017 WL 3727318, at *14. There is no requirement that the Complaint include a precise computation of the diminution in PII value—computations that cannot be made without discovery and expert analysis.

*Pruchnicki*—the single case Samsung cites in arguing Plaintiffs must allege that they were unable to sell or otherwise monetize their PII, establish a value for their PII, and calculate its diminution (MTD Br. at 21)—is an outlier and inconsistent with precedent in its own circuit, let alone this one, and has been disregarded as such. "[*Pruchnicki's*] pleading requirements" are "not supported by Ninth Circuit precedent and other district courts in this Circuit have rejected them." *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1190-91 (D. Nev. 2022). Rather, as the

---

[15] *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 45 (D. Ariz. 2021) dealt with mere "general allegations" of diminished value. The plaintiffs in *Pruchnicki* did not plead "the existence of a market" for their PII. 439 F. Supp. 3d at 1234.

Third Circuit explained in an analogous context, "[b]ecause 'damages for a violation of an individual's privacy are a quintessential example of damages that are uncertain and possibly unmeasurable,' such causes of action 'provide[ ] privacy tort victims with a monetary award calculated without proving actual damages.'" *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 639 (3d Cir. 2017) (quoting *Pichler v. UNITE*, 542 F.3d 380, 399 (3d Cir. 2008)). Plaintiffs have plausibly pleaded a diminished value of PII damages theory.

### 2.    Loss of Benefit of the Bargain

Plaintiffs have sufficiently alleged that they "would not have purchased" or "would have paid less for" Samsung products and services, or would have provided less information to Samsung, had they known that their purchases "would result in their PII being compromised and exfiltrated." ACC, ¶ 22; *see, e.g.*, *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1229 (N.D. Cal. 2014) (holding that the loss of benefit of the bargain was adequately stated where plaintiff alleged they "would not have purchased or . . . would not have paid as much had [they] known the truth about [Defendant]'s inadequate security practices."). Furthermore, each Plaintiff alleges he or she "values . . . privacy and is very concerned about identity theft and the consequences of such theft and fraud resulting from the Data Breach." *See, e.g.*, ACC, ¶¶ 35, 38, 41. Plaintiffs further allege that the prices they paid for those products and services necessarily included payment for "proper data management."

17

*Id.* ¶ 11. But even though Samsung knew that its data management and security practices were deficient, it did not disclose these shortcomings to Plaintiffs. *Id.* ¶ 20. Samsung instead affirmatively misrepresented its data management and security practices. *Id.* ¶ 197 (listing seven false promises). Because Samsung failed to provide that service despite receiving full consideration from Plaintiffs, Plaintiffs lost the benefit of their bargain.

This straightforward theory is commonly recognized in data breach cases. *See, e.g.*, *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016) (finding that a plaintiff pleaded actual injury in the amount of "the difference between the value of [what] he paid for and the value of [what] he received" when he received a service "with compromised privacy protection" resulting in data breach); *In re Anthem, Inc. Data Breach Litig.*, No. 15-md-2617, 2016 WL 3029783, at *13-14 (N.D. Cal. May 27, 2016) (recognizing plaintiffs may be able to recover benefit of the bargain losses, noting defendants "cannot evade liability because the [defendants] did not provide, in advance, a breakdown on how much of [p]laintiffs' premiums the [defendants] allocated (or should have allocated) to protecting [p]laintiffs' PII."); *Svenson v. Google Inc.*, No. 13-cv-4080, 2015 WL 1503429, at *4 (N.D. Cal. Apr. 1, 2015) (plaintiff alleged sufficient facts to support her benefit of the bargain theory where she alleged "she was to receive a payment processing service that would facilitate her Play Store purchase while keeping her private information confidential . . . and

18

Google was to obtain access to her personal information, which had value to Google, and also was to retain a percentage of the App's purchase price").

Samsung's attempt to undermine such precedent fails. It relies on a limited holding about the "conclusory" nature of the pleading in *Attias v. CareFirst, Inc*, 365 F. Supp. 3d 1, 13 (D.D.C. 2019), and an analysis of the elements of unjust enrichment under Arizona law, *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1071-72 (C.D. Ill. 2016).[16] Further, *Dieffenbach v. Barnes & Noble, Inc.* is distinguishable because the plaintiff there "[did] not contend" that the defendant "promised any particular level of security" for her data. 887 F.3d 826, 829 (7th Cir. 2018). But here, Plaintiffs contend the opposite: Samsung expressly promised its "products are designed to keep your data private and secure," that its services were "designed with privacy and security at top of mind," that it is "committed to

---

[16] Samsung's subheading stating that the benefit of the bargain theory is "not cognizable" is not based on any actual case; in fact, Samsung's cited cases depict the limited reasoning why some courts dismissed this theory for *lack of factual support*, as opposed to it being "not cognizable." *See, e.g.*, MTD Br. at 21-22. Samsung also relies on *Gardiner v. Walmart Inc*., 2021 WL 4992539, at *5 (N.D. Cal. July 28, 2021) which represents the minority view that most courts have rejected. *See, e.g.*, *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1190 (D. Nev. 2022) (rejecting line of cases, including *Gardiner*, which required specific allegations of how data security was a part of the bargain); *In re Intel Corp. CPU Mktg, Sales Pracs. and Prod. Liab. Litig*., No. 3:18-2828, 2020 WL 1495304, at *8 (D. Or. Mar. 27, 2020) (same, and holding that "[t]he Court finds more persuasive the line of cases that accept at the pleading stage more general factual allegations about the plaintiff's expectations for data security and the contours of the parties' bargain").

protecting your privacy," that "security and privacy are at the core of what we do and what we think about every day," that it offers "industry-leading security," and that it "ensure[s] that, at all levels," Samsung is "protecting users' security and privacy at all times." ACC, ¶ 197. None of Samsung's cases overcome the broad precedent supporting this damages theory.

Samsung's last try is a nod toward the "earmark" theory: that Plaintiffs must allege "that a specific portion of their payment" was earmarked by Samsung for "data security." MTD Br. at 21-22. But such arguments are routinely rejected by courts. Such a rule would allow defendants to "evade liability" by refusing to "provide, in advance, a breakdown on how much of Plaintiffs' [payments]" were "allocated (or should have been allocated) to protecting Plaintiffs' PII." *In re Anthem*, 2016 WL 3029783, at *14; *see also Smallman*, 638 F. Supp. 3d at 1190 (D. Nev. Nov. 2, 2022) ("The [c]ourt considers, but does not find persuasive . . . cases 'requiring allegations of a particular sum of the purchase price being explicitly allocated for data security. That is requiring too much.'").

This rule also ignores the reality of transactions in today's economy: purchasers are "entitled" to "the bundle of goods, services, and rights set forth in their purchase contract," which in cases like these "include[] the privacy protections [the defendant] allegedly violated." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1021 (N.D. Cal. 2019). As Samsung's cases recognize, this "bundle" might differ

from case to case; buying jeans at the mall might not include the same promises about data protection as Samsung's abundant Privacy Policies for electronics and appliances (with continued, indefinite PII collection) did here. *See ACC*, ¶¶ 196-97; *cf. Ables v. Brooks Bros. Grp., Inc.*, No. 17-cv-4309, 2018 WL 8806667, at *7 (C.D. Cal. June 7, 2018) (distinguishing retail plaintiff's claims from data breach involving "privacy policy" that "made representations about the security of customer data"). Because Samsung made promises about data security, Plaintiffs need not identify the precise "earmark" of their purchase prices that went to data security. Such a requirement is neither necessary nor realistic. Plaintiffs have adequately pleaded the benefit of the bargain damages theory.

3.     *Plaintiffs' Plausible Identity Theft Allegations Constitute Cognizable Injuries*

Plaintiffs allege they suffered "actual identity theft crimes, fraud, and other misuse" of their PII as a result of the Data Breach. ACC, ¶ 285. As a few examples, individual plaintiffs have been plagued with "ten unauthorized charges" on a "Samsung Sofi Mastercard," *id.* ¶ 43 (Plaintiff Smith); the opening of "several fraudulent accounts" and a "fraudulent hospital bill," *id.* ¶ 64 (Plaintiff DiGiovanni); and "fraudulent charges" as well as "over 120 credit inquiries" made in a Plaintiff's name, *id.* ¶ 67 (Plaintiff McIntyre).

Samsung attacks these allegations on two grounds: (1) regardless of Plaintiffs' allegations, the data that *Samsung* says was involved in the Data Breach could not

"plausibly lead" to identity theft, and (2) actual identify theft is not a cognizable injury without something else. Neither argument is persuasive.

> i. The allegations of exposed data plausibly lead to identity theft

Samsung's first argument fails for two reasons. First, as discussed above, Samsung's argument fails because it is based on its *own invented* facts, which must be disregarded. *See supra* Section II.A.

Second, Samsung ignores that Rule 8 requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," not the specifics of every piece of data that every Plaintiff provided to Samsung.[17] Fed. R. Civ. P. 8(a)(2). As Samsung concedes, the Complaint describes the "enormous volume" of data that Samsung collects from or about Plaintiffs and Class Members. MTD Br. at 25. Yet Samsung argues that "high level allegations" of data involved in the Breach "that cannot be tied to any specific Plaintiff" are insufficient. *Id*. In doing so, Samsung improperly attempts to isolate portions of the Complaint rather than read the allegations as a whole. *Braden*, 588 F.3d at 594 (complaints "should be read as a whole" and "not parsed piece by piece to determine whether each allegation, in isolation, is plausible"). Taken together, Plaintiffs plausibly allege that they provided important PII and Samsung gathered additional

---

[17] While not required, Plaintiffs *have* alleged various data points that Samsung collected. ACC, ¶¶ 188-191.

sensitive information about them, Samsung did not sufficiently secure the information, cybercriminals accessed the data, and numerous Plaintiffs suffered actual identity theft because of the Breach.[18] Viewing the allegations in the light most favorable to Plaintiffs, the Court can reasonably infer that the exposure of Plaintiffs' PII in the Data Breach, including credit and debit card numbers, Social Security numbers, and other sensitive information, led to each instance of identity theft. *Cf. In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 31-32 (D.D.C. 2014) (finding plaintiffs could not causally link identity theft/fraudulent charges to a data breach where *no plaintiffs allege* credit card, debit card, or bank account information was compromised).

Even under Samsung's (disputed) theory that only "full names, contact and demographic information, date of birth, and product registration information" were exposed in the Data Breach, Plaintiffs' claims that they suffered damage due to identity theft caused by the Breach are still plausibly stated. *Clemens* is instructive.

---

[18] Plaintiff Curtis alleges that "a credit card was opened in his name" and "his social security number was used" because of the Breach. ACC, ¶ 100. Plaintiff Ortiz alleges that he "had to put a block on his Social Security number and eventually had to get another Social Security card" because of the Breach. *Id.* ¶ 133. Plaintiff McIntyre was forced to deal with "over 120 [fraudulent] credit inquiries under his name" because of the Breach. *Id.* ¶ 67. Plaintiffs Applegate, Murphy, and Vandewater allege that they "suffered fraud" regarding "unauthorized charges" on their financial accounts because of the Breach. *Id.* ¶¶ 46, 58, 61. There are dozens of similar allegations throughout the ACC describing specific instances of identity theft that have plagued Plaintiffs because of the Data Breach. *See id.* ¶¶ 33-179.

There, the Third Circuit recognized that the "disclosure" of "birth dates" and "names" makes the "risk of identity theft" and fraud "more likely." 48 F.4th at 154.[19] The *Clemens* court relied upon *McMorris v. Carlos Lopez & Assocs., LLC*, in which the Second Circuit found that, in data breach cases, "dates of birth" are "high-risk information . . . especially when accompanied by victims' names," and the exposure of each makes it "more likely" that a victim will suffer "future identity theft or fraud." 995 F.3d 295, 302 (2d Cir. 2021).

While the full scope of the information exposed in the Breach is disputed, Samsung concedes the Breach exposed dates of birth, plus full names, *plus* "demographic information" (and product registration information). Even though Third Circuit law holds that birth dates and names are themselves enough, the additional unknown—and potentially vast—category of vague "demographic information" further undercuts Samsung's argument—even before financial-information PII allegations are considered. The specific allegations levied by individual Plaintiffs further support this conclusion. Plaintiffs allege, for example, that "over 120 credit inquiries" were made in their name after the Data Breach, ACC, ¶ 67, or that they were forced to deal with "ten unauthorized charges" on their

---

[19] In citing *Clemens*, Samsung cherry picks information the *Clemens* court recognized as sensitive information, intentionally omitting "dates of birth, full names, [and] home addresses," (*Id.* at 150, 157; *See* MTD Br. at 17, 24)—only to accuse Plaintiffs of "crafty pleading" on the following page (MTD Br. at 25).

"Samsung Sofi Mastercard totaling $1,000," *id.* ¶ 43. These allegations, taken together, allow the Court to infer that the PII exposed in the Data Breach was sufficient to result in actual identity theft, because Plaintiffs' PII was exposed and Plaintiffs did, in fact, suffer actual identity theft. Samsung's alternative version of events is based on disputed facts and should be rejected as such.

### ii.    Identity theft is a cognizable injury

The Court should reject Samsung's arguments that identity theft, "without more," is not a cognizable injury. Samsung suggests that, unless the victim alleges "actual or specific out-of-pocket losses" and specifies the dates of fraudulent charges, including whether the charges were reversed or not, she was not injured. MTD Br. at 28-30. This is wrong.

First, no Plaintiff alleges actual identity theft "without more." The Plaintiffs who suffered identity theft allege additional injuries that courts deem sufficient at the pleading stage, such as spending money on credit monitoring or other protective services (*see, e.g.*, ACC, ¶¶ 41, 77, 149); spending time reversing charges, cancelling accounts, correcting credit reports, and changing passwords (*see, e.g.*, *id.* ¶¶ 40, 76, 100, 148); and taking precautions to mitigate the risk of future identity theft (*see, e.g.*, *id.* ¶¶ 41, 77, 101, 149). *Krottner* and *Savage* are not "misuse without more" cases, as Samsung suggests.  In both cases, there was only *attempted* misuse, rather than, as Plaintiffs allege here, actual misuse.  *See Krottner v. Starbucks Corp.*, 406

F. App'x 129, 131 (9th Cir. 2010) (no loss where plaintiff only pleaded an *attempt to* open a fraudulent bank account); *Savidge v. Pharm-Save, Inc.*, 2017 WL 5986972, at \*4 (W.D. Ky. Dec. 1, 2017) (no harm from filing of fraudulent tax return where IRS *did not process the return*).

These Plaintiffs also aver that they are at imminent risk of future injury based on the exposure of their PII and that they "will need to continue indefinitely" monitoring (and reversing) abuse of their PII "to protect against fraud and identity theft." *See, e.g.*, *id.* ¶ 40. Identity theft is part and parcel of each of these injuries, and these allegations cannot be "parsed . . . piece by piece" to defeat the claims. *See Braden*, 588 F.3d at 594.

Further, even if "everyone knows" that credit card companies *may* ultimately reverse unauthorized charges (MTD Br. at 29), that is irrelevant to the injury analysis. This is not a case based on a single fraudulent charge that was reversed; Plaintiffs here have alleged much more. *Cf. In re SuperValu, Inc. Customer Data Sec. Breach Litig.*, No. 14-md-2586, 2018 WL 1189327, at \*11 (D. Minn. Mar. 7, 2018) (allegations "unaccompanied by" other injury such as "out-of-pocket loss"); *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1283 (M.D. Fla. 2016) (plaintiff

pleaded that there had been "no additional actual harm since [the fraudulent charges]," which were reversed).[20]

Finally, Rule 8 only requires Plaintiffs to plead sufficient facts to put Samsung on notice of the claims against it. *See* Fed. R. Civ. P. 8(a)(2). Plaintiffs have done this, and Samsung cites no authority for the proposition that Plaintiffs must, for example, specify the dates on which fraudulent charges were made to their accounts.

Each Plaintiff who alleges actual identity theft has adequately pleaded facts to support their allegations.

> 4. *Out-of-Pocket Expenditures on Prophylactic and Mitigation Measures*

As Samsung concedes, out-of-pocket expenses are cognizable in data breach cases. MTD Br. at 32. They reasonably may be incurred in response to actual identity theft or based on the "knowledge of the *substantial risk*" of it. *Clemens*, 48 F.4th at 156 (emphasis added). Plaintiffs have incurred "out-of-pocket expenses associated

---

[20] Moreover, Samsung speculates that Plaintiffs' charges have been reimbursed, in a failed attempt to strengthen their argument that Plaintiffs have not pleaded cognizable injury. Such speculation is unpersuasive, and as such, Samsung's cited caselaw concerning reimbursed charges is unavailing. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d 108, 133-34 (D. Me. 2009), *rev'd on other grounds sub nom. Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012).

with preventing, detecting, and remediating identity theft, social engineering,[21] and other unauthorized use of their PII" because of the Data Breach. ACC, ¶ 12. They have also purchased "identity theft insurance and credit monitoring services" in response. *Id.* ¶ 28.

Samsung attempts to impose a requirement that Plaintiffs "establish" at the pleading stage that their expenses were "reasonable and necessary." MTD Br. at 32. Plaintiffs have found no such requirement in reported decisions by the Third Circuit or any of its district courts. To the contrary, *Clemens* announced clear guidance from the Third Circuit without referring to a "reasonable and necessary" test at all. 48 F.4th at 156 ("[I]f the plaintiff's knowledge of the substantial risk of identity theft causes him to . . . *spend money on mitigation measures like credit monitoring services*, the plaintiff has alleged a concrete injury.") (emphasis added). Samsung is free to argue at the appropriate time that a given Plaintiff's expenses were not reasonable, but its attempt to litigate a factual dispute on a 12(b)(6) motion is improper.

Regardless, Plaintiffs pleaded that their out-of-pocket expenditures were reasonable and necessary. When a plaintiff pleads that her PII "was compromised,"

---

[21] Social engineering refers to all techniques aimed at manipulating, influencing, or deceiving a victim or target into revealing specific information or performing a specific action for illegitimate reasons, such as gaining control over a computer system or stealing personal or financial information.

a "reasonable inference . . . follow[s]" that her "decision to purchase monitoring services was 'reasonable' and 'necessary.'" *Schmitt v. SN Servicing Corp.*, No. 21-cv-3355, 2021 WL 3493754, at *6 (N.D. Cal. Aug. 9, 2021). And every Plaintiff pleads exactly that. *See, e.g.*, ACC, ¶ 18 ("Plaintiffs are individuals whose PII was compromised in the Data Breach.").

The remainder of Samsung's arguments also fail under *Clemens*. Samsung argues there is "no risk" of "actual identity theft crimes" based on the compromise of "name, contact and demographic information, [or] date of birth" information. MTD Br. at 32. But *Clemens* recognizes that the exposure of "names" and "birth dates" are "more likely to create a risk of identity theft or fraud." 48 F.4th at 154. And Plaintiffs have further alleged that their email addresses, postal addresses, phone numbers, Social Security numbers, credit and debit card numbers, demographic information, and geolocation data were all exposed in the Data Breach. ACC, ¶¶ 1, 26. These disclosures give rise to *at least* an increased risk of identity theft (if not more), rendering the cases cited by Samsung regarding expenses made "[i]n the absence of increased risk of future harm" meaningless. MTD Br. at 33. (quoting *Ables*, 2018 WL 8806667, at *7). Plaintiffs' allegations sufficiently plead injury resulting from out-of-pocket expenditures.

     *5.*    *Lost Time*

As a result of the Data Breach, Plaintiffs spent their time on "credit monitoring," signing up for "identify theft insurance" and "credit freezes/unfreezes," and "initiating fraud alerts and contacting third parties," as well as "lost work time." ACC, ¶ 13; *see also id.* ¶¶ 28, 32. Individual Plaintiffs have, for example, "spent time reversing [unauthorized] charges, cancelling accounts, and changing passwords," and they "anticipate[] spending considerable time" on an ongoing basis "to mitigate and address the harms caused by the Data Breach." *See, e.g.*, *id.* ¶ 41 (Plaintiff Bingham).

Lost time damages are frequently recognized as cognizable injuries in data breach matters. A plaintiff's "loss of value of the time needed to set things straight" after her data was stolen is compensable. *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 692 (7th Cir. 2015); *see also In re Anthem*, 2016 WL 3029783, at *26 ("Plaintiffs' attempts to respond to this imminent threat— whether by paying out of pocket for credit monitoring or by using their own time for credit monitoring— resulted in damages that may be recoverable.").

Samsung relies upon the Southern District of New York's decision in *Bohnak v. Marsh & McLennan Cos., Inc.* to argue that lost time damages are "not cognizable" in data breach cases. 580 F. Supp. 3d 21, 31 (S.D.N.Y. 2022). But the Second Circuit reversed that decision, entirely rejecting the district court's reasoning. The Second Circuit found that the plaintiff's allegations of "lost time,"

among other things including "out-of-pocket . . . prevention, detection, and recovery from identity theft" expenses, are "separate and concrete harms foreseeably arising from the exposure of [plaintiff's] PII to a malign outside actor" that also "giv[e] rise to a material risk of future harm" to the plaintiff. *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 286 (2d Cir. Aug. 24, 2023). The Second Circuit held that, because lost time was "cognizable for standing purposes, [it] thus could support a claim for damages." *Id.* at *1.

The rest of Samsung's cited authority similarly crumbles under scrutiny. *See Pruchnicki*, 845 F. App'x at 614 (decision due to plaintiff's pleading failures, which cited "no authority recognizing lost time as a cognizable injury," but nonetheless *allowing* lost time damages when "accompanied by out-of-pocket expenses"); *Corona v. Sony Pictures Entm't, Inc.*, No. 14-cv-9600, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) (rejecting "*general* allegations of lost time" because in that case they were "too speculative") (emphasis added). As the clear trend of precedent establishes, lost time damages are compensable, and Plaintiffs have adequately pleaded them.

### 6.    *Increased Phishing and Spam Emails and Calls*

The Data Breach resulted in "a high-volume of phishing emails and spam telephone calls" to Plaintiffs that seek to "trick consumers" into giving their PII to malicious actors. ACC, ¶ 31. These phishing scams "significantly increase[] the risk

of further substantial damage" to victims of the Data Breach. *Id.* And Plaintiffs have spent additional time dealing with these phishing scams and spam calls. *See, e.g.*, *id.* ¶ 70 (Plaintiff Glean "spent nearly 100 hours" in response to Data Breach by, *inter alia*, "fielding spam calls"); *id.* ¶ 116 (Plaintiff Dorso "spent 2-3 hours per week" on, *inter alia*, "dealing with spam and phishing emails and texts").

"[F]oiled attempts at identity theft," such as phishing, and "an increase in scam phone calls" are cognizable injuries. *AMCA*, 2021 WL 5937742, at *8-9. This is especially so when a plaintiff not only alleges that she received more emails or calls because of a breach, but that those communications were made *for the purpose* of further defrauding her. *See, e.g.*, *In re GE/CBPS Data Breach Litig.*, No. 20-cv-2903, 2021 WL 3406374, at *6 (S.D.N.Y. Aug. 4, 2021) ("phishing and scam" emails and phone calls constitute "misuse" of PII); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 916-17 (S.D. Cal. 2020) (increased "'spam/phishing' e-mails, calls, or both" cognizable when from "persons apparently attempting to defraud [plaintiffs]"); *Bass*, 394 F. Supp. 3d at 1034 (allegations of "phishing" attempts "plausibly show[] risk of further fraud and identity theft").

Samsung overlooks this distinction. At most, some courts do not recognize that "[t]he receipt of spam *by itself*" is cognizable. *Jackson v. Loews Hotels, Inc.*, No. 18-cv-827, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) (quoting *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009)) (emphasis added).

32

But Plaintiffs here do not allege injury based solely on the volume of communications. Nor do they allege simply an increase in "regular mail advertisements" or the like. *Contra Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1086 (E.D. Cal. 2015). Instead, Plaintiffs allege their PII was stolen, acquired by scammers and criminals, and used against them to turn them into targets for additional phishing and spam attacks that seek to take further advantage of them. These are cognizable injuries.

### 7.     *Imminent Risk of Future Harms*

In addition to the fraud that has already occurred and continues to plague Plaintiffs, they also have alleged "imminent threats of identity theft and fraud" resulting from the Data Breach. ACC, ¶ 2. These threats include, for example, future "identity theft crimes, fraud, scams, and other misuse of their PII" by bad actors who have acquired, or will acquire, the PII that they gave to Samsung. *Id.* ¶ 28.

*Clemens* controls here, and Samsung's arguments to the contrary cannot overcome it. Plaintiffs have alleged that "the data breach was intentional," "the data was misused," and "the information accessed through the data breach could subject a plaintiff to a risk of identity theft." *Clemens*, 48 F.4th at 153-54. Under Third Circuit precedent, that is enough. Other circuits, including the Second Circuit, are even more lenient at the pleading stage. *See Bohnak*, 79 F.4th at 289 (imminent risk

found when data breach plaintiff alleged exposure of name and Social Security number, even without alleging "any known misuse" of PII).

Ignoring *Clemens* (and *Bohnak*), Samsung's primary argument is the PII elements that Samsung itself admits were exposed in the Data Breach might not be enough to plead damages. MTD Br. at 35. But that is not an argument a defendant can make on a Rule 12(b)(6) motion; the Court must accept Plaintiffs' well-pleaded facts as true here. Plaintiffs are not required to accept Samsung's factual claims without being able to test their veracity through discovery. *See supra* Section II.A. Plaintiffs have pleaded more than sufficient facts to allege they face an imminent risk of future harm, and this is sufficient for damages under *Clemens*.

Plaintiffs have pleaded numerous cognizable injuries as a result of the Data Breach, and Samsung's Motion to Dismiss for lack of damages or injury should be denied.

## III.    PLAINTIFFS ADEQUATELY PLEAD EACH COMMON LAW CAUSE OF ACTION

Plaintiffs adequately plead claims for negligence, negligence *per se*, breach of confidence, breach of contract (express and implied), unjust enrichment, and for declaratory judgment. Samsung's arguments fail for numerous reasons, but the Court may reject most of them as a threshold matter because they rely on state-level variations and thus cannot be decided on a pleadings-only, pre-discovery record before a proper choice of law analysis.

Samsung relies on a handful of state cases that have narrowly interpreted some common law claims, arguing that these limited holdings undermine Plaintiffs' claim. *See, e.g.*, MTD Br. at 47 (negligence *per se*). But these arguments are improper before a choice of law analysis, which is premature here.[22] *See* Plaintiffs' Opposition to Motion to Strike, Sec. III. Under the "most significant relationship" test used by New Jersey courts, the choice of law decision will often be fact-bound and dependent on what comes out in discovery. *See, e.g.*, *Krys v. Aaron*, 106 F. Supp. 3d 472, 481 (D.N.J. 2015) ("the factual inquiry necessary for a choice-of-law analysis often proves 'inappropriate or impossible' at the motion to dismiss stage 'when little or no discovery has taken place.'" (quoting *Arlandson v. Hartz Mountain Corp.*, 792 F.Supp. 2d 691, 700-01 (D.N.J. 2011) (citation omitted) (collecting cases that have

---

[22] The Third Circuit has repeatedly endorsed the "grouping" approach to deal with variances in state laws. *See School Asbestos*, 789 F.2d at 1010 (affirming nationwide class certification after plaintiffs demonstrated how the laws of the 50 states could be reduced to four general patterns, providing the framework for sub-classes if the nationwide action had proven unmanageable); *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 315 (3d Cir. 1998) (affirming nationwide class certification and district court's conclusion that state law variations could be managed by grouping); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) (affirming nationwide class certification and explaining that "a district court should examine whether varying state laws can be grouped . . . in such a way that the litigation class is manageable"). Furthermore, Samsung's cited case on this point actually supports Plaintiffs' contention that its argument is premature. *See In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 174 F.R.D. 332, 348-349 (D.N.J. 1997) (denying a motion for class certification on the issue of manageability because plaintiffs did not provide a "workable plan for trial embracing all claims and defenses," but holding that "the existence of state law variations is not alone sufficient to preclude class certification.") (collecting cases).

found a choice-of-law analysis premature on a motion to dismiss))); *In re AZEK Bldg. Prod., Inc., Mktg. & Sales Pracs. Litig.*, 82 F. Supp. 3d 608, 619 (D.N.J. 2015) (declining to conduct choice of law analysis at pleading stage where the "record does not contain significant information concerning the 'most significant relationship,'" including "the scope and locus of continued dealings between" the parties, and "whether other facts militate in favor of applying a particular state's law").

Whenever Samsung argues that a common law claim should be dismissed under the laws of some (but not all) of the states at issue in the Complaint, the Court should reject the argument as premature and consider revisiting it after discovery, when it can perform a fulsome choice of law analysis.

### A.    Plaintiffs Plausibly Allege Negligence (Count 1)

#### 1.    *Samsung Had a Duty to Protect Customer PII*

Defendant claims (without explanation) that "certain states do not recognize a common law duty to protect personal information" and point to Arizona, Illinois, Oklahoma, and Washington. MTD Br. at 39. This is not so.

In *Irwin,* 175 F. Supp. 3d at 1071, the court merely noted that the two cases cited by the plaintiff did not affirmatively state there was a specific duty to protect PII—hardly a finding that a company might never have a duty to protect their customers. Instead, whether a legal duty exists "depends on principles of

foreseeability and likelihood of injury." *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 585 (N.D. Ill. 2022). In *Gallagher*, the court held that allegations that a defendant was aware of measures that would prevent and detect data breaches combined with allegations that the defendant failed to implement those measures was sufficient to state a negligence claim. *Id.* at 585-86. Plaintiffs have pleaded similar allegations here. ACC, ¶¶ 246-255.

Next, in Arizona, to establish a defendant's liability for a negligence claim a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages. *CVS Pharmacy, Inc. v. Bostwick*, 251 Ariz. 511, 517 (2021). Under this analysis, Plaintiffs have plausibly alleged that Defendant took on a duty of reasonable care when it collected their PII.

Oklahoma also has a general statutory duty of care. *See* 76 O.S.2011 § 1 ("Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights."); *see also Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007) (a duty of care arises "without regard to the relationship of the parties," where "an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person."); *Union Bank of Tucson, Arizona v. Griffin*, 771 P.2d 219, 222 (Okla. 1989) (same). Samsung

is one of the largest and most prolific data collectors and aggregators in the world, and it was aware that keeping such data would make it a target for hackers and cybercriminals intent on obtaining that information. ACC, ¶¶ 271, 276. Samsung had a duty of care to Plaintiffs because (1) Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices; (2) a special relationship existed between them; and (3) because of Samsung's unique position as one of the largest consumer electronics companies in the world. *Id.* ¶¶ 272-276. At the pleading stage, these allegations are sufficient to allege a duty owed by Samsung to Plaintiffs under Arizona, Illinois and Oklahoma law.[23]

Next, Samsung argues that it had no duty to protect Plaintiffs' PII from being exposed in a data breach because acts by third-party criminals are not foreseeable. MTD Br. at 40. That is wrong. Numerous recent data breach cases have determined that a data breach like this one was a reasonably foreseeable result of poor or inadequate cybersecurity practices. *See, e.g.*, *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1220-21 (11th Cir. 2023) (reversing dismissal of plaintiff's negligence claims based on lack of foreseeability, and noting that it is unreasonable to "expect a plaintiff . . . to plead with exacting detail every aspect of [the defendant's] security history and procedures that might make a data breach foreseeable," particularly

---

[23] Plaintiffs concede that the facts of this case do not include (at this juncture) allegations of active misfeasance, and rather reflect Samsung's failure to act, or non-feasance, under Washington state law.

where "the question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts."); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1320 (N.D. Ga. 2019) (holding that the criminal acts of hackers were reasonably foreseeable when plaintiffs alleged in the complaint that the defendants had "observed major data breaches at other corporations, such as Target, Anthem, and Experian."); *Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111-TSH, 2019 WL 7946103, at *12 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020) (holding that "the risk that a cyber-criminal would access the PII of Defendants' employees and misuse it was reasonably foreseeable"); *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-J-32MCR, 2020 WL 691848, at *7-8 (M.D. Fla. Jan. 27, 2020) (same); *Dittman v. UPMC*, 649 Pa. 496, 513-15 (2018) (same).

Plaintiffs here alleged Samsung was aware of (i) the rise in frequency of cyberattacks, (ii) warnings from various law enforcement agencies and nonprofit groups, (iii) data breaches that had hit similar companies that collected similar types of PII, and (iv) that the kind of PII that Samsung was collecting from its customers would make it a valuable target for hackers to attack. ACC, ¶¶ 246-254. Moreover, Plaintiffs allege that Samsung's own lax data security practices resulted in several prior data breaches at Samsung itself, which put Defendant on notice of its own

existing cybersecurity vulnerabilities and the need to address them to prevent additional breaches. *Id.* ¶¶ 3-5. These allegations are sufficient to allege that Plaintiffs' harms were reasonably foreseeable to Samsung and flowed directly from its failure to exercise due care.

Even if it was not reasonably foreseeable to Samsung that its collected private information was vulnerable to attack (it was), Plaintiffs have specifically alleged that Samsung and Plaintiffs were in a "special relationship" such that Samsung was required by common law to protect Plaintiffs' PII. *Id.*, ¶ 274.

In *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1132-33 (N.D. Cal. 2018), the court held that plaintiffs had adequately alleged a "special relationship" with Yahoo! under California law. Just like the plaintiffs in *In re Yahoo!*, Plaintiffs here "were required to turn over their PII to [Samsung] and did so with the understanding that [Samsung] would adequately protect Plaintiffs' PII and inform Plaintiffs of breaches" (*id.* at 1132); have alleged that hackers were able to gain access to their PII and Samsung did not promptly notify Plaintiffs, thereby causing injury to Plaintiffs; have alleged they suffered injury because Samsung provided inadequate cybersecurity which it knew was insufficient; and have alleged it was plainly foreseeable that Plaintiffs would suffer injury if Samsung did not

adequately protect their PII. ACC, ¶¶ 188-189, 199, 209, 246-249. That is enough to allege a special relationship.[24]

### 2.    Samsung Breached Its Duty to Protect Customer Data

Samsung also argues that Plaintiffs fail to allege with specificity that a breach of duty to Plaintiffs caused Plaintiffs' alleged harm. MTD Br. at 45. But Plaintiffs only need to satisfy the notice pleading standard of Rule 8, not the heightened pleading standard of Rule 9. Plaintiffs are not yet in a position, without the benefit of discovery, to say exactly how the data breach occurred. But Plaintiffs *have* alleged that the data breach caused the exposure of Plaintiffs' and Class Members' PII, and that their PII was subject to unauthorized access by a third-party cybercriminal while it was in Samsung's possession. ACC, ¶¶ 2-3. At the pleading stage, Plaintiffs have sufficiently alleged that their injuries are traceable to Samsung's breach of its duty to safeguard their PII it collected and stored. *See, e.g.*, *Remijas*, 794 F.3d at 696 (denying defendant's motion to dismiss and finding that plaintiff's allegations that their private information was exposed by defendant was "certainly plausible for pleading purposes" that their injuries are "fairly traceable" to the data breach); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1159 (D. Minn. 2014)

---

[24] Samsung also argues that the "assumption of the duty" doctrine does not create a duty here because the Plaintiffs have not alleged physical harm. MTD Br. at 42. But Samsung offers no support for that argument and does not indicate which states in Plaintiffs' Complaint (if any) follow the strictures of the cited section of the Restatement (Second) of Torts. That argument should be set aside.

("Plaintiffs' allegations plausibly allege that they suffered injuries that are 'fairly traceable' to Target's conduct."); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1208 (S.D. Fla. 2022) ("whether and to what extent Plaintiffs' injuries were caused by the Data Breaches must be left to the summary judgment stage after both parties are afforded the opportunity to conduct discovery.")

### B.    Plaintiffs Plausibly Allege Negligence *Per Se* (Count 2)

#### 1.    *The FTC Act May Serve as a Predicate Statute under Connecticut and Georgia Law*

The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, may serve as a predicate statute supporting a negligence *per se* claim under Connecticut and Georgia law.[25]

Applying Georgia law, the United States District Court for the District of Maryland rejected arguments identical to those made by Samsung here in *In re Marriott*, 440 F. Supp. 3d at 481. The court there reasoned that Section 5 of the FTC Act is a statute that creates enforceable duties. Moreover, this duty is ascertainable as it relates to data breach cases based on the text of the statute and a body of

---

[25] Plaintiffs concede that under Texas law, a plaintiff can only pursue a negligence *per se* claim for violations of a penal statute.

precedent interpreting the statute and applying it to the data beach context."[26] *In re Marriott*, 440 F. Supp. 3d at 481. Citing to *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240 (3d Cir. 2015) and *In re TJX Companies Retail Sec. Breach Litig.*, 564 F.3d 489, 498-99 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009) as examples that gave the defendants notice that their inadequate data security practices could lead to violations of the FTC Act and potential FTC enforcement actions, the court determined that plaintiffs had "adequately pled negligence *per se* under Georgia law." *In re Marriott*, 440 F. Supp. 3d at 481-482, *accord In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2020 WL 6290670, at *23 (D. Md. Oct. 27, 2020) (denying motion to dismiss based on these same arguments).

For the same reasons that Judge Grimm rejected the *Marriott* defendants' motions to dismiss based on a lack of an "ascertainable standard of conduct," this Court should reject the same argument by Samsung here. Samsung claims that the FTC Act is an unsuitable basis for a negligence *per se* claim under Connecticut law because Connecticut courts "have declined to find negligence *per se* where the statutes upon which the plaintiff relies do not provide specific standards pursuant to

---

[26] The court distinguished *Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 688 (Ga. 2013) and *Dep't of Labor v. McConnell*, 828 S.E.2d 352, 358 (Ga. 2019), to which Samsung cites. They are inapplicable here, just as they were in *In re Marriott*, 440 F. Supp. 3d at 481-482.

which a party engaged in a particular activity must conform its conduct, but rather only include broad policy statements." MTD Br. at 50 (cleaned up). But Judge Grimm identified explicitly how the FTC Act contained much more than "broad policy statements:" "Section 5 of the FTC Act *is* a statute that creates enforceable duties. Moreover, this duty is ascertainable as it relates to data breach cases based on the text of the statute and a body of precedent interpreting the statute and applying it to the data beach context." *In re Marriott*, 440 F. Supp. 3d at 481.

Other courts have had no trouble ascertaining a specific standard of conduct under Section 5 of the FTC Act. For example, in *Wyndham*, 799 F.3d at 240, the defendant was the subject of multiple cyberattacks that compromised the PII of hundreds of thousands of its customers. The Third Circuit first found that allegations that defendant had a misleading privacy policy that overstated its cybersecurity fell within the plain meaning of "unfair" practices in the text of Section 5 of the FTC Act. *Id*. at 246-47. The Third Circuit further held that the defendant had fair notice that its conduct could fall within the meaning of the statute based on a "cost-benefit analysis that considers a number of relevant factors, including the probability and expected size of reasonably unavoidable harms to consumers given a certain level of cybersecurity and the costs to consumers that would arise from investment in stronger cybersecurity," and the alleged deficiencies in defendant's cybersecurity practices. *Id*. at 255 (internal citations omitted), and 256-57; *see also In re TJX*

*Companies*, 564 F.3d at 498-99 (applying FTC precedent for scope of duty under Massachusetts law based on Section 5 of FTC Act).

Under New Jersey law, a plaintiff cannot pursue a negligence *per se* claim under a statute, like the FTC Act, that does not provide a right of action. However, Plaintiffs would be able to proceed with their negligence *per se* claims for violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*, as that statute does provide an explicit right of action.

Similarly, while standalone negligence *per se* causes of action are only cognizable under Washington law if they allege a breach of a duty provided by statute, ordinance, or administrative rule relating to circumstances not present in this case, Wash. Rev. Code Ann. § 5.40.050 (West), "breach of a duty imposed by statute, ordinance, or administrative rule . . . may be considered by the trier of fact as evidence of negligence." *Id.* Here, the Court may consider Samsung's failure to abide by duties imposed by the FTC Act, as well as the Washington state data security statute, Wash. Rev. Code Ann. § 19.255.010, as evidence of Samsung's negligence.

> 2. *Plaintiffs Have Alleged Specific State Statutes That Serve as Bases for Negligence Per Se Claims*

Samsung complains that Plaintiffs do not "allege the specific state statutes that serve as the basis for their negligence *per se* claims." MTD Br. at 49. Not so. Plaintiffs allege the violation of fifty-three relevant state statutes as a result of

Samsung's failure to protect Plaintiffs' PII. Each of these statutes may form the basis for a negligence *per se* argument, whether as a standalone cause of action, or as evidence in support of a negligence cause of action.

> 3.    *In States That Do Not Recognize It as a Separate Cause of Action, Negligence Per Se Offers Evidence of a Breach of Duty, if Not a Rebuttable Presumption of Negligence*

Arkansas, Louisiana, Maryland, Massachusetts, Oregon, California, Michigan, and Pennsylvania[27] do not recognize negligence *per se* as a separate cause of action. *See* ACC, at 115, n.56. However, in each of these states, proving a violation of a statute under a negligence *per se* theory provides a rebuttable presumption of negligence. *See Cent. Oklahoma Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, 17 (2012) (violation of a statute is evidence of negligence that can be submitted to a jury); *Alcala v. Vazmar Corp.*, 167 Cal. App. 4th 747, 755 (2008) (application of the doctrine of negligence *per se* means the court has adopted the conduct prescribed by the statute as the standard of care for a reasonable person in the circumstances, and a violation of the statute is presumed to be negligence);

---

[27] Samsung's argument that Alabama does not recognize a separate cause of action is based on an unsupported citation. Although *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1247 (N.D. Ala. 2013) asserts that Alabama does not recognize an independent cause of action for negligence *per se*, that assertion is unsupported by the court's own citation. *Parker Bldg. Servs. Co. v. Lightsey*, 925 So.2d 927, 930-31 (Ala. 2005), involved a motion for a new trial because the jury instructions on negligence *per se* were based on defendant's violation of building codes, which *did not qualify* as negligence *per se.* The decision does not hold or suggest that Alabama does not recognize negligence *per se* as a cause of action.

*Smolinski v. Taulli*, 276 So.2d 286, 289 (La. 1973) (statutory violations may be guidelines in determining standards of negligence by which civil liability is determined); *Kiriakos v. Phillips*, 139 A.3d 1006, 1016 (2016) (the Statute or Ordinance Rule in Maryland is *prima facie* evidence of negligence); *Falvey v. Hamelburg*, 347 Mass. 430, 434 (1964) (violation of a statute constitutes evidence of negligence); *Zeni v. Anderson*, 397 Mich. 117, 128-29 (1976) (effect of violation of a penal statute in a negligence action is that such violation creates a prima facie case from which the jury may draw an inference of negligence); *Gattman v. Favro*, 306 Or. 11, 15 n.3 (1988) (negligence *per se* claims are a negligence claim based on violation of a standard of care set out by statute or rule); *Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400, 407 (W.D. Pa. 2002) (negligence *per se* provides an evidentiary presumption that, if established, constitutes proof of a breach of duty).

## C. The Economic Loss Doctrine Does Not Bar Plaintiffs' Negligence Claims

Plaintiffs' negligence claims are not barred by the economic loss doctrine under many state law regimes. For eleven of the states with Named Plaintiffs, Samsung does not argue that the economic loss doctrine bars Plaintiffs' negligence claims under the laws of those states. *See* Plaintiffs' Appendix B, Chart 1 in response to Samsung's Appendix 2. In arguing that the economic loss doctrine bars Plaintiffs'

negligence claims under the laws of twenty-three states, Samsung fails to account for the applicable exceptions to the economic loss doctrine. *Id.*

### 1. *Plaintiffs Allege More Than Pure Economic Loss Caused by Samsung's Negligence*

Plaintiffs do not seek recovery for purely economic losses. Plaintiffs have alleged the loss of time spent changing account login credentials, reviewing credit reports and fraud reports, implementing and removing credit freezes, and contacting third-parties to determine whether or not they had suffered fraud. These are costs recoverable as damages in negligence. *See Bass*, 394 F. Supp. 3d at 1039 (complaint alleges a "loss of time as a harm and so does not allege pure economic loss."); *In re Marriott*, 440 F. Supp. 3d at 494 (finding negligence claim brought by consumers who provided their PII to defendant was not barred by the economic loss doctrine because alleged damages included loss of benefit-of-the-bargain, lost time and money spent mitigating harms, loss of value of personal information, and identity theft in the form of unauthorized charges and accounts); *Opris*, 2022 WL 1639417, at *7-8 ("mitigation damages, such as those allegedly incurred by [p]laintiffs in purchasing credit and identity theft monitoring services," and "loss of value of their PII and PHI" are "appropriate damages to support [a] negligence claim").

### 2. *Samsung Ignores Exceptions to the Economic Loss Doctrine*

The economic loss doctrine is not followed in all states, and in other states it does not bar recovery of purely economic damages in certain circumstances.

For instance, under California law, a plaintiff may recover purely economic damages in tort under a negligence theory, even in the presence of a contract, when the contract was for services. *See, e.g.*, *N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 783 (1997); *In re Yahoo!*, 313 F. Supp. 3d at 1132. The Complaint clearly alleges that the Plaintiffs, and Class Members, provided their PII and other confidential information as part of using Defendant's services. ACC, ¶ 22.

New York courts have expressly refused to apply the economic loss doctrine at the pleading stage in data breach cases. *See Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 590 (S.D.N.Y. 2022) (gathering cases and declining to apply the economic loss doctrine to bar plaintiffs' negligence claims in a data breach case). They are also reluctant to apply the economic loss doctrine in contexts outside the products liability context. *See Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 159 (S.D.N.Y. 2018) ("[T]he applicability of the economic loss rule outside the product-liability context from which it originated is doubtful."). Similarly, Defendant points to *Wiltz v. Bayer CropScience, Ltd. P'ship*, to argue that Louisiana has implemented the economic loss doctrine, but that case involved a products liability context—a context that does not apply here. 645 F.3d 690 (5th Cir. 2011).

In the same vein, Defendant points to *Kemp v. Resurgent Cap. Servs.*, No.13-11794, 2013 WL 5707797, at *9 (E.D. Mich. Oct. 21, 2013), a case involving fraud

claims and a mortgage foreclosure, for the proposition that the economic loss doctrine in Michigan bars "a party to [a] contract from bringing tort claims that are factually indistinguishable from breach of contract claims." *Id.* However, the Michigan Court of Appeals recently explained that the economic loss doctrine "applies to the commercial sale of goods because, unlike a consumer buying a product, a commercial buyer and seller have the ability to negotiate their duties and consequences for the breach." *Fraser Engine Rebuilder, Inc. v. Lancaster,* No. 360110, 2023 WL 5281853, at *5 (Ct. App. June 8, 2023). In a transaction involving the sale of goods, the economic loss doctrine applies only where "(1) the parties . . . had the opportunity to negotiate the terms of the sale of the good or product causing the injury, and (2) their economic expectations can be satisfied by contractual remedies." *Id.* at *6. Here, Plaintiffs are average American consumers – none of whom had the opportunity to negotiate the terms of the sale with Samsung, nor can their economic expectations be satisfied purely by contractual remedies.[28]

In Oregon, *all* persons are liable in negligence if their conduct unreasonably creates a foreseeable risk of harm to others. *Slogowski v. Lyness*, 324 Or. 436, 441 (1996). The economic loss rule was "created by courts in response to pragmatic

---

[28] Furthermore, the court in *Fraser* held that "a tort action arising out of breach of contract may be maintained when a plaintiff sufficiently alleges a duty separate and distinct from a contractual obligation." *Id.* at 10. Here, since Plaintiffs *also* allege a violation of a legal duty separate and distinct from the contractual obligations, their claims are not barred by the economic loss doctrine. *See* Section III.C.3 below.

concerns over unbounded liability," and its application "cannot be divorced from the pragmatic concerns that birthed it." *JH Kelly, LLC v. Quality Plus Services, Inc.*, 305 Or. App. 565, 572, 575 (2020). As such, Oregon law demands courts look to see whether the plaintiff "establish[ed] a limiter." *Id*. at 573-574. Plaintiffs have established a limiter here: this case involves the theft of identifiable, specific, PII because of Defendant's negligence, and liability is limited to the losses and harms suffered by the specific customers whose PII Defendant failed to adequately protect after collecting it from them. The economic loss doctrine does not bar Plaintiffs' negligence claim under Oregon law.

Regarding Pennsylvania, Defendant pointedly does not address *Dittman*, in which the Pennsylvania Supreme Court held that employees' claims for the exposure of their data in a data breach were not barred by the economic loss doctrine because the defendant "breached its common law duty to act with reasonable care in collecting and storing their personal and financial information on its computer systems" and this "legal duty exists independently from any contractual obligations between the parties." *Dittman*, 649 Pa. at 528; *see also Opris*, 2022 WL 1639417, at *4 ("[T]hose who affirmatively collect sensitive information owe a duty to exercise reasonable care to protect against the foreseeable harm of a data breach."); *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 533 (M.D. Pa. 2021) (rejecting application of economic loss doctrine under the independent duty

51

exception where plaintiff pleaded that defendant "owed them a common law duty to safeguard their credit and debit card information based on [defendant]'s affirmative conduct and the foreseeable risk of harm"). Plaintiffs have alleged an almost identical set of facts and legal arguments here, and as a result, the economic loss doctrine does not bar Plaintiffs' negligence claims under Pennsylvania law.

Therefore, even in the states where the economic loss doctrine exists, it is not likely to apply based on these exceptions. In any event, these arguments are premature. *See supra* Sections I & III. Even if the Court examines the state-by-state differences, still, Plaintiffs' claims are not barred by the doctrine.

> 3.    *Samsung Fails to Acknowledge the Applicability of the Independent Duty and Special Relationship Exceptions*

Finally, even for states that do observe the economic loss doctrine, many employ "independent duty" of care or "special relationship" exceptions. For instance, Alaska recognizes the independent duty exception where there is a "risk of personal injury or property damage." *S. Indep. Bank v. Fred's, Inc.*, No. 2:15-CV-799-WKW, 2019 WL 1179396, at *16 (M.D. Ala. Mar. 13, 2019) (quoting *St. Denis v. Dep't of Hous. & Urban Dev.*, 900 F. Supp. 1194, 1203 (D. Alaska 1995)). California also recognizes the special relationship exception. *J'Aire Corporation v. Gregory*, 24 Cal. 3d 799, 804 (1979); *see also N. Am. Chem. Co.*, 59 Cal. App. 4th at 783 (applying special relationship exception in case involving contract for services); *In re Yahoo!*, 313 F. Supp. 3d at 1132.

Plaintiffs have sufficiently alleged that Samsung had a duty independent of any contractual relationship to protect Plaintiffs' and Class Members' PII that it collected and stored. *See* ACC, ¶¶ 276-277. Defendant acknowledges this duty in its own marketing copy. *Id.* Samsung also had a statutory duty to protect customer PII under Section 5 of the FTC Act, which prohibits "unfair . . . practices in or affecting commerce," including, the unfair practice of failing to use reasonable measures to protect PII by companies such as Samsung. *Id.* at ¶ 275. As a result, even if this Court were to conclude that the economic loss doctrine applies to bar negligence claims under certain states' laws, Plaintiffs may still recover in tort because Samsung had a duty, independent of any contracts, to take reasonable care in protecting Plaintiffs' PII. Other states that have independent duty of care or special relationship exceptions to the general economic loss doctrine include Colorado, Connecticut, Georgia, Illinois, Kansas, Maryland, Massachusetts, Nevada, New Hampshire, New Jersey, New York, North Carolina, and South Carolina. *See* Plaintiffs' Appendix B, Chart 1, in response to Samsung's Appendix 2.

### D.    Plaintiffs Plausibly Allege Breach of Confidence (Count 3)

"The common law alone will sometimes protect a person's right to prevent the dissemination of private information." *In re Horizon Healthcare Servs.*, 846 F.3d at 638. Common law claims recognized within the Third Circuit include the privacy tort of breach of confidence, which has "become well-ensconced in the fabric of

American law." *Id.* (quoting David A. Elder, *Privacy Torts* § 1:1 (2016)). A claim for breach of confidence involves "the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 114 (3d Cir. 2019). The harm underlying a breach of confidence action "transpires when a third party gains unauthorized access to a plaintiff's personal information." *Id.* at 114.

Plaintiffs here allege Samsung is liable for breach of confidence. Plaintiffs disclosed PII to Samsung in confidence and with the understanding that Samsung would protect the confidentiality and security of that PII. But Samsung failed to adequately protect that PII and prevent its disclosure in the Data Breach. ACC, ¶¶ 203-09, 299-301. These allegations satisfy the elements of this cause of action at common law. *See Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997) (noting the elements of a claim for breach of confidence are: "(1) the plaintiff conveyed confidential and novel information to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding"). *See also* Plaintiffs' Appendix B, Chart 2, in response to Samsung's Appendix 3. Nonetheless, Samsung raises four arguments challenging this cause of action. Each should be rejected.

As a threshold matter, most of Samsung's arguments are state-law specific and would require the Court to first perform a choice of law analysis to decide which laws govern which claims. But that is premature. *See supra* Sections I & III. The Court should defer its choice of which state laws apply until after discovery. Samsung's state-specific arguments here would narrow Plaintiffs' breach of confidence claims in ways that most states (and the common law) do not. The Court should accordingly reject Samsung's state-specific arguments.

Even if the Court analyzes state-level intricacies, Samsung's arguments fail. Samsung first argues breach of confidence is not a recognized cause of action in New Jersey, Colorado, Kansas, North Carolina, Texas, and Indiana. MTD Br. at 52. None of the decisions upon which Samsung relies nor any decisions found by Plaintiffs *foreclose* breach of confidence claims in those jurisdictions. To the contrary, courts have recognized the cause of action. For example, in *Vorhees v. Tolia*, No. 3:16-cv-8208-BRM-LHG, 2020 WL 1272193 (D.N.J. Mar. 17, 2020), the plaintiff did not dispute the defendants' contention that breach of confidence is not recognized as a cause of action under New Jersey law. *Id.* at *10. Nonetheless, the court pointed out that "[t]he Third Circuit, however, has recognized that the tort of 'a breach of confidence involves the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship.'") (quoting *Kamal*, 918 F.3d at 114). What is central to a "breach of

55

confidence claim is that a 'third party gain[ed] unauthorized access to a plaintiff's personal information[.]" *Id.* This is exactly what happened here, where Samsung's failure to protect Plaintiffs' and the Class' information resulted in unauthorized access of their PII. Similarly, courts in Colorado, Kansas, North Carolina, and Texas have affirmatively recognized breach of confidence torts.[29]

Second, Samsung claims that twelve states only recognize breach of confidence in circumstances not applicable here. MTD Br. at 52. But Samsung's cited authority[30] (which is largely outside the data breach context) does not foreclose

---

[29] *See Brockman v. Taylor J. Fenn & Redpeak Props.*, No. 18CV34569, 2019 Colo. Dist. LEXIS 4912, *18 (finding Plaintiff has sufficiently pleaded evidence for a breach of confidential relationship); *Hess v. Fuller*, No. 2-88-2272-O, 1990 WL 37608, at *2 (D. Kan. Mar. 28, 1990) (noting without discussion that plaintiffs' causes of action included "breach of confidential and fiduciary duties"); *Allen v. Novant Health, Inc.*, No. 1:22-CV-697, 2023 WL 5486240, at *5 (M.D.N.C. Aug. 24, 2023) (interpreting "breach of confidence" claim as one for breach of fiduciary duty and finding plaintiffs adequately stated a claim based on disclosure of confidential information on Facebook); *In re: DePuy Orthopaedics, Inc.*, No. 3:11-MD-2244-K, 2016 WL 6271465, at *5 (N.D. Tex. Jan. 5, 2016) (dismissing breach of fiduciary claim but finding plaintiff pleaded breach of duty of confidentiality).

[30] Defendant cites six district court cases to support its contention that six states—Colorado, Indiana, Kansas, New Jersey, North Carolina, and Texas—do not recognize a cause of action for breach of confidence as a matter of law. Samsung's Appendix. 3, Column C. Defendant misrepresents the holdings in each of these cases. For example, *Jordan* held that "breach of confidence" was not a "cognizable legal claim" in the specific context of the case, not as a matter of Colorado law. *Jordan v. Forbes*, No. 1:19-CV-02660-RM-SKC, 2021 WL 2792336, at *3 n.5 (D. Colo. Apr. 22, 2021).

the claim when it involves the type of sensitive information at issue here.[31] *See* Plaintiffs' Appendix B, Chart 2, in response to Samsung's Appendix 3. Samsung also argues fifteen states require a duty of confidentiality or confidential relationship between the parties. MTD Br. at 52-53. As illustrated in Plaintiffs' Appendix B, Chart 2, Samsung's cases are distinguishable, directly contradict Samsung's argument, or demonstrate that determining whether a confidential relationship exists is a question of fact inappropriate at the motion to dismiss stage.

Even if a duty of confidentiality or a confidential relationship is a required element of this cause of action (though it was not at common law), Plaintiffs have plausibly alleged it. Plaintiffs sufficiently allege both contractual and confidential relationships based on the Privacy Policy and the exchange of Plaintiffs' PII for promised security. *See* ACC, ¶¶ 195-197, 305-312. The Court should find Plaintiffs adequately allege that the parties have formed a confidential relationship. *Id.* ¶¶ 184-193.

---

[31] Furthermore, in New York (one of those twelve states), courts have allowed claims based on a breach of confidentiality to proceed under similar circumstances. *See Daly v. Metro. Life Ins. Co.*, 782 N.Y.S.2d 530, 535 (Sup. Ct. 2004); *Jones v. Commerce Bancorp*, No. 06 Civ. 835(HB), 2006 WL 1409492, at *3 (S.D.N.Y. May 23, 2006) (finding that where plaintiff was required to provide certain information to bank and bank "represented that it would safeguard that information . . . plaintiff was entitled to rely on [bank's] superior expertise to safeguard her personal confidential information" and so "adequately alleged a breach of fiduciary duty" even though bank did not have traditional fiduciary relationship to plaintiff.)

Lastly, Samsung contends that it should be absolved of liability because it did not intentionally disclose Plaintiffs' PII, and instead the PII was stolen in a criminal cyberattack. MTD Br. at 53-55. Intent is not necessary, however, and lesser degrees of scienter—including negligence—suffice. *See, e.g.*, *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 409 (E.D. Va. 2020) (sustaining breach of confidence claims that were "predicated on . . . a negligent act on the part of the Defendants not to remedy certain deficiencies"); *Wallace v. Health Quest Sys.*, No. 20 CV 545 (VB), 2021 WL 1109727, at *13 (S.D.N.Y. Mar. 23, 2021) (finding breach of confidentiality "may be breached through negligent failure to safeguard confidential information").

Further, the Third Circuit recognizes that an actionable "disclosure" occurs when inadequate data security results in exposure to third parties. *See, e.g.*, *Clemens*, 48 F.4th at 150; *In re Horizon Healthcare Servs.*, 846 F.3d at 640 (holding that an "improper disclosure of . . . personal data" occurred when "two laptop computers containing the unencrypted personal information of the named Plaintiffs and more than 839,000 other [people] . . . were stolen").

Samsung relies on *Brinker* and *In re Ambry* to argue otherwise, but neither is on point. In *Brinker*, unlike here, plaintiffs did not allege that the defendant allowed the disclosure to happen by failing to maintain adequate data security. *See generally Brinker*, 2020 WL 691848; *cf.* ACC, ¶¶ 203-209. And the only authority upon which

*Ambry* relied (besides *Brinker*)—*Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1555-56 (2014)—concerned statutory liability, not common law breach of confidence claims. *See In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1146 (C.D. Cal. 2021) (quoting *Sutter* interpreting the California Confidentiality of Medical Information Act). The *Ambry* court provided no reason why the statutory analysis in *Sutter* should apply to the common law claim of breach of confidence. *Id.* at 1146.

The Court need not address the state-law distinctions at this stage, and it thus should reject Samsung's arguments because Plaintiffs have alleged facts to state breach of confidence claims at common law. Even if the Court delves into state-law distinctions, though, Plaintiffs adequately plead these claims.

### E.     Plaintiffs Plausibly Allege Breach of Contract (Count 4) and Breach of Implied Contract (Count 5)

The Complaint alleges all of the elements of a breach of an express contract claim: (1) the parties entered into valid contracts; (2) Samsung did not perform its obligations under the contracts; and (3) there is a causal relationship between the breach and the Plaintiffs' alleged damages. *See, e.g.*, *Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020). Plaintiffs have also pleaded breach of an implied contract. *See Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 816-17 (D.N.J. 2000) ("The only difference between an implied-in-

fact contract and an express contract is that the parties' agreement has been manifested by conduct instead of words.").

Samsung promised in its Privacy Policy that it would: (1) "maintain safeguards designed to protect personal information [Samsung] obtain[s] through [its] Services;" and (2) only share customer data under certain enumerated circumstances. ACC, ¶¶ 195-197, 305-312. Further, Samsung made various promises in its Privacy Notices, Policies, and other statements as to its data security and privacy practices. *Id.* ¶¶ 196-97. Samsung breached these promises by failing to protect Plaintiffs' PII. *Id.* ¶¶ 316, 324. As a result of these breaches, Plaintiffs suffered damage to their privacy interests, lost the benefit of their bargain, and were overcharged for Samsung services and products. *Id.* ¶¶ 317, 325.

Plaintiffs have thus adequately alleged breach of contract and breach of implied contract claims. Nevertheless, Samsung argues that (1) its Privacy Policy is not an enforceable contract because it lacks definite promises and consideration; (2) if the Privacy Policy is an enforceable contract, Plaintiffs fail to allege a breach of the Privacy Policy; and (3) Plaintiffs fail to plausibly allege the existence of a valid implied contract. MTD Br. at 55-60. Samsung is wrong on each ground.

### 1.    *Samsung's Privacy Policy and Other Statements Form an Enforceable Contract*

Plaintiffs plausibly allege the existence of an express contract. Courts have recognized that privacy policies and similar privacy statements can constitute an

enforceable express contract. *See, e.g.*, *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 831 (N.D. Cal 2020) (finding that the "[Terms of Service] and the Privacy Policy are binding agreements"); *Meyer v. Christie*, No. 07-2230-JWL, 2007 WL 3120695, at *6 (D. Kan. Oct. 24, 2007) (rejecting defendant's motion to dismiss argument that privacy policy could not constitute a contract between the parties); *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2016 WL 754731, at *7 (N.D. Ill. Feb. 23, 2016) (holding that plaintiffs' allegations that a privacy policy was a part of the parties' insurance agreement was sufficient to deny a motion to dismiss). Samsung's promises in its Privacy Policy to "maintain safeguards designed to protect personal information [Samsung] obtain[s] through [its] Services" and to only share customer data under certain enumerated circumstances are contractually enforceable promises made with sufficient specificity. *See* ACC, ¶¶ 195-197, 305-312; *see In re Yahoo!*, 2017 WL 3727318, at *44-46 (denying dismissal of breach of contract claim where defendant represented it would "apply safeguards" to protect PII); *In re Adobe*, 66 F. Supp. 3d at 1206, 1220 (holding that Adobe's privacy agreement, which promised to "provide reasonable administrative, technical, and physical security controls to protect your information," constituted a contractual obligation); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI, 2017 WL 539578, at *6, *11 (D. Or. Feb. 9, 2017) (finding representations in privacy notice, including that Premera was "committed to

61

maintaining the confidentiality of your medical and financial information," to be "sufficiently specific" for a breach of contract claim).

Samsung next argues that its promises are not supported by consideration because the Privacy Policy includes boilerplate language that Samsung "may update this Privacy Policy from time to time" at its sole option. MTD Br. at 57. But contract language "permitting one party to modify contract terms" unilaterally does not defeat its enforceability, because the parties are still bound by "the implied covenant of good faith and fair dealing." *Eiess v. USAA Fed. Savings Bank*, 404 F. Supp. 3d 1240, 1250 (N.D. Cal. 2019); *see also Stewart Title Guar. Co. v. Greenlands Realty, LLC*, 58 F. Supp. 2d 370, 385 (D.N.J. 1999) (holding that the "obligation to perform in good faith" exists in every contract in New Jersey, including those with unilateral termination provisions). Samsung would be barred from unilaterally amending the Privacy Policy to the detriment of its customers (including Plaintiffs) if such an amendment violated good faith and fair dealing, to be sure, but the unilateral-amendment power does not prevent the formation of a contract for lack of consideration. Plaintiffs allege an enforceable contract.

2.     *Plaintiffs Plausibly Allege a Breach of the Privacy Policy*

Plaintiffs' allegations also plausibly demonstrate Samsung breached its Privacy Policy. Plaintiffs allege Samsung promised to "maintain safeguards designed to protect personal information [Samsung] obtain[s] through [its] Services"

and to only share customer data under certain enumerated circumstances, but it breached these promises by failing to protect Plaintiffs' PII. ACC, ¶¶ 195-197, 305-312, 316. These allegations are sufficient. *See, e.g.*, *In re Yahoo!*, 2017 WL 3727318, at *48 (holding that plaintiffs in a data breach context sufficiently alleged a breach of contract); *Sweet v. BJC Health Sys.*, No. 3:20-CV-00947-NJR, 2021 WL 2661569, at *7 (S.D. Ill. June 29, 2021) ("[T]he factual allegations in the complaint permit an inference that the Incident occurred because BJC failed to adequately encrypt and store PHI, breaching their agreement to safeguard customer PHI."); *see also In re Adobe*, 66 F. Supp. 3d at 1221 ("Although Adobe contends that there can be no actionable dispute concerning the adequacy of Adobe's security controls because the Agreement expressly provides that no security measure is '100%' effective, this disclaimer does not relieve Adobe of the responsibility (also contained in the Agreement) to provide 'reasonable' security."). Plaintiffs have alleged Samsung breached its contractual promises.

### 3.    *Plaintiffs Plausibly Allege the Existence of a Valid Implied Contract*

In addition to an express contract, Plaintiffs have alleged that an implied contract existed between them and Samsung. Whether a contract was formed and exists is a question of fact. *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, No. 21-11313 (KM) (MAH), 2022 WL 111061, at *5 (D.N.J. Jan. 12, 2022) (citing *Troy v. Rutgers*, 168 N.J. 354 (2001)). Thus, so long as Plaintiffs have

plausibly pleaded facts that allow the inference that an implied contract exists, the Court should not dismiss the claim on a Rule 12(b)(6) motion; rather, this issue should be "fleshed out in discovery." *See id.* Importantly, while Samsung relies on *Longenecker-Wells v. Benecard Servs.*, 658 F. App'x 659, 662 (3d Cir. 2016) to support its argument that the breach of implied contract claims must be dismissed, the holding in *Longenecker-Wells* actually supports Plaintiffs' claim here. The Third Circuit in *Longenecker-Wells* held that "[a]n implied contract arises in the same manner as an express contract, except that the parties' intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances." *Id.*

This case is factually different from *Longenecker-Wells.* There, plaintiffs' breach of implied contract was based on "naked assertions devoid of further factual enhancement," arising solely out of the requirement by an employer for employees to provide personal information as a prerequisite to employment. There was no explici or implicit promise to "safeguard that information, especially from third party hackers." *Id.* The Third Circuit contrasted the facts in that case with the facts in *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 675 (E.D. Pa 2015), where a breach of implied contract claim survived a motion to dismiss where plaintiffs alleged "through privacy policies, codes of conduct, company security practices, and other conduct, [an] implicit[] promise[] to safeguard [plaintiff's information] in exchange

for his employment." *Id.* at 662-63. Here, similarly to the contrasting example in *Enslin*, Plaintiffs alleged privacy policies, Samsung's statements regarding its security and privacy ("You own your privacy[;] [w]e protect it"), industry practices, including Samsung's leading status in technology – all of which depict both explicit and implicit promises to safeguard Plaintiffs' collected PII. *See* ACC, ¶¶ 185-186, 188, 195-199; *see also id.* ¶¶ 319-322. Samsung's statements to the public and Plaintiffs, that it had "industry-leading security," was "protecting users' security and privacy at all times," and "prioritize[d] protecting [customer] information," among other things provide more than sufficient factual basis depicting a created expectation that Samsung would safeguard customers' PII. *Id.* ¶¶ 196-97, 319-22. But Samsung breached its promises by failing to protect Plaintiffs' PII and allowing its exposure in the Data Breach. *Id.* ¶ 324.

Courts have found similar allegations sufficient. *See, e.g.*, *In re Am. Fin. Res., Inc. Data Breach Litig.*, No. 22-cv-1757, 2023 WL 3963804, at *9 (D.N.J. Mar. 29, 2023); *In re Yahoo!*, 2017 WL 3727318, at *49; *In re Target*, 66 F. Supp. 3d at 1176. The cases Samsung relies on do not demonstrate otherwise.[32] Plaintiffs therefore state a valid claim for breach of implied contract.

---

[32] *See Krottner*, 406 F. App'x at 131 (case involving stolen laptop where plaintiff alleged that defendants would safeguard their information, but the documents supporting the complaint included no such terms); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017) (no allegations that created

## F.    Plaintiffs Plausibly Allege Unjust Enrichment (Count 6)

"Generally speaking, in order to state a claim for unjust enrichment, a plaintiff must allege (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (citing Restatement of Restitution § 1 (1937)). Plaintiffs' allegations satisfy these elements.

Plaintiffs allege they provided Samsung with their sensitive PII, Samsung profited (gained a benefit) from Plaintiffs' PII by, among other things, using the PII to create advertisements and develop new products and services, but Samsung did not use those profits to provide proper data security to protect Plaintiffs' PII. ACC, ¶¶ 326-340. Under principles of equity, it would be unjust for Samsung to retain these benefits. *Id.* Nevertheless, Samsung argues that (1) California, Illinois, and Texas do not recognize unjust enrichment as a cause of action; (2) the claim fails because Plaintiffs have an adequate remedy at law; (3) Plaintiffs' relationship with Samsung is too attenuated; and (4) Plaintiffs fail to plausibly allege that they

---

a factual inference that defendant agreed to secure plaintiff's information); *Frezza v. Google Inc.*, No. 12-CV-00237-RMW, 2012 WL 5877587, at *4-5 (N.D. Cal. Nov. 20, 2012) (dismissing breach of contract claim in a false advertising case where no contract or terms were alleged); *Stephens v. Availity*, No. 5:19-cv-236-Oc-30PRL, 2019 WL 13041330, at *5 (M.D. Fla. Oct. 1, 2019) (finding parties had no direct relationship).

conferred a benefit on Samsung and did not receive what they paid for. MTD Br. at 60-64. Samsung is again wrong on each point.

1.    *California, Illinois, and Texas Recognize Unjust Enrichment as a Cause of Action*

Contrary to Samsung's arguments, California, Illinois, and Texas all recognize unjust enrichment as an independent cause of action. *See ESG Capital Partners, Ltd. P'ship v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016) (California); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (Illinois); *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App. 2013) (Texas).

2.    *Plaintiffs Can Allege Unjust Enrichment as an Alternative Cause of Action*

Samsung next contends Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs fail to demonstrate they have no adequate remedy at law. MTD Br. at 61. "[T]he Federal Rules of Civil Procedure expressly permit inconsistent pleading." *Dando v. Bimbo Food Bakeries Distribution, LLC*, No. 14-2956 (NLH/KMW), 2017 WL 1362022, at *4 (D.N.J. Apr. 10, 2017) (collecting cases); *see also* Fed. R. Civ. P. 8(d)(3). Plaintiffs may plead unjust enrichment as an alternative avenue of recovery at the pleadings stage, which they did here. ACC, ¶¶ 326, 341, 348; *see also id.* Count 6 ("Unjust Enrichment (In the alternative)"). Plaintiffs' alternative theory is that if the Court decides adequate legal relief is not

available, unjust enrichment is the best alternative through which the benefit unjustly conferred on Samsung would be returned to Plaintiffs.

Each state at issue recognizes alternative pleading of unjust enrichment claims. *See* Plaintiffs' Appendix B, Chart 3, in response to Samsung's Appendix 5. Because alternative pleading is allowed, the record contains only pleadings, and the parties have not even begun discovery, the Court should reject Samsung's premature attempt to dismiss a claim pleaded in the alternative.

### 3.    *Plaintiffs' Relationship with Samsung is Not Attenuated*

Plaintiffs allege that when they purchased and registered Samsung products, the benefit they conferred on Samsung included not only money, but also the benefit of Samsung's use of Plaintiffs' PII. Samsung understands that PII *has* value; it uses PII to provide targeted advertisements, "develop[] new products and services," and "conduct[] market research." ACC, ¶ 332.

Samsung's attenuation argument fails to grapple with Plaintiffs' theory. No matter where Plaintiffs bought Samsung products, there is a *direct* link between Plaintiffs and Samsung - their PII was collected directly *by* or provided *to Samsung*, it was stored *by Samsung*, and it was compromised and stolen in *Samsung's* Data Breach. This is vastly different from the cases cited by Samsung. For example, in *Cooper v. Samsung Elecs, Am. Inc.*, plaintiffs did not allege any direct link to Samsung, other than stating that they purchased televisions at a retailer. 2008 WL

4513924, at *10 (D.N.J. Sept. 30, 2008). Here, even if Plaintiffs purchased Samsung

products at retailers, the benefit was conferred to Samsung through registration, and

use of the PII – which Samsung required. Plaintiffs also allege they expected their

data to be securely stored by Samsung as part of the deal. ACC, ¶ 22. These

allegations are sufficient. *See Salas v. Acuity-CHS, LLC*, No. 22-317-RGA, 2023

WL 2710180, at *11 (D. Del. Mar. 30, 2023) (finding allegations that plaintiff's

personal information was a benefit and that defendant benefited from collecting

plaintiff's personal information were adequate to show "a relation between the

enrichment and impoverishment").

The cases Samsung relies on are inapposite because an intermediary (typically

a retailer) received and retained the money that was the "benefit" at issue in the

unjust enrichment claim.[33] Here, Plaintiffs allege that Samsung obtained a "benefit"

directly from their PII. Samsung's argument that PII is worthless is meritless: both

---

[33] *See Cooper v. Samsung Elecs. Am., Inc.*, No. CIV.A. 07-3853 JLL, 2008 WL
4513924, at *10 (D.N.J. Sept. 30, 2008) (unjust enrichment claim based on a product
defect and product was purchased at a retailer); *In re Keurig Green Mt. Singleserve
Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 272 (S.D.N.Y. 2019) (unjust enrichment
claim asserted on behalf of New York indirect purchasers, who alleged they were
being overcharged for K Cups due to anticompetitive conduct, dismissed because
purchases of K Cups made at retailer); *Johnson v. Microsoft Corp.*, 834 N.E.2d 791,
799 (Ohio 2005) (unjust enrichment claim asserted on behalf of indirect purchasers,
who alleged they were being overcharged for software due to anticompetitive
conduct, dismissed because purchases of software made at retailer); *Kopel v. Kopel*,
229 So. 3d 812, 818 (Fla. 2017) (unjust enrichment claim dismissed because loan at
issue not paid directly to defendant but to other entities).

a long line of precedent and Samsung itself agree that PII has value. *See supra* Section II.B.1; ACC, ¶ 332. Plaintiffs allege a plausible unjust enrichment claim.

### G.    Plaintiffs Plausibly Allege a Declaratory Judgment Claim (Claim 7)

The Declaratory Judgments Act ("DJA") empowers federal courts to issue declaratory relief in "a case of actual controversy" within its jurisdiction. 28 U.S.C. § 2201(a). It creates an independent cause of action, not just a form of relief. Samsung misreads case law holding that the DJA does not create an independent basis for *jurisdiction* when Samsung argues it does not create an independent claim. Because Plaintiffs have numerous other bases for jurisdiction, their claim under the DJA is well pleaded. *See, e.g.*, *Argen v. Kessler*, No. 18-cv-963 (KM) (JBC), 2019 WL 2067639, at *4 (D.N.J. May 10, 2019) (noting that "the viability of the declaratory judgment claim depend[ed] on whether any portion of the plaintiffs' . . . claim remain[ed] intact").

Plaintiffs' request for declaratory relief is not duplicative. They seek to prevent "future harm from ongoing and future violations before the harm occurs." *In re Adobe*, 66 F. Supp. 3d at 1222. Plaintiffs allege that Samsung still possesses Plaintiffs' PII and they request that it modify its data security practices to fix the vulnerabilities in its practices, policies, and systems so that Plaintiffs' PII is actually secured moving forward. ACC, ¶¶ 345-347. This is not duplicative of Plaintiffs' other claims seeking relief for injuries Plaintiffs have already suffered. *See Yahoo!*,

313 F. Supp. 3d at 1139 (declaratory relief allowed because contract claims seek retrospective relief and declaratory relief does not).

Courts frequently allow declaratory judgment claims based on a defendant's continued inadequate security. *See, e.g.*, *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016) (declaratory relief allowed where defendant's "security measures continue to be inadequate"); *In re Arby's Rest. Grp. Litig.*, No. 1:17-cv-0514-AT, 2018 WL 2128441, at *15 (N.D. Ga. Mar. 5, 2018) ("Plaintiffs made specific allegations that they would be harmed without declaratory relief because Arby's has not taken steps to address their allegedly inadequate security system.").

Regardless, it is too early to dismiss a claim because it *might* be duplicative of the relief that *might* be granted for other claims. Courts have declined to dismiss claims for declaratory judgment at this early stage because doing so "would 'curtail [the Court's] broad equity powers to fashion the most complete relief possible.'" *In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2021 WL 1818494, at *8 (E.D. Pa. May 6, 2021) (quoting *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d at 550). For these reasons, Plaintiffs allege a plausible declaratory judgment claim.

## IV. PLAINTIFFS ADEQUATELY PLEAD STATUTORY CONSUMER PROTECTION CLAIMS (CLAIMS 8 THROUGH 61)

Plaintiffs' statutory consumer protection claims are well-pleaded and should not be dismissed. *See, e.g.*, *In re Marriott*, 440 F. Supp. 3d at 486-494 (denying

motion to dismiss statutory consumer protection claims under Maryland, Michigan, California, and New York law); *In re Equifax*, 362 F. Supp. at 1335-36 (denying motion to dismiss most state consumer protection claims); *In re Target*, 66 F. Supp. 3d at 1166 (same). Samsung's arguments to the contrary fail, as demonstrated below.

### A.     Rule 8(a)(2) Applies to Most of Plaintiffs' Statutory Claims

Samsung argues that all of Plaintiffs consumer protection claims must meet the heightened pleading standard of Fed. R. Civ. P. 9(b). MTD Br. at 66-67. This is not correct. "Claims are only subject to these heightened pleading standards if they sound in fraud. A claim sounds in fraud when a plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of that claim." *In Re Equifax*, 362 F. Supp. 3d at 1335-36 (finding unfair and deceptive trade practices claims did not sound in fraud and were not subject to Rule 9(b)).

Just as in *In Re Equifax*, Plaintiffs' theory of recovery does not "rest upon a unified course of fraudulent conduct" but rather on misstatements, omission of material facts, representations that goods have qualities that they do not in fact have, and other deceptive or unfair acts and practices that are not subject to the heightened pleading standard for claims of fraud. Rule 8(a) applies to most of their consumer protection claims (*see* Plaintiffs' Appendix B, Chart 4, in response to Samsung's Appendix 10), and to the extent Rule 9(b) applies to any portion of Plaintiffs' claims, Plaintiffs have pleaded them with sufficient particularity.

### 1.    *Plaintiffs Satisfy Rule 8*

The Complaint more than satisfies Rule 8 because it "give[s] Samsung fair notice of [Plaintiffs'] claims and the grounds upon which [they] rest." *Weston v. Pennsylvania*, 251 F.3d 420, 429 (3d Cir. 2001). Plaintiffs allege the details and effects of the Data Breach (ACC, ¶ 2), how Plaintiffs were harmed (*id.* ¶ 8), how Plaintiffs relied to their detriment on Samsung's misrepresentations and omissions regarding its data security practices (*id.* ¶ 200), and the consequences from Samsung's failure to discover the Data Breach and timely disclose it (*id.* ¶¶ 212, 223).

Samsung's contention that the Complaint fails to differentiate between unfair, deceptive, and fraudulent claims is not well taken. Plaintiffs allege that Samsung's conduct was unfair and deceptive; they do not allege that it "sounds in" fraud. ACC, ¶¶ 356, 376, 387, 400, 437, 468, 492, 502, 522, 545, 555, 564, 585, 606, 630, 645, 656, 679, 689, 697, 708, 717, 758, 765, 784, 798, 811, 821, 835, 845, 857, 886, 914, 933, 960; *see Argabright v. Rhee, Mfg. Co.*, 201 F. Supp. 3d 578, 605-606 (D.N.J. 2016) ("False promises, misrepresentations, and concealment or omission of material facts all constitute deceptive  practices."). Thus, Samsung's claim that it "is left guessing the legal basis of Plaintiffs' claims" (MTD Br. at 73) is demonstrably false. The Complaint is not a "shotgun" pleading because it adequately

connects each claim to specific underlying facts, thereby notifying Samsung how its conduct violated each state's consumer protection statute.[34]

### 2. To the Extent Necessary, Plaintiffs Satisfy Rule 9(b)

To the extent Rule 9(b) applies to Plaintiffs' allegations of misrepresentations and knowing omissions, the Complaint complies. *See AMCA*, 2021 WL 5937742, at *21 ("Rule 9(b) applies to a consumer protection claim only to the extent it asserts fraudulent conduct by the defendant."). On a motion to dismiss, district courts are obligated "to read fraud-based allegations not in isolation but as a whole and in context." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 256 (3d Cir. 2010). In pleading matters of fraud, "[t]he Third Circuit cautions that Rule 9(b) should not be applied so strictly as to cancel out the general simplicity and flexibility contemplated by the Federal Rules." *Bell v. Dave*, No. No. 21-11816 (ES) (ESK), 2022 WL 2667017, at *10 (D.N.J. July 11, 2022). And with respect to omissions, courts are directed to apply Rule 9(b)'s particularity requirement "with some flexibility and should not require plaintiffs to plead issues that may have been

---

[34] Defendant's citations to *Bardwill Indus. Inc. v. Kennedy*, 2020 WL 2748248 (S.D.N.Y. May 27, 2020), and *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368 (11th Cir. 2005), are distinguishable because the complaints in those cases neither specified the facts underlying each claim, nor specified which claims were directed at which defendant. Here there is only one defendant—Samsung. Because Plaintiffs allege deceptive and unfair conduct, many of the decisions in Samsung's Appendix 10 addressing pleading requirements for consumer protection claims based on fraud are largely irrelevant. *See* Plaintiffs' Appendix B, Chart 4, in response to Samsung's Appendix 10.

concealed by the defendants." *Caspersen v. Oring*, 441 F. Supp. 3d 23, 36 (D.N.J. 2020); *AMCA*, 2021 WL 5937742, at *22 n.42 ("This [Rule 9(b)] standard is slightly relaxed for knowing omissions[.]"). Furthermore, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

3.    *Plaintiffs Plausibly Allege Material Misrepresentations*

Plaintiffs allege that Samsung affirmatively misrepresented that: (1) it would protect the privacy and confidentiality of Subclass Members' PII, including by implementing and maintaining reasonable security measures; and (2) it would comply with common law and statutory duties pertaining to the security and privacy of Subclass Members' PII, which include duties imposed by the FTC Act. ACC, ¶¶ 376(d), (e). Plaintiffs also alleged that they relied on Samsung's policies and promises to implement sufficient measures to protect Plaintiffs' PII. *See supra* n.4. These misrepresentations are actionable in many jurisdictions regardless of whether a Plaintiff relied on them. *See* Plaintiffs' Appendix B, Chart 6, in response to Samsung's Appendix 13. In jurisdictions that do require reliance or causation, "the plaintiff need not demonstrate [that the misrepresentation] was the only cause" of [its injury]. *See In re Anthem*, 2016 WL 3029783, at *36. "It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision." *Id.* Moreover, a plaintiff does not necessarily "need to

demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement." *Id.*

Samsung attempts to defeat a strawman argument by claiming that it had no duty to disclose because none of the statements quoted by Plaintiffs rise above the level of non-actionable puffery. MTD Br. at 79-82. This argument is relevant only to assess claims for affirmative misrepresentations, not *omission-based* claims. To the extent the quoted statements have any bearing on Plaintiffs' omission claim, it is because they were partial representations regarding the security of Samsung's data systems that failed to also address the known security inadequacies. *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at *10 (D.N.J. June 2, 2015). *See infra* Section IV.A.4.

Even so, what may otherwise be a statement of opinion may be considered a representation of fact depending upon the circumstances. *See* Jud. Council of Cal. Civ. Jury Instr. 1904. For example, "[a] statement couched as an opinion, by one having special knowledge on the subject, may be treated as an actionable misstatement of fact." *Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069, 1080-81 (1998). Given Samsung's specialized knowledge in the area of data security, its statement that it has "industry-leading security," (ACC, ¶ 197), should be treated as a misstatement of fact upon which Plaintiffs reasonably relied. "Whether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact

for the jury." *Id.* at 1081. "Moreover, when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 408 (1992).

### 4.    Plaintiffs Plausibly Allege Actionable Omissions

Plaintiffs plead that Samsung knew "that its computer systems were a target for cybersecurity attacks" (ACC, ¶ 246), that "the PII of individuals is highly valuable to criminals," (*id.* ¶ 251), and that given its own past security incidents (*id.* ¶ 5), "there was a foreseeable risk that Plaintiffs' and Class Members' PII could be accessed, exfiltrated and published as the result of a cyberattack" (*id.* ¶ 253). Yet, Samsung failed to implement adequate safeguards to protect Plaintiffs' PII and failed to disclose its inadequate data security practices to Plaintiffs. *Id.* ¶¶ 21, 200. Instead, it continued to make statements regarding its data security that it knew were false, misleading, and incomplete. *Id.* ¶¶ 195-197.

Samsung's exclusive knowledge of its inadequate data security measures, active concealment of those inadequacies, and partial representations regarding its data security all triggered a duty to disclose to "Plaintiffs and Class Members that

its data systems were not secure and were vulnerable to attack." *Id.* ¶ 200.[35] *See, e.g.*, *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 963-966 (E.D. Mich. 2022); *Cohen v. Subaru of Am., Inc.*, No. 1:20-cv-08442-JHR-AMD, 2022 WL 714795, at *19, *23 (D.N.J. Mar. 10, 2022); *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12–07849 (WHW)(CLW), 2015 WL 1270958, at *8 (D.N.J. Mar. 18, 2015); *Gen. Motors LLC v. Ashton*, No. 20-12659, 2021 WL 2549498, at *6 (D.N.J. June 22, 2021); *Opheim v. Volkswagen Aktiengesellschaft*, No. 20-02483 (KM) (ESK), 2021 WL 2621689, at *15 (D.N.J. June 25, 2021); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 232 (D.N.J. 2020).

In addition, most—if not all—states have exceptions to the confidential relationship rule in transactions when fraudulent concealment has occurred. *See, e.g.*, *In re Chevrolet Bolt*, 633 F. Supp. 3d at 963-66 (collecting cases); *Cohen*, 2022 WL 714795, at *19 (collecting cases). For example, in New Jersey, "[w]here, as here, there is no presumed fiduciary relationship, [New Jersey] law imposes a duty to disclose if a party expressly reposes a trust and confidence in the other or, because of the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence is necessarily implied." *Eady v. TapFury*

---

[35] Samsung does not challenge this requirement in the following states: Alaska, Illinois, Indiana, Iowa, Massachusetts, New Hampshire, New York, Ohio, Oregon, and Rhode Island. *See* Plaintiffs' Appendix B, Chart 5, in response to Samsung's Appendix 12; MTD Br. at 83-84. As to those states, any argument that Plaintiffs failed to plead a duty to disclose is now waived.

*LLC*, No. 17-13483 (ES) (JSA), 2022 WL 986269 at \*4 (D.N.J. Apr. 1, 2022). The same is true under Illinois law. *See Flynn v. FCA US LLC*, 327 F.R.D. 206, 218 (S.D. Ill. 2018) (duty to disclose exists "where plaintiff places trust and confidence in defendant").[36] Accordingly, the nature of the parties' relationship here also triggered a duty to disclose.

In sum, Plaintiffs have alleged enough facts to establish the who, what, when, where, and how of Samsung's deceptive and unfair omissions concerning the Data Breach. The "*who*" in this case is Samsung, who failed to properly secure and safeguard Plaintiffs' PII (ACC, ¶ 1); the "*what*" is Samsung's omissions and/or misrepresentations regarding the state of its data security measures to protect Plaintiffs' PII (*id.* ¶¶ 198-200); the "*where*" includes Samsung's website, printed materials, and other communications with Plaintiffs (*id.* ¶¶ 195-197); and the "*when*" is each time it touted its commitment to privacy and security to induce Plaintiffs to provide Samsung with, or allow Samsung to collect, their PII (*id.* ¶¶ 184-194). "*How*" Defendant's conduct was unlawful is that Samsung knew its computer systems were vulnerable to unauthorized access and targeting by hackers for the purpose of stealing and misusing Plaintiffs' PII. *Id.* ¶¶ 246-254.

---

[36] Courts have similarly recognized a duty to disclose under other state laws where there is "some type of special relationship." *See, e.g.*, *Colonial Imports, Inc. v. Carlton Nw., Inc.*, 121 Wash. 2d 726, 732 (1993) (Washington law); *Gardner v. First Escrow Corp.*, 696 P.2d 1172 (Or. Ct. App. 1985) (Oregon law); *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1351 (N.D. Ga. 2015).

5.        *Plaintiffs Plausibly Allege Reliance Where Required*

Samsung broadly misconstrues cases to support its argument that "[t]wenty-three consumer fraud statutes require plaintiffs to show actual reliance on alleged misrepresentations or omissions resulting in harm." MTD Br. at 85. However, all of these cases are inapposite and concern affirmative misrepresentation claims, ***not*** omission-based claims.[37] Further, Samsung implicitly admits that reliance is not a required element for misrepresentation or omission claims for the following states: Connecticut, Florida, Kansas, Louisiana, Massachusetts, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, Rhode Island, South Carolina, Tennessee, Washington, and Wisconsin. *See* Samsung's Appendix 13. Any argument that Plaintiffs were required to plead reliance for those states has been waived.[38] *See, e.g.*, *Heyman v. CitiMortgage, Inc.*, No. 14-1680-KM-MAH, 2019 WL 2642655, at *20 n.28 (D.N.J. June 27, 2019). And logically, to prove an omission was material—and thus establish causation—a plaintiff need not show

---

[37] Moreover, the plaintiffs in *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1302 (S.D. Cal. 2020), did "not allege having been exposed to the statements in either the software application or Solara's website." The same cannot be said here, where Plaintiffs have alleged that they were "forced to register accounts" (ACC, ¶ 187) and consent to Samsung's Privacy Policy "to use many important features of Samsung's products" (*id.* ¶ 233).

[38] As Plaintiffs' Appendix B, Chart 6, in response to Samsung's Appendix 13 demonstrates, Samsung overstated the state of the law in its Appendix 13. For example, reliance is not an express statutory element on Plaintiffs' GFBPA claim. *See Johnson v. GAPVT Motors, Inc.*, 292 Ga. App. 79, 84 (2008).

reliance upon or even awareness of the fact that the defendant failed to disclose the truth. The critical question is whether the plaintiff would have acted differently had it been disclosed. *See Skeen v. BMW of N. Am., Ltd. Liab. Co.*, No. 2:13–cv–1531–WHW–CLW, 2014 WL 283628, at *11 (D.N.J. Jan. 24, 2014) (collecting cases). Plaintiffs have alleged that Samsung's misrepresentations and omissions deprived Plaintiffs of critical information needed to make informed decisions and protect their rights. ACC, ¶¶ 21, 200.

6.    *Plaintiffs Plausibly Allege Proximate Causation Where Required*

Samsung relies on *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012), for its assertion that Plaintiffs need to have "alleged unlawful practice[s of Samsung were the] proximate cause of . . . [their] ascertainable loss."[39] Br. at 86. *Marcus*, however, was decided at the class certification stage—and more importantly, the court found there to be a "presumption of causation" when "plaintiffs could [not] have known the truth underlying the defendants' fraud." *Id.* at 610. Here, Plaintiffs "acted reasonably in relying on Samsung's misrepresentations and omissions, the truth of which they could not have discovered." *See, e.g.*, *id.* ¶359.

_____

[39] Samsung also relies on its Appendix 14 for its assertion that "[t]wenty-nine consumer fraud statutes require Plaintiffs to plead proximate causation." MTD Br. at 86. However, Samsung's Appendix 14 does not contain any support for the states of Alaska, Indiana, Louisiana, Maryland, Michigan, New Hampshire, New Mexico, or Rhode Island, and so the argument of proximate causation is waived with respect to these states' consumer fraud statutes. *See, e.g.*, *Heyman*, 2019 WL 2642655, at *20 n.28.

Nevertheless, Plaintiffs have adequately pleaded proximate causation because Samsung mishandled their private data. As a general rule, "[p]roximate cause is a cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Broach-Butts v. Therapeutic Alternatives, Inc.*, 191 A.3d 702, 711 (N.J. Super. Ct. App. Div. 2018). It ordinarily is a question for the jury. *Id.* But it is not a particularly close call here. If Samsung had used reasonable care when storing Plaintiffs' PII, Plaintiffs would not have been harmed. ACC, ¶¶271-282.

### 7. *Plaintiffs Plausibly Allege Cognizable Injuries*

Samsung contends that Plaintiffs have failed to allege a cognizable injury under 36 of the consumer protection laws under which Plaintiffs assert claims. MTD Br. at 87. However, damages for Plaintiffs' state statutory claims are satisfied for the same reasons as their common law claims. *See In re Equifax*, 362 F. Supp. 3d at 1317-21; *In re Target*, 66 F. Supp. 3d at 1158-59.

As discussed above in Section II.B, Plaintiffs plead injury in the form of (1) actual identity theft or fraud; (2) out-of-pocket expenses; (3) increased risk of identify theft or fraud; (4) lost value of their PPI; and (5) overpayment for Samsung's Products and Services (*i.e.*, lost benefit of the bargain). *See AMCA*, 2021 WL 5937742, at *8-11; *In re Am. Fin. Resources*, 2023 WL 3963804, at *4-5; *In re Marriott*, 440 F. Supp. 3d at 457-66.

With little analysis, Samsung cites to a number of standing cases to argue that Plaintiffs' allegations of injury do not meet the "higher" bar for stating a claim for a cognizable injury. But a closer examination of these cases demonstrates their limited value here. To start, not a single case listed on Samsung's Appendix 15[40] involved a data breach, and only a handful of cases cited in Samsung's Motion even concern PII-related claims. And most of *those* cases involved lost computer equipment

---

[40] Samsung essentially asserts that the consumer protection statutes of 33 states require a higher standard for pleading injury than Article III does. Samsung is mistaken, and its cursory analysis of the relevant statutes' remedial provisions ignores the attendant case law. As an illustration, Samsung has clumped together every statute containing remedial provisions for Plaintiffs with "ascertainable losses" and construed that language to require a direct and strict pecuniary loss. Kentucky is one of the states containing "ascertainable loss" language, but the Kentucky Supreme Court has rejected Samsung's interpretation, awarding damages for future promises of financing, absences from work, inconvenience, and "constant telephoning." *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 907 (Ky. 2008). Oregon also requires "ascertainable loss," but its court of appeals has held that "[a]ny loss will satisfy [the ascertainable loss] requirement so long as it is capable of being discovered, observed, or established." *Feitler v. Animation Celection, Inc.*, 13 P.3d 1044, 1050 (Or. Ct. App. 2000). *See also id.* at 1047 ("ascertainable loss requirement should be 'viewed broadly"). This law refutes Samsung's characterization of the statutes. Thirteen additional state consumer protection statutes lumped together by Samsung share Kentucky and Oregon's "ascertainable loss" language, and many of the jurisdictions have explicitly construed them contrary to Samsung's restrictive definition. *See, e.g.*, *Discover Bank v. Morgan*, 363 S.W.3d 479, 495 (Tenn. 2012) (ascertainable loss includes reduction in credit rating); *Serv. Rd. Corp. v. Quinn*, 698 A.2d 258, 262-63 (Conn. 1997); *In re Wiggins*, 273 B.R. 839, 856 (Bankr. D. Idaho 2001) ("Ascertainable loss is defined under the Idaho Rules of Consumer Protection to include . . . [a]ny deprivation, detriment, or injury, or any decrease in amount, magnitude, or degree that is capable of being discovered, observed, or established."); *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792-93 (N.J. 2005). Samsung offers no case law supporting its restrictive construction of injury.

containing personal information (*see, e.g.*, *Hammond v. The Bank of New York Mellon Corp.*, 2010 WL 2643307 (S.D.N.Y. June 25, 2010); *Shafran v. Harley-Davidson, Inc.*, 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008)), or employee theft of such information (*see, e.g.*, *Holmes v. Countrywide Financial Corp.*, 2012 WL 2873892 (W.D. Ky. July 12, 2012)), rather than a sophisticated, intentional, criminal breach of a company's electronic data systems. These cases concluded that when data is simply lost, or even stolen, and no known misuse has occurred, plaintiffs may not recover damages. None of these cases involved misuse of stolen information, unlike the situation at hand.

The two cases cited by Samsung that do involve a data breach are factually distinguishable. In *Attias*, 365 F. Supp. 3d 1, the court declined to find a duty in part because, unlike here, plaintiffs made "no allegations that it was foreseeable that [defendant] specifically would suffer a data breach based on, for instance, known vulnerabilities in its data-storage systems." *Id.* at 21. *Cf.* ACC, ¶ 3-5, 203-209. Here, Plaintiffs allege that Samsung's vulnerabilities were well known, and the Data Breach was foreseeable, as outlined by their history of compromised security systems. ACC, ¶¶ 3 (prior security problems), 5 (December 2022 security incident), 203-210 (incidents from 2019 to 2023). Furthermore, Plaintiffs allege they face a substantial risk of future harm because criminals are already committing fraud with their PII that has been released on the Dark Web. *Id.* ¶¶ 12, 25, 29-31, 52, 103, 282.

This is a far cry from the allegations in *In re SuperValu, Inc.*, 870 F.3d 763, 770 (8th Cir. 2017), where the plaintiffs contended only "on information and belief" that credit card numbers were disseminated on the Dark Web, without anything more. Moreover, the court distinguished such credit card data from the types of PII that could lead to identity theft or fraud, "such as social security numbers, birth dates, or driver's license numbers" – which is exactly the type of information that was disseminated here. *Id.*

"Plaintiffs have plausibly pled injury sufficient to meet the loss requirements in each of the jurisdictions from which their consumer protection claims stem. The determination whether all of the injuries Plaintiffs claim . . . are cognizable under each state's consumer-protection laws is a matter for summary judgment, not a motion to dismiss." *In re Target*, 66 F. Supp. 3d at 1162.

### 8.    *Plaintiffs Plausibly Allege the Requisite Consumer Transaction*

Plaintiffs have alleged transactions connected to Samsung's unfair and deceptive practices, and all Plaintiffs allege that they purchased Samsung products and/or services, many of which they used in connection with Samsung's internet-based services. ACC, ¶¶ 33, 36, 39, 42, 45, 48, 51, 54, 57, 60, 63, 66, 69, 72, 75, 78, 81, 84, 87, 90, 93, 96, 99, 102, 205, 108, 111, 114, 117, 120, 123, 126, 129, 132, 135, 138, 141, 144, 147, 150, 153, 156, 159, 162, 165, 168, 171, 174, 181-182, 184. Samsung nonetheless asks the Court to dismiss the claims of Plaintiffs from thirteen

states,[41] arguing they did not participate in a consumer transaction with Samsung because they did not purchase the products "directly from Samsung." MTD Br. at 92. But not a single case cited by Samsung in its brief or Appendix 16 supports its direct-transaction argument. Indeed, courts routinely hold that technical privity between the parties is unnecessary to pursue claims under the statutes at issue. See Plaintiffs' Appendix B, Chart 7, in response to Samsung's Appendix 16. As the court in *In re Equifax* explained when rejecting the same argument, "[a]lthough many of these state statutes provide that unfair or deceptive conduct must be done in connection with a consumer transaction, courts have interpreted these requirements liberally." 362 F. Supp. 3d at 1337 (N.D. Ga. 2019). Accordingly, "the state unfair and deceptive trade practices claims under statutes including 'consumer transaction' language should not be dismissed." *Id.*

### B. Samsung's Additional State Specific Arguments for Dismissal Fail

#### 1. *Plaintiffs May Bring Statutory Claims on Behalf of a Class*

This Court and many others have rejected Samsung's contention (MTD Br. at 68 & Appendix 7) that class action bars in certain consumer protection statutes[42] preclude class action recovery, ruling that such bars are procedural and so do not

---

[41] Samsung's Appendix 16, however, lists fifteen claims. Thus, it is unclear which of the thirteen claims Samsung is actually seeking to dismiss.

[42] Alabama, Arkansas, Georgia, Iowa, Louisiana, Ohio, South Carolina, and Tennessee.

apply to claims brought in federal court as a class action under Fed. R. Civ. P. 23. *See, e.g.*, *Cohen*, 2022 WL 721307, at *29 (adopting the plurality's reasoning in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)); *In re Liquid Aluminum Antitrust Litig.*, No.: 16-md-2687 (JLL), 2017 WL 3131977, at *25 (D.N.J. July 20, 2017) (same); *In re Mercedes-Benz Emissions Litig.*, No.: 16-881 (JLL)(JAD), 2019 WL 413541, at *26 (D.N.J. Feb. 1, 2019) (holding class claims brought under Alabama, Georgia, Ohio, South Carolina and Tennessee law, among others, were not precluded).[43] Accordingly, Plaintiffs' claims under Alabama, Arkansas, Georgia, Iowa, Louisiana, Ohio, South Carolina, and Tennessee are not barred.

### 2.    *Pre-Suit Notice Requirements Do Not Bar Plaintiffs' Claims*

Samsung also misses the mark in arguing that Plaintiffs' claims under Alabama, California, Georgia, Indiana, Massachusetts, and Texas law are barred

---

[43] *See also Lisk v. Lumber One Wood Preserving*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 applies."); *Amato v. Subaru of Am., Inc.*, No. 18-16118, 2021 WL 2154976, at *5-8 (D.N.J. May 27, 2021) (Georgia statute); *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1107 (S.D. Fla. 2019) (Tennessee statute); *Reed v. Dynamic Pet Prods.*, No. 15cv0987-WQH-DHB, 2016 WL 3996715, at *6 (S.D. Cal. July 21, 2016) (Louisiana statute); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-cv-01180-BLF, 2015 WL 4755335, at *21 (N.D. Cal. Aug. 11, 2015) (South Carolina statute).

because Plaintiffs did not provide pre-suit notice. First, Plaintiffs did provide pre-suit notice regarding its claims under California (ACC, ¶ 423), Massachusetts (*id.* ¶ 830), and Texas (*id.* ¶ 1236) law, which alerted Samsung to the claims against it and the bases for the claims even if the notice did not expressly specify the Alabama, Georgia, or Indiana statutes.[44]

Significantly, the court in *In re Generics Pharmaceuticals Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 834 (E.D. Pa. 2019), held that pre-suit notices "are not a pleading requirement for the complaint" and declined to dismiss claims for lack of pre-suit notice. Other courts, too, have applied the *Shady Grove* analysis to pre-suit notice requirements. *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis*, No. 15-cv-6549, 2018 WL 7197233, at *26 (S.D.N.Y. Dec. 26, 2018) (holding the pre-suit requirement at issue was "purely procedural" and therefore preempted by Rule 23 under *Shady Grove*). In any event, the question of whether class action bars are substantive rather than procedural should be addressed at a later

---

[44] Plaintiff Naeem Seirafi, on behalf of *all* victims of the data breach, sent Samsung a notice letter demanding that Samsung takes action to remedy the Data Breach. ACC, ¶¶ 415-416. Even if this notice were deemed not to have satisfied all of the notice requirements of all applicable jurisdictions, Samsung has not been prejudiced. Indeed, Samsung acknowledges that it was served with 17 complaints arising out of the Data Breach before Plaintiffs filed the initial consolidated complaint. MTD Br. at 9. Those complaints provided Samsung with notice of the bases of Plaintiffs' claims (ACC, ¶ 416) and ample opportunity to investigate and cure the allegations made by Plaintiffs here (*id.* ¶¶ 417-418).

stage of litigation. *See Rickman v. BMW of N. Am.*, No. 18-4363(KM) (JBC), 2020 WL 3468250, at *16 (D.N.J. June 25, 2020) ("Whether Rule 23 would abridge a substantive right . . . is an issue that need not be faced until the certification stage."). For this reason, and under *Shady Grove*, Plaintiffs' claims may proceed at this stage, notwithstanding any pre-suit notice requirement.

### 3.    *Plaintiffs are Entitled to Injunctive Relief*

Plaintiffs seek cognizable forward-looking injunctive relief under the consumer protection statutes of Georgia, Illinois, and Minnesota (*cf.* MTD Br. at 72) and so their claims under these laws should not be dismissed. The Complaint alleges that not only did Samsung fail to improve data security after suffering multiple security failures prior to this Data Breach, its security vulnerabilities continue unabated (ACC, ¶¶ 3-5, 203-209) and Samsung's failure to properly secure and upgrade its systems allowed yet another breach to occur afterwards (*id.* ¶ 4).

In addition, the Complaint alleges "Samsung disregards the rights of Plaintiffs and class members by intentionally, willfully, recklessly or negligently failing to implement proper and reasonable measures to safeguard its customers' PII" (*id.* ¶ 10) and "Samsung's cavalier stance regarding data security is *highly likely to lead to more security incidents* that further compromise Plaintiffs' and Class Members' PII" (*id.* ¶ 210) (emphasis added). Plaintiffs seek specific forms of injunctive relief

to protect themselves and all of Samsung's customers against future breaches and consequent harm. *See id.* ¶ 210(B)(1)-(14) (enumerating the relief sought).

The Complaint easily satisfies the pleading requirements of the statutes Samsung challenges. *See Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1283 (11th Cir. 2001) ("To have "standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.").

> 4. *Plaintiffs State a Claim Under the Connecticut Unfair Trade Practices Act*

Samsung argues that Plaintiffs' Connecticut Unfair Trade Practices Act ("CUTPA") claim must be dismissed because "Plaintiffs have not alleged a cognizable injury resulting from deficient notification and cannot allege a violation of the notification statute." MTD Br. at 92. Samsung ignores, however, Plaintiffs' express allegation that Samsung's actions in violation of the CUTPA include, ***but are not limited*** to its failure to disclose the Data Breach in a timely and accurate manner as required by C.G.S.A. §36a-701b(b) and (c). ACC, ¶ 480. Indeed, Plaintiffs have pleaded an unfair trade practice through their allegations regarding Samsung's failure to maintain adequate security measures. *Id.* ¶¶ 9, 199-200.

Connecticut looks to the FTC Act and federal law for guidance in interpreting the meaning of unfair acts or practices. *See* Conn. Gen. Stat. §42-110b(b). Additionally, courts have found that maintaining inadequate security measures can

constitute an unfair practice under the FTC Act. *In re Home Depot*, 2016 WL 2897520, at *6. Samsung's motion to dismiss Plaintiffs' CUTPA claim should be denied.

> 5. *Plaintiffs State Claims Under the Consumer Protection Laws of Iowa, Michigan, New Jersey, and Wisconsin*

Plaintiffs' claims under the Iowa Private Right of Action for Consumer Frauds Act, Michigan Consumer Protection Act, New Jersey Consumer Fraud Act, and the Wisconsin Deceptive Trade Practices Act properly include as predicate acts Samsung's violation of the relevant data breach notification statutes. (*Cf.* MTD Br. at 93); *see In re Equifax,* 362 F. Supp. 3d at 1339-41 (Iowa, Michigan, Wisconsin, New Jersey); *In re Target*, 66 F. Supp. 3d at 1169 (Michigan, Wisconsin); *In re Solara*, 613 F. Supp. 3d at 1306 (Michigan). In fact, the NJCFA expressly states that "[a] plaintiff may recover for a willful, knowing, or reckless violation of the SBDA through the NJCFA." *AMCA*, 2021 WL 5937742, at *34. And Plaintiffs allege "Samsung acted intentionally, knowingly, and maliciously to violate [the NJCFA], and recklessly disregarded Plaintiffs' and Subclass Members' rights." ACC, ¶ 750. Plaintiffs have adequately alleged a violation of the relevant data breach notification statutes.

> 6. *Plaintiffs State Claims Under the California Unfair Competition Law ("UCL")*

91

In addition to their claim for damages, Plaintiffs seek several forms of equitable relief under the UCL, including prospective injunctive relief to enjoin Samsung from continuing its "unfair, unlawful, and fraudulent business practices" (ACC, ¶¶ 268, 750),  including "[f]ailing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Subclass Members' PII" and "[f]ailing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures" (*id.* ¶ 437(a)-(b)). This prospective injunctive relief is a wholly separate remedy from any monetary relief. *Id.* ¶ 268. Thus, Samsung is wrong to argue that Plaintiffs have an adequate remedy at law and cannot demonstrate a "real and immediate threat of future injury." MTD Br. 93-94. Samsung must be enjoined from its current data security practices to "ensur[e] that [Plaintiffs' and Class Members'] personal information is and remains safe." ACC, ¶ 13. An injunction is required to prevent further harm, including by "protect[ing] Class Members' data." *Id.* ¶ 268. The injunctive relief requested here "is distinct from the legal damages that Plaintiffs seek elsewhere" in the Complaint and "Plaintiffs have adequately alleged that legal remedies are inadequate." *In re Subaru Battery Drain Prod. Liab. Litig.*, No. 1:20-cv-03095-JHR-JS, 2021 WL 1207791, at *29 (D.N.J. Mar. 31, 2021).

Plaintiffs have also pleaded claims under each of the UCL's unlawful, unfair, and fraudulent prongs and are entitled to injunctive relief and restitution. Several

courts have allowed UCL claims in the data breach context to proceed on analogous facts. *See, e.g.*, *Hameed-Bolden v. Forever 21 Retail, Inc*., No.: CV 18-03019 SJO (JPRx), 2018 WL 6802818, at *7-8 (CD. Cal. Oct. 1, 2018) (unlawful practices prong pleaded); *In re Adobe*, 66 F. Supp. 3d at 1231-32 (restitution claim pleaded under unfair prong).

*Unlawful.* Plaintiffs satisfy the "unlawful" prong because they allege a violation of the FTC Act, California Consumer Records Act ("CRA") and California Consumer Legal Remedies Act ("CLRA"). *See In re Anthem*, 162 F. Supp. at 989 (alleging violations of FTC Act); *In re Brinker*, 2020 WL 691848, at *17 (alleging violations of FTC Act and CRA). This well-reasoned case law directly contradicts Samsung's claim that it cannot be liable because the FTC Act has no private right of action. *See id*. Section 5 of the FTC Act applies here and provides an ascertainable duty regarding data protection. *See In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 420 (E.D. Va. 2020); *In re Marriott*, 440 F. Supp. 3d at 494.

*Unfair.* "The 'unfair' prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law." *In re Adobe*, 66 F. Supp. 3d at 1225. Courts hold that plaintiffs state a claim where, as here, they allege a defendant promised to protect consumer data but failed to do so. *See In re Yahoo!*, 2017 WL 3727318, at *24; *In re Anthem*, 162 F. Supp. 3d at 990. Samsung's focus

on whether its actions were immoral, unethical, oppressive, or unscrupulous is misplaced. MTD Br. at 96. "None of the three tests for unfairness require plaintiffs to plead that defendants acted in an immoral, unethical, oppressive, or unscrupulous manner." *In re Anthem*, 162 F. Supp. 3d at 989-90.

**Fraudulent.** As detailed above, Samsung made deceptive statements and omissions that were material to consumers. Courts in other data breach cases have allowed UCL claims to proceed under the fraudulent prong under analogous circumstances. *See In re Anthem*, 2016 WL 3029783, at *35-36. Samsung's argument that Plaintiffs have not pleaded this claim with particularity under Rule 9(b) fails.

7.    *Plaintiffs State Claims Under the California Consumer Legal Remedies Act*

Samsung argues the CLRA claim is deficient because Plaintiffs cannot allege they were involved in a direct transaction with Samsung. However, the CLRA "provides a broad definition of 'transaction'" such that Plaintiffs need only plead "'an agreement between a consumer and any other person.'" *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 869 (2002). Samsung is not absolved from liability just because it did not sell products directly to Plaintiffs, and cites no authority for its position that they must have engaged in a "transaction" directly with Samsung. Courts interpreting the California statutes have rejected identical arguments. *See Chamberlain v. Ford Motor Co.*, 2003 WL 25751413, at *7 (N.D. Cal. Aug. 6, 2003)

("[T]he legislature intended the CLRA to cover a wide range of business activities," and not just the direct transaction at issue.); *see also Herron v. Best Buy Stores, Ltd. P'ship,* 2013 WL 4432019, at *3-4 (E.D. Cal. Aug. 15, 2013) (collecting cases); *Newton v. Am. Debt Servs., Inc.*, 2013 WL 5592620, at *8 (N.D. Cal. Oct. 10, 2013) ("The Court . . . interprets the CLRA as permitting indirect liability.").

Samsung relies on *Green v. Canidae Corp.*, No. CV 09-0486 GAF (PLAx), 2009 WL 9421226, at *4 (C.D. Cal. June 9, 2009), where the court held a plaintiff who purchased dog food from a supplier could not sue the manufacturer because "[t]he CLRA does not provide a cause of action for consumers against the supplier of goods and services to a retailer from whom the consumer purchased." But a more-recent California case rejected the direct-transaction requirement in *Green*, criticizing the opinion as "cursory," "unpersuasive," and contrary to "the weight of the persuasive authority." *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *15 (N.D. Cal. July 7, 2015).

The *Philips* court emphasized the CLRA's command that the statute be interpreted liberally, noting that "[i]t comes as no surprise, then, that the vast majority of courts to address the issue have rejected [the direct-transaction] argument, holding instead that a plaintiff need not allege a direct transaction with the manufacturer" to state a CLRA claim. *Id.*; *see also Falco v. Nissan N. Am., Inc.*, 96 F. Supp. 3d 1053, 1062-63 (C.D. Cal. 2015); *Tietsworth v. Sears*, 720 F. Supp.

95

2d 1123, 1140 (N.D. Cal. 2010); *Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076, at *3-4 (N.D. Cal. March 30, 2009). The Court should likewise reject any bright-line assertion that "transactions" must occur directly with a product's manufacturer.

## V.    PLAINTIFFS ADEQUATELY PLEAD DATA BREACH NOTIFICATION LAW VIOLATIONS

### A.    Plaintiffs Have Private Rights of Action

Samsung claims that Colorado, Illinois, and Kansas do not provide a private right of action under their data breach notification statutes. While Samsung cites *In re Equifax*, 362 F. Supp. 3d 1295 in support of its position, the *In re Equifax* decision actually runs contrary to Samsung's argument. The *In re Equifax* court "decline[d] to dismiss the Plaintiffs' claims under the Colorado, Delaware, Kansas, and Wyoming data breach statutes," noting that those statutes "contain ambiguous language as to private enforceability or provide that the statute's remedies are 'non-exclusive.'" *Id.* at 1341; *see also In re Target*, 66 F. Supp. 3d at 1169 (declining to dismiss claims under Colorado and Kansas data breach statutes).[45]

The *In re Equifax* court also held that a "violation of the Illinois Personal Information Protection Act constitutes a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, which expressly permits damages suits."

---

[45] *See* Colo. Rev. Stat. Ann. § 6-1-716(4) (Violations) ("The provisions of this section are not exclusive[.]"); Kan. Stat. Ann. § 50-7a02(g) (same).

*Equifax*, 362 F. Supp. 3d at 1337-38. Based on *In re Equifax* and *In re Target Corp.* and Samsung's failure to cite any authority that supports its argument, the Court should not dismiss the delayed notification claims under these states' laws.

### B.    Plaintiffs Plausibly Allege Injuries

Samsung argues that the Complaint fails to meet a so-called "actual injury damages" element required by the statutes of nine of the twelve states listed in its Appendix 18. Samsung's failure to identify the nine states warrants rejection of this argument, but it also fails on the merits. Plaintiffs allege the same injury and damages that have survived motions to dismiss in the years since the most recent case cited by Samsung, *Antman v. Uber Techs., Inc.*, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015), was decided.

In *In re Capital One*, 488 F. Supp. 3d at 416-17, the court concluded that the plaintiff "adequately alleged a sufficient economic injury due to and traceable from the timing of the (delayed) notification," finding it plausible that the plaintiff could have avoided "incremental, additional economic injuries beyond those arising from the Data Breach, namely additional monitoring costs" if he had received notice earlier. *Id.* at 416-17. "[C]onstruing the allegations in the light most favorable to Plaintiff Spacek, the economic harm alleged plausibly falls within the scope of the [Virginia data breach] statute." *Id.*

Similarly, in *Gallagher*, 631 F. Supp. 3d at 589-90, allegations that delayed notice prevented plaintiffs from "timely mitigating, preventing, and repairing identity theft and the fraudulent use of their PII and/or PHI by third parties . . . establishe[d], for pleading purposes, that Plaintiffs suffered harm from the delay in notification."[46] Plaintiffs make the same allegations here. *See, e.g.*, ACC, ¶ 223 (inadequate and delayed notification injured Plaintiffs); *id.* ¶ 225 (actions consumers can take to protect themselves when promptly notified of a data breach); *id.* ¶¶ 28-32 (describing credit monitoring and other costs incurred after notification).

The decisions in Appendix 18 to Samsung's motion are inapposite. None were data breach cases, and none undermine the soundness of the reasoning in the recent data breach cases Plaintiffs cites above.[47]

---

[46] *See also In re Solara*, 613 F. Supp. 3d at 1307 (finding defendants' arguments regarding damages "are better suited for a motion for summary judgment when the record is more fully developed"); *In re Mednax*, 603 F. Supp. 3d at 1219 ("[C]ourts applying the CRA [California Customer Records Act] have inferred from plaintiffs' post-disclosure remedial actions—coupled with allegations of harm by the data breach—that timely disclosure would have prompted a swifter response and that the delay caused the type of cognizable injury—*i.e.*, ongoing compromise of unprotected data—required by the statute."); *In re Equifax*, 362 F. Supp. 3d at 1343 (finding plaintiffs adequately alleged injury resulting from delay in notification where "[t]he plaintiffs note that they could have frozen their credit earlier, or taken other precautions").

[47] *See Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 461 (2013) (plaintiff alleged he was deprived of information under "shine the light law"); *Kim v. Carter's, Inc.*, 598 F.3d 362, 364 (7th Cir. 2010) (misleading sales price for clothing); *Citaramanis v. Hallowell*, 328 Md. 142 (1992) (landlord-tenant suit arising from

## C.      Plaintiffs Plausibly Allege Samsung Had a Duty to Data Breach Victims

In Section IX.C of its brief, Samsung makes three arguments that all require addressing factual disputes, and thus are premature.

***First***, Samsung argues that it was not legally obligated to notify data breach victims because the breach did not involve Social Security or payment card numbers. As discussed throughout, the ACC alleges that both Social Security and payment card numbers were compromised (*id.* ¶¶ 1, 26; *see also supra* Section II.A) and the Court should not credit Samsung's contradictory statements in resolving a motion to dismiss. Furthermore, the kinds of identity theft experienced after the Data Breach make it plausible that Social Security and payment card numbers were stolen. *Id.* ¶ 100 (Plaintiff's Social Security number used to open a credit card account), *id.* ¶ 133 (Plaintiff who suffered identify theft put a block on his Social Security number and obtained a new Social Security card).

***Second***, Samsung improperly argues for a finding as a matter of law that its notice was timely. But "[t]he notice's timeliness is a *factual* question that asks whether notice of the data breach occurred 'without unreasonable delay.'" *In re*

_____

improper licensing of property"); *Tutanji v. Bank of Am.*, No. 12-887 (JLL), 2012 WL 1964507, at *6 (D.N.J. May 31, 2012) (complaint about debt collector's practices); *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 25 (Or. 2015) (finding no economic loss "when there is no price difference for a good with a particular feature and the same good without it").

*Capital One*, 488 F. Supp. 3d at 416 (emphasis added). Similarly, *In re Equifax* denied a motion to dismiss claims based on delayed notification, observing that the statutes at issue required notification in "the most expedient time possible and without unreasonable delay" or "within a reasonable time" and "[a] jury could conclude that the Defendants did not provide notice within a reasonable time, as these notification statutes require." *In re Equifax*, 362 F. Supp. 3d at 1343.

Although Cal. Civ. Code § 1798.82(a)[48] and some other statutes permit a reasonable delay if necessary to determine the scope of the breach, whether Samsung's months-long delay was "necessary" is a factual one. *See In re Ambry*, 567 F. Supp. 3d at 1150 (rejecting, at motion to dismiss stage, defendants' argument that their delay was "explained by their need 'to take measures to first determine the breach's scope and restore the integrity of the data system'"); *In re Equifax*, 362 F. Supp. 3d at 1342-43 (finding plaintiffs adequately alleged unreasonable delay, despite defendants' argument that the data breach statutes "permit an entity time to determine the scope of a breach before notification").

Samsung also notes that some statutes set outside limits on the time for notification. Those statutes still require companies to provide notice as expeditiously

---

[48] Samsung also cites N.Y. Gen. Bus. Law § 899-aa(2). Plaintiffs do not assert a claim under that statute.

as possible and "without unreasonable delay,"[49] creating a factual issue inappropriate for resolution on a motion to dismiss. *See In re Equifax*, 362 F. Supp. 3d at 1342-43 (rejecting argument that notification statute claim should be dismissed because defendant acted within specified time limit).

For the reasons explained above, Samsung's delay was unreasonable. The timeline of events is eerily similar to *In re Equifax*, where the breach was allegedly discovered in July but notification was delayed until September. *See* 362 F. Supp. 3d at 1310. Discovery is needed to identify the dates Samsung was on notice of or discovered the Data Breach, what, if anything Samsung did to determine the scope of the Data Breach, when it became aware of facts (or through diligent investigation should have become aware of facts) sufficient to trigger its notification obligations, and whether that date preceded September 2, 2022. It also involves an inquiry into who received the statutorily required notification.

***Third***, Samsung argues, without any citation to legal authority, that the content of its notice was sufficient as a matter of law. But Plaintiffs allege the notice

---

[49] *See* Colo. St. § 6-1-716 (requiring that notice be given "in the most expedient time possible and without unreasonable delay, but not later than thirty days after the date of determination that a security breach occurred."; Fla. Stat. § 501.171(4) ("Notice to individuals shall be made as expeditiously as practicable and without unreasonable delay, . . . but no later than 30 days after the determination of a breach[.]"); Wash. Rev. Code Ann. § 19.255.010(8) ("Notification to consumers . . . must be made in the most expedient time possible, without unreasonable delay, and no more than thirty days after the breach was discovered[.]").

was misleading and did not provide crucial information victims needed to protect themselves. ACC, ¶¶ 213-22 (describing deficiencies in notice). As with timing, the sufficiency of the contents of the notification is a question of fact for a jury to decide.

### D. Plaintiffs Plausibly Allege Samsung's Data Security Practices Were Unreasonable

Samsung's last salvo at Plaintiffs' delayed notification claims challenges Plaintiffs' claims under the California Consumer Privacy Act ("CCPA") and Consumer Records Act ("CRA"). Samsung argues that Plaintiffs may not "merely assert[] that a defendant's security measures are lacking," but rather, must allege facts to support this allegation. However, Plaintiffs' allegations contain sufficient factual matter at this stage of the litigation, especially in light of Samsung's refusal to disclose publicly or to produce in confidence to Plaintiffs, forensic details about the Data Breach.

Because consumers do not have access to detailed information about a company's data security measures, they are not required to plead exactly how the security measures were deficient when a data breach occurs. As the court in *Flores Mendez v. Zoosk, Inc.*, No. 20-cv-4929, 2021 WL 308543 (N.D. Cal. Jan. 30, 2021), explained:

> It is unreasonable for defendant to insist that the details be laid out in the initial complaint. The common law doctrine of *res ipsa loquitur* has some application here. The consuming public has come to believe that the internet companies, which take in their private information, have taken adequate security steps to protect the security of that information

from any and all hackers or interventions. The ordinary consumer, however, has no clue what internet companies' security steps are. There would be no way for users to know what security steps were actually in place. Therefore, when a breach occurs, the thing speaks for itself. The breach would not have occurred but for inadequate security measures, or so it can be reasonably inferred at the pleadings stage.

*Id.* at *4. S*ee also Ramos v. Wells Fargo Bank, N.A.*, 23-CV-0757-L-BGS, 2023 WL 5310540, at *2 (S.D. Cal. Aug. 17, 2023) (finding CCPA claim to be adequately pleaded where plaintiffs alleged unknown individuals accessed information because of defendant's failure to properly maintain data); *Alexander v. Wells Fargo Bank, N.A.*, 23-CV-617-DMS-BLM, 2023 WL 5109532, at *2 (S.D. Cal. Aug. 9, 2023) (finding allegation that defendant "fail[ed] to implement and maintain reasonable security procedures and practices" sufficient); *In re Bank of Am. California Unemployment Benefits Litig.*, 21-MD-2992-LAB-MSB, 2023 WL 3668535, at *13 (S.D. Cal. May 25, 2023) ("at the pleading stage, allegations the defendant failed to utilize industry-standard encryption are sufficient to allege a legal duty and corresponding breach" for CCPA claim).[50]

---

[50] The cases Samsung cites are distinguishable. *See Maag v. U.S. Bank, Nat'l Ass'n*, No. 21-CV-00031-H-LL, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (plaintiff alleged only that "Defendant did not 'implement and maintain reasonable security procedures and practices,' (Doc. No. 14 ¶¶ 18-19), 'failed to effectively monitor its systems for security vulnerabilities,' (*id*. ¶ 4), and had 'lax security,' (*id*. ¶ 20).");  *Razuki v. Caliber Home Loans, Inc*., No. 17CV1718-LAB (WVG), 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018) (Plaintiff simply alleged "Caliber's misconduct also included its decision not to comply with industry standards for the safekeeping and maintenance of the personal and financial information of Plaintiff

Here, the Complaint describes in detail Samsung's history with data breaches since at least 2019 (ACC, ¶¶ 203-210) and a litany of measures that Samsung could and should have taken to avoid the breach, including encrypting data, conducting risk assessments and following up to patch vulnerabilities, and training employees and contractors (*id.* ¶ 250). At the pleadings stage, the allegations in the Complaint suffice to deny Samsung's Motion.

## VI.   PLAINTIFFS ADEQUATELY PLEAD THEIR STATUTORY INVASION OF PRIVACY CLAIMS

### A.   Rhode Island Right to Privacy Claim

Plaintiffs have stated claims under the Rhode Island Right to Privacy Act. The Act provides protection from four different invasions of privacy, including "[t]he right to be secure from unreasonable publicity given to one's private life," *Id.* § 9-1-28.1(a)(3). "To state a cause of action [for this tort,] a plaintiff must show (1) 'publication' (2) of a 'private fact' (3) that the 'fact which has been made public [is] one which would be offensive or objectionable to a reasonable man of ordinary sensibilities,' §§ 9-1-28.1(a)(3)(A)(i)-(ii), and (4) damages, § 9-1-28.1(b)." *Pontbriand v. Sundlun*, 699 A.2d 856, 864 (R.I. 1997).

---

and the other Class members."). Here, Plaintiffs' allegations specify how Samsung's measures were inadequate. *See* ACC, ¶ 250; *In re Brinker*, 2020 WL 691848, at *17 (denying motion to dismiss because, "[u]nlike in *Razuki*, Plaintiffs . . . mention specific security measures Brinker should have taken (such as point-to-point and end-to-end encryption)").

"The term 'publication,' . . . does not require that the information be disseminated in a newspaper but merely that it be repeated [or disclosed] to a third party." *Id.* at 864. For the second element, a "private fact," Plaintiffs must "demonstrate that they actually expected a disclosed fact to remain private, and that society would recognize this expectation of privacy as reasonable and be willing to respect it." *Id.* at 865. Whether a private fact "would be offensive or objectionable to a reasonable man of ordinary sensibilities" depends on whether the disclosure is "of the sort that could be expected to inflict harm on the person whose private affairs are made points of public discussion." *Id.* That particular issue involves a factual determination of what would be offensive or objectionable in the context of the case. *Id.*

Samsung argues that Plaintiffs must show that Samsung acquired their information through "wrongful or improper means," but such a showing is not necessary for claim under § 9-1-28.1(a)(3). *See id.* at 863-64 (discussing a different subsection of the Right to Privacy Act); *id.* at 864-65 (discussing publication of private facts).

Plaintiffs provided Samsung with significant personal information, including their names, contact and demographic information, dates of birth, and product registration information. ACC, ¶¶ 1, 2, 6, 26, 188. Plaintiffs demonstrated an actual expectation that Samsung would safeguard their PII to ensure these facts would

105

remain private. *Id.* ¶¶ 195-99. Samsung does not argue that Plaintiffs' expectation of privacy in the PII it collected is objectively unreasonable. Given Plaintiffs' actual and reasonable expectation of privacy in their PII, this information constitutes "private fact[s]" under § 9-1-28.1(a)(3). *See Pontbriand*, 699 A.2d at 865 (explaining that a fact is private under § 9-1-28.1(a)(3) if it was "actually expected . . . to remain private" and if "society would recognize this expectation of privacy as reasonable and be willing to respect it"). By failing to upgrade and maintain its security systems in a meaningful way to safeguard Plaintiffs' PII, Samsung disclosed Plaintiffs' PII to hackers; thus, publicizing the information. *See id*. at 864 (explaining that "[t]he term 'publication,' . . . does not require that the information be disseminated in a newspaper but merely that it be repeated [or disclosed] to a third party"). As such, Plaintiffs have sufficiently alleged their claim for Right to Privacy pursuant to Section 9-1-28.1(a)(3).

### B.    Massachusetts Privacy Statute Claim

Plaintiffs have also stated a claim for violation of the Massachusetts Privacy Act, which states: "A person shall have a right against unreasonable, substantial or serious interference with his privacy." Mass. Gen. Laws Ann. ch. 214, § 1B. "To sustain a claim for invasion of privacy, the invasion must be both unreasonable and substantial or serious." *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021).

A plaintiff may state a claim by showing public disclosure of private facts or "by showing that a defendant has intruded unreasonably upon the plaintiff's 'solitude' or 'seclusion.'" *Id.* When the violation is based on public disclosure of private facts, the facts disseminated must be "of a highly personal or intimate nature when there exists no legitimate, countervailing interest" for the disclosure. *Bratt v. Int'l Bus. Machines Corp.*, 467 N.E.2d 126, 134 (Mass. 1984). Generally, whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a question of fact. *Ellis v. Safety Ins. Co.*, 672 N.E.2d 979, 984-85 (Mass. App. Ct. 1996).

Contrary to Samsung's assertion, Massachusetts courts do not explicitly require intent as an element of a claim for invasion of privacy. *See* Invasion of Privacy, in Civil Causes of Action in Massachusetts (MACLE, Inc., 2d ed. 2012) ("Invasion of privacy is usually thought of as an intentional tort, although Massachusetts courts do not explicitly state that proposition."). In fact, "the Legislature appears to have framed the statute in broad terms so that the courts can develop the law thereunder on a case-by-case basis, by balancing relevant factors . . . and by considering prevailing societal values and the ability to enter orders which are practical and capable of reasonable enforcement." *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 567 N.E.2d 912, 915 (Mass. 1991). Samsung cites only one unpublished district court case that seems to require intent.

Moreover, Samsung's choice not to implement reasonable security measures may be considered an intentional act. *See In re Equifax*, 362 F. Supp. 3d at 1136 (finding plaintiffs showed intent by alleging "Equifax was aware of the importance of data security and of the previous well-publicized data breaches" and "despite this knowledge of cybersecurity risks," Equifax did not "tak[e] steps to improve deficiencies in cybersecurity"); *cf. In re Ambry*, 567 F. Supp. 3d at 1143 (finding plaintiffs stated a claim for invasion of privacy under California law where they alleged "Defendants (1) knew their information security practices were inadequate and had numerous security vulnerabilities, (2) "intentionally, willfully, recklessly, or negligently" failed to take adequate and reasonable measures to ensure Ambry's data systems were protected, (3) knew their inadequate data security measures would likely result in a breach, and (4) knew that such a breach would harm Plaintiffs"). Indeed, in *Barrigas v. United States*, No. 17-CV-10232-ADB, 2018 WL 1244780, at *7 (D. Mass. Mar. 9, 2018), a case cited by Samsung, the court recognized that defendants may have acted intentionally "by maintaining a publicly accessible recording of the show segment for a few weeks."[51]

---

[51] In *Barrigas*, the court did not dismiss the invasion of privacy claim because of a lack of intent, but rather because of the nature of the information disclosed, "tax information [that] was imprecise and only roughly identifiable with a particular individual." *Barrigas*, 2018 WL 1244780, at *7.

Here, as stated above, Plaintiffs provided Samsung with significant personal information, including their name, contact and demographic information, date of birth, and product registration information. ACC, ¶¶ 1, 2, 6, 26, 188. This information was of no public interest and was not already part of the public discourse. Furthermore, Plaintiffs demonstrated an expectation that Samsung would safeguard their PII to ensure their information would remain private. *Id.* ¶¶ 195-99. Nevertheless, despite its awareness of cybersecurity threats and previous breaches, Samsung intentionally failed to upgrade and maintain its security systems in a meaningful way to safeguard Plaintiffs' PII, resulting in the disclosure of their PII to hackers. The reasonableness of that intrusion is a question of fact to be determined by a jury. As such, Plaintiffs allege sufficient facts to support a claim of invasion of privacy pursuant to Mass. Gen. Laws ch. 214, § 1B.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Samsung's Motion to Dismiss. If the Court grants the Motion in full or part, it should do so without prejudice and with leave to amend.

DATE: September 22, 2023        Respectfully submitted,

                                       /s/  *James E. Cecchi*

Kelly Iverson                        James E. Cecchi
**LYNCH CARPENTER, LLP**      Caroline F. Bartlett
1133 Penn Avenue, 5th Floor    Jason H. Alperstein
                                  **CARELLA BYRNE CECCHI**

Pittsburgh, PA 15222
Tel. (412) 322-9243

Roberta D. Liebenberg
Mary L. Russell
**FINE, KAPLAN & BLACK**
One S. Broad Street, 23rd Floor
Philadelphia, PA 19107
Tel. (215) 567-6565

Nada Djordjevic
**DICELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900

Steven M. Nathan
**HAUSFELD LLP**
33 Whitehall Street 14th Floor
New York, NY 10004
Tel. (646) 357-1100

**BRODY & AGNELLO, P.C**.
5 Becker Farm Road
Roseland, NJ07068
Tel. (973) 994-1700

Ryan J. Clarkson
Yana Hart
**CLARKSON LAW FIRM, P.C.**
590 Madison Avenue, 21st FLR
New York, NY 10022
Tel: (213) 788-4050

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1133 Avenue of The Americas
31st Floor
New York, NY 10036-8718
Tel. (917) 438-9189

Joseph J. DePalma
Catherine B. Derenze
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel. (973) 623-3000

Christopher A. Seeger
Christopher L. Ayers
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Tel. (973) 639-9100

Sabita J. Soneji
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Tel. (510) 254-6808

*Attorneys for Plaintiffs and Members of the Leadership Committee*